IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS & ST. JOHN
* * *

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>                    Plaintiff | )<br>)<br>) |
| V. | )<br>) |
| | )          NO. 15-CR-42 |
| WAYNE A.G. JAMES | )<br>) |
| _____Defendant. | ) |

**MOTION TO DISMISS INDICTMENT OR, IN THE ALTERNATIVE, FOR
SUPPRESSION OF EVIDENCE OBTAINED IN VIOLATION OF SPEECH OR
<u>DEBATE IMMUNITY GRANTED BY 48 U.S.C. § 1572 (d)</u>**

**NOW COMES** defendant Wayne A.G. James, through undersigned
counsel, Omodare Jupiter, Federal Public Defender for the District
of the Virgin Islands, and Brendan A. Hurson, Assistant Federal
Public Defender, to respectfully request that the three (3) count
indictment pending against him be dismissed.  In the alternative,
Mr. James moves to suppress evidence obtained in violation of the
legislative immunity afforded him by 48 U.S.C. § 1572 (d). In
support of this motion, counsel states as follows:

<u>**INTRODUCTION**</u>

    "Legislators in the Virgin Islands, like their counterparts
in the national and many state legislatures, enjoy immunity for
actions taken in the regular course of the legislative process."
<u>Gov't of Virgin Islands v. Lee</u>, 775 F.2d 514, 519 (3d Cir. 1985).
This immunity comes directly from a federal statute which mandates
that "[n]o member of the [Virgin Islands] legislature shall be
held to answer before any tribunal other than the legislature for

any speech or debate in the legislature . . . ."  48 U.S.C. § 1572 (d).  This statute has been analogized to the Speech or Debate Clause of the United States Constitution.  <u>Lee</u>, 775 F.2d at 519. Though its constitutional counterpart protects members of the national legislature, its purpose is identical to the immunity bestowed upon members of the Virgin Islands' legislature: "to insure that the legislative function . . . . may be performed independently." <u>Eastland v. U. S. Servicemen's Fund</u>, 421 U.S. 491, 502(1975).

The government sought an indictment charging erstwhile Virgin Islands legislator Wayne James with fraud and embezzlement.  <u>See</u> Indictment, 1.  The indictment is frank in acknowledging that the conduct at the heart of all three counts occurred "[w]hile [Mr. James was] a senator . . . ." and relates to his actions as a legislator.  <u>Id.</u> at 1-2.  These admissions are fatal to the government's attempt to prosecute Mr. James because the legislative immunity bestowed upon Mr. James prevents inquiry into acts within the legislative sphere even if, as the government claims (and Mr. James vociferously disputes), those acts were improper or illegal.  As such, the Court must strike all charges in the Indictment that fall within the scope of legislative immunity.  <u>See</u> <u>United States v. Johnson</u>, 383 U.S. 169, 184-85(1966) ("We hold that a prosecution under a general criminal statute dependent on [legislative acts] necessarily contravenes the Speech

or Debate Clause."); <u>McSureley v. McClellan</u>, 553 F.2d 1277, 1299 (D.C. Cir. 1976) (<u>en banc</u>) ("[T]he Speech or Debate Clause acts as an exclusionary rule and testimonial privilege, as well as a substantive defense."). Because the prosecution of Wayne James is based entirely on conduct related to legislative acts, the instant indictment must be dismissed.

Moreover, this immunity has been interpreted "broadly, to include not only 'words spoken in debate,' but anything 'generally done in a session of the House by one of its members in relation to the business before it.'" <u>Johnson</u>, 383 U.S. at 179 (citation omitted).

In the alternative, significant evidence to be presented at trial (and already presented to the grand jury), was obtained in violation of Mr. James' legislative immunity.  For example, emails sent as part of his official legislative duties, critical documents related to his legislative acts and official duties, and testimony related to his senatorial duties and responsibilities was improperly secured through search warrants and subpoenas.  Because the procurement of this evidence ran afoul of Speech or Debate immunity, it must be suppressed.

## FACTS

The celebration of emancipation in the Danish West Indies was short-lived as slavery was converted into an institutionalized system of contract labor that saw chains replaced by oppressive

labor contracts.   These contracts bound most former slaves to the same plantations where they were once enslaved.   As former slaves found themselves unable to escape the control of the plantation owners, anger fomented into justifiable revolt in 1878. This revolt, known as the Fireburn, was led in large part by several women now known as the "Fireburn Queens."   The Fireburn culminated in the scorching of hundreds of acres of land, the deaths of dozens of black laborers, and modest changes to the contract system giving rise to the revolt.

Regardless of its limited success in achieving immediate freedom, as one of the largest and most significant black-led labor revolts of the post-slavery era, the Fireburn was nonetheless significant.   Years later, it remained an event of tremendous historical and cultural significance to the citizens of the Virgin Islands, and to Wayne James in particular.   Despite this local interest and significance, nearly all documents related to the Fireburn were removed from St. Croix and taken to Denmark.   Many of the documents were in the Danish National Archives, and remained written only in a foreign language.   In short, critical records memorializing a seminal moment in Virgin Islands' history was inaccessible to the people it impacted most – the people of the Virgin Islands.   In response, Mr. James devoted significant portions of his life to researching the subject and sharing his work to ensure that time would not diminish the contributions of

the Fireburn Queens and the significance of the 1878 revolt.  <u>See</u>
St. Thomas Source, Wayne James Says He's Found a 4th Fireburn
'Queen', August 4, 2004 (available at
<u>http://stthomassource.com/content/news/local-</u>
<u>news/2004/08/05/wayne-james-says-hes-found-4th-fireburn-queen</u>)
(last visited February 2, 2017).

   Mr. James was elected as a senator in the Legislature of the
Virgin Islands in 2008.  Indictment, 1.  He was a legislator in
the 28th Legislature, serving from January 2009 through January of
2011. <u>Id.</u>

   Mr. James brought his interest in the Fireburn with him to
the legislature.  Chosen to head the Youth, Education and Culture
Committee, Mr. James immediately undertook legislative efforts to
ensure proper commemoration of the Fireburn, including
preservation of critical documents memorializing the event that
were housed in Denmark.  Mr. James' interest in the Fireburn
ripened as a senator into a full-blown legislative effort to ensure
that critical Fireburn documents were accessible to the citizens
of the Virgin Islands.  He also joined in the legislative efforts
to ensure that the Fireburn was officially recognized as a day of
significance through, among other things, a territorial day of
remembrance and commemoration during the centennial transfer
events in 2017.

There is no dispute that, like all senators, Mr. James received funds from the Virgin Islands legislature to further his legislative goals and priorities. Indictment, 1-2. These funds were utilized primarily to seek out, procure, and translate documents that would prove instrumental to Mr. James' legislative efforts to properly commemorate the Fireburn. Mr. James' efforts in that regard are easily traced to legislation.

For example, Mr. James voted in favor of Senate Bills 28-0010 and 28-0159, both originally entitled "[a]n Act amending title 1 Virgin Islands Code, chapter 11, section 171 commemorating laborers on Fireburn Day as a day to be revered and remembered in the Virgin Islands." V.I. Senate Bill 28-0159 (attached as Ex. A). Both bills were originally proposed in and debated by the committee chaired by Mr. James. Ultimately, Bill No. 28-0159, amended slightly, was passed by the Senate on March 8, 2010. It was signed into law by then-governor John P. de Jongh, Jr. on April 7, 2010. See V.I. Senate Act # 7158 (attached as Ex. B).

Mr. James' interest in legislation related to the Fireburn is also manifest in emails to then Senate President Louis Hill. For example, following a trip to Denmark to review Fireburn documents, Mr. James emailed Senator Hill to inform him of what he learned and the "critical role" it served "in the research component of several bills I will introduce during the 28th Legislature."

October 8, 2009 Email from Wayne James to Senate President Louis Hill, Bates # USDOJ 2079 (attached as Ex. C).

Committee hearing transcripts also affirm Mr. James' commitment to researching the Fireburn for future legislation. See Tr. of Committee Debate on Bill # 28-159 (comments of Senator Thurland) ("I am glad to see that there is also a lot of research that is now being done – contemporary research that is being done. And Mr. [James] has been one of the people who have been devoted to carrying on a significant part of that research from -- in the words of my Majority Leader -- a "black man's perspective.") (relevant page attached as Ex. D).

Indeed, the government alleges that the funds utilized to secure and translate Fireburn documents were available to Mr. James solely because he was a member of the senate and therefore had access to "legislative funds." Indictment 1-2. And these funds were only available to Mr. James because they were being utilized to research for potential bills related to the Fireburn and to contribute to the vibrant legislative discourse on the topic.

Discovery provided the government in connection with this prosecution contains numerous documents connecting the charged conduct with legislation. For example, in an email to Mr. James seeking an interview, FBI agent Jackson Purkey noted that "[the FBI is] currently looking into a number of **matters concerning activities conducted in the Virgin Islands Legislature** by several

individuals **during your tenure as a Senator**." August 17, 2015
Email from SA Purkey, 1 (attached as Ex. E)(emphasis added).
Further, in correspondence from Mr. James' Special Advisor, Ms.
Hortense Rowe, the request for funds for Fireburn-related
materials were unequivocally to be **"used for legislation."** May 1,
2010 Memo from H. Rowe, 1 (attached as Ex. F) (emphasis added).

██████████ was called before the grand jury[1] and testified that
Mr. James' interest in the Fireburn was related to legislation.
Indeed, government counsel deliberately elicited testimony that
the only way to secure funding for the documents was to connect it
to legislation:



(attached as **Sealed Ex. 1**)(emphasis
added).

It is undisputed that Mr. James did, in fact, introduce
legislation of the exact kind noted by ██████. During his tenure
as a senator, he proposed Bill No. 28-0143, - An Act amending 3
V.I.C., Chapter 19, to create the Centennial Commission charged

---

[1] Reference to undisclosed Grand Jury matters is redacted. An
unredacted copy of this motion will be filed under seal.

with, among other things, examining and commemorating the Fireburn. This Bill was signed into law on April 7, 2010.   See V.I. Senate Act # 7157 (attached as Ex. G).

Asked during her grand jury testimony to explain how Mr. James intended use the legislature's funds to further his desire to see the Fireburn properly commemorated, ███████ noted that Mr. James intended to secure from the Danish ███████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████ Id. at 22.    Asked further to explain where the funds for this work was to come from,

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████ Id. at 24 (emphasis added).   This, according to ███

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████ Id. at 25.

It is these types of transactions – the use of legislature funds to further research the Fireburn for legislative purposes - that are at the heart of the government's allegations against Mr. James, and at the center of its presentation to the grand jury.

Count one alleges wire fraud in the form of an October 19, 2010 "wire communication" from "Banco Popular in the U.S. Virgin

Islands to Banco Popular in Puerto Rico.  Indictment, 3.  This transaction represents the deposit of a check made payable to Wayne James and drawn on the account of the Legislature of the Virgin Islands.  GJ Ex. # 48 (attached); see also Testimony of Nick Peru, 63 (noting that Ex. 48 was a check cashed on October 19, 2010 matching an invoice request for repayment of services related to the recovery and translation of Fireburn documents) (available on request).

Count two alleges a similar communication on October 22, 2010. Indictment, 3.  This transaction also represents the deposit of a check made payable to Wayne James and drawn on the account of the Legislature of the Virgin Islands.  GJ Ex. # 47 (attached as Ex. H); see also Testimony of Nick Peru, 62 (noting that Ex. 47 was a check cashed on October 22, 2010 matching an invoice request for repayment of services related to the recovery and translation of Fireburn documents).

Count three essentially repeats similar claims – that Mr. James defrauded a federal program by "obtain[ing] at least $5,000 in Government of Virgin Islands funds based on false representations that the money would be used to fund historical research [of the Fireburn], when in fact James appropriated a portion of the money to his own use."  Indictment, 4.  As with the first two counts, the allegation in Count three rests on the claim

that Mr. James procured legislative funds ostensibly for legislative research, but actually for his own use.

Mr. James' case is set for trial on February 13, 2017.

### ARGUMENT

Mr. James is charged by indictment with two counts of wire fraud in violation of 18 U.S.C. §1343, and one count of federal program embezzlement in violation of 18 U.S.C. §666(a)(1)(A). Regardless of its alleged illegality, a Virgin Islands senator cannot be prosecuted for acts legitimately related to his service as a senator. Mr. James served as a senator in the legislature from 2009 to January of 2011. The alleged illegal conduct occurred almost exclusively within that time period, including two (2) wire transfers in 2010 and a series of acts from late 2010 through 2011. Further, the vast majority of evidence the government intends to offer in its case-in-chief memorializes acts committed in the course of that service. As such, the indictment must be dismissed. In the alternative, all evidence secured in violation of this clear privilege must be suppressed.

**1. The Indictment Must Be Dismissed**

Where an "activity is found to be within the legitimate legislative sphere, balancing plays no part . . . [as t]he speech or debate protection provides an absolute immunity from judicial interference." Eastland, 421 U.S. at 509 n.16. This mandate comes

directly from the "Speech or Debate Clause" of the United States Constitution. <u>See</u> U.S. Const. art. I, § 6.

It is true that "[t]he Federal Speech or Debate Clause, of course, is a limitation on the Federal Executive, but by its terms is confined to federal legislators." <u>United States v. Gillock</u>, 445 U.S. 360, 374 (1980). However, in passing 48 U.S.C. § 1572(d), Congress explicitly provided that Virgin Island legislators "prosecuted under federal law should be accorded the same evidentiary privileges as a Member of Congress." <u>Id.</u> at 374. Such was the conclusion reached by then-Chief Judge Finch in <u>Hispanos Unidos v. Gov't of U.S. Virgin Islands</u>, 314 F. Supp. 2d 501, 503 (D.V.I. 2004)when he held that "[t]he Speech or Debate Clause of the Revised Organic Act of 1954 states that "[n]o member of the legislature shall be held to answer before any tribunal other than the legislature for any speech or debate in the legislature . . . [and] Congress intended this clause to provide legislative immunity." "Because the policies underlying the Speech or Debate Clause of the United States Constitution and the Speech or Debate Clause of [48 U.S.C. § 1572(d)] are also closely parallel, the Third Circuit Court of Appeals has found 'that the interpretation given to the Speech or Debate Clause of the Federal Constitution, while not dispositive as to the meaning of the legislative immunity provision of the Virgin Islands, is,

nevertheless, highly instructive.'" Id. (citing Government of the Virgin Islands v. Lee, 775 F.2d 514, 520 (3d Cir.1985)).

In interpreting this "highly instructive" analog, the Supreme Court has held that the privilege should be read "broadly, to include not only 'words spoken in debate,' but anything 'generally done in a session of the House by one of its members in relation to the business before it.'" Johnson, 383 U.S. at 179 (citing Kilbourn v. Thompson, 103 U.S. 168, 179 (1880)).

The Third Circuit Court of Appeals has similarly interpreted the immunity of V.I. legislators to be broad. See Lee, 775 F. 2d at 516. In Lee, a former Virgin Island legislator was accused of improperly seeking partial reimbursement from the legislature for a trip to New York and Washington D.C. that the government claimed was a personal excursion.  That legislator, on the other hand, "claimed that the purpose of his trip was for legislative fact-finding." Id.   Reviewing the matter as one of first impression, the Third Circuit held that "as a general matter, legislative fact-finding is entitled to the protection of legislative immunity . . . ." Id. at 517.

In so holding, the Court first reviewed the purpose of the legislative immunity clause affirming that "the central role . . . is 'to prevent intimidation of legislators by the Executive and accountability before a possibly hostile judiciary. . . .'" Id. at 520 (quoting Gravel v. United States, 408 U.S. 606, 617 (1972)).

13

Turning to the question of the scope of legislative immunity, the Lee Court affirmed that:

> legislative immunity protects "only acts generally done in the course of the process of *enacting legislation*...." Shielded activities must play "an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House."

Id. at 520 (citations omitted)(emphasis in original).

The Lee Court surveyed decisions on point and noted that other Circuits had widely construed Speech or Debate immunity to encompass legislative fact-finding. For example, it noted that a sister circuit had "no doubt that information gathering, whether by issuance of subpoenas or field work by a Senator or his staff, is essential to informed deliberation over proposed legislation" and was thus immune from inquiry and prosecution. Id. at 521 (citing McSurely v. McClellan, 553 F.2d 1277, 1286 (D.C.Cir.1976)). Relying on the Supreme Court's pronouncement in Gravel, the Third Circuit affirmed its D.C. counterpart's finding that "the acquisition of knowledge through informal sources is a necessary concomitant of legislative conduct and thus should be within the ambit of the privilege so that congressmen are able to discharge their constitutional duties properly." Id. (citing McSurely, 553 at 1287).

14

Similarly, the Third Circuit cited favorably to <u>Miller v.</u> <u>Transamerican Press, Inc.</u>, 709 F.2d 524, 530 (9th Cir.1983), in which the Ninth Circuit held that "[o]btaining information pertinent to potential legislation is one of the 'things generally done in a session of the House' . . . concerning matters within the 'legitimate legislative sphere.'" <u>Id.</u> at 521 (citations omitted from <u>McSurely</u>).

The <u>Lee</u> Court concluded with an unequivocal recognition that senatorial fact-finding and information-gathering is beyond judicial inquiry:

> We agree that fact-finding, information gathering, and investigative activities are essential prerequisites to the drafting of bills and the enlightened debate over proposed legislation. **As such, fact-finding occupies a position of sufficient importance in the legislative process to justify the protection afforded by legislative immunity.** Legislators must feel uninhibited in their pursuit of information, for "[a] legislative body cannot legislate wisely or effectively in the absence of information respecting the conditions which the legislation is intended to affect or change. . . ."

<u>Id.</u> at 521-22 (<u>citing</u> <u>McGrain v. Daugherty</u>, 273 U.S. 135, 175(1927)(emphasis added). This is a widely held understanding among courts that have addressed the issue. <u>See</u>, <u>e.g.</u>, <u>Doe v.</u> <u>McMillan</u>, 412 U.S. 306, 313 (1973) (finding that Speech or Debate immunity extended to "authorizing an investigation," "holding hearings," "preparing a report," and "authorizing the publication and distribution."); <u>Eastland</u>, 421 U.S. at 504 ("Congress's

efforts to acquire information during committee investigations or through the issuance of subpoenas constitute legislative acts protected by the Speech or Debate Clause.").

Relevant to the instant case is the understanding that, in the Third Circuit, Speech or Debate immunity covers even so-called *informal* acts of legislative fact-finding. Jewish War Veterans of the U.S. of Am., Inc. v. Gates, 506 F. Supp. 2d 30, 55 (D.D.C. 2007) (citing Lee, 775 F.2d at 521). Ultimately, "the controlling principle is . . . that a [legislator's] gathering of information beyond the formal investigative setting is protected by the Speech or Debate Clause so long as the information is acquired in connection with or in aid of an activity that qualifies as 'legislative' in nature." Id. at 57.

The Fourth Circuit Court of Appeals case of United States v. Dowdy, 479 F.2d 213, 224 (4th Cir. 1973), is informative in this regard. In Dowdy, a former Congressman was prosecuted for numerous offenses related to alleged bribery tied to his role as legislator. Id. at 217. He raised numerous arguments on appeal, including a claim that "substantial portions of the allegations of the indictment and of the proof at trial revolved around his actions as [a legislator] and that his actions and motivations in this regard were immune from judicial scrutiny under the 'speech or debate' clause of the constitution." Id. Specifically, Dowdy alleged that evidence of preparation for committee hearings

16

including meetings with various government officials and "the receipt and acceptance of documents" was improperly presented to the grand jury and the petit jury at trial. Id. at 224.

Agreeing with the defendant in significant part, the Fourth Circuit held that the "conversations and arrangements" with government officials, including the collection of "a considerable amount of documentary evidence of reports of investigations which defendant . . . obtained" was improperly submitted to fact-finders in violation of the speech and debate clause. Id. The Court ruled unequivocally that:

> This evidence was an examination of defendant's actions as a Congressman, who was chairman of a subcommittee investigating a complaint, in gathering information in preparation for a possible subcommittee investigatory hearing. As such, it was an examination of legislative acts . . . and is condemned . . . when the prosecution proceeds under a statute of general application. It was a complete disclosure of all that transpired including proof of documents that were obtained and, hence, was a general inquiry into the legislative acts of a Congressman and his motives for performing them.

Id. at 224-25.[2] This was the Court's conclusion despite its frank recognition that the "defendant's actual motives in communicating

---

[2] Dowdy includes a discussion of a possible exception to the presentation of evidence for certainly "narrowly drawn statutes" that specifically authorize "probing into legislative acts and the motivations therefore." Dowdy, 479 U.S. at 225. There can be no claim that the broad and generally applicable offenses alleged in this indictment – wire fraud and embezzlement – are so "narrowly drawn" as to overcome speech and debate immunity. Id.

with various government officials and in obtaining certain
government documents could have been, as the government contends,
for improper non-legislative purposes." Id. at 226. "But," it
held, "we reject the government's argument that it was proper for
the jury to receive all of the evidence and to pass upon the issue
of what activities were legislative, protected from examination by
the speech or debate clause, and what were not." Id.

It bears noting that the Fourth Circuit further rejected the
government's implied claim that Speech and Debate Immunity is
"applicable only when a pure legislative motive is present." Id.
To the contrary, the Court held:

> The clause does not simply protect against
> inquiry into acts which are manifestly
> legislative. In our view, it also forbids
> inquiry into acts which are purportedly or
> apparently legislative, even to determine if
> they are legislative in fact. Once it was
> determined, as here, that the legislative
> function (here, full investigation [of an
> issue] to determine if formal subcommittee
> hearings should be held) was *apparently* being
> performed, the propriety and the motivation
> for the action taken, as well as the detail of
> the acts performed, are immune from judicial
> inquiry.

Id. (emphasis in original). Ultimately finding that the evidence
adduced at trial and considered by the jury that was related to
legislative fact-finding was improperly admitted, the Fourth
Circuit reversed convictions on several of the charged counts. Id.

2. **The Instant Indictment Must Be Dismissed Because the Charges Rest on Activities Protected by Speech and Debate Immunity.**

As noted, the Virgin Islands legislators are protected from criminal or civil liability for actions undertaken "in the regular course of the legislative process." Lee, 775 F.2d at 519. Thus, having established that immunity exists for legislators like Mr. James for legislative acts, both formal and informal, close scrutiny of the instant indictment reveals that the prosecution cannot be sustained as it runs afoul of this well-established immunity.

"On a motion to dismiss an indictment under the Speech or Debate Clause, the district court must examine the indictment to determine whether its charges are predicated upon evidence of legislative acts." United States v. Menendez, 132 F. Supp. 3d 610, 620 (D.N.J. 2015)(citing Fields v. Office of Eddie Bernice Johnson, 459 F.3d 1, 13 (D.C.Cir.2006)). "This plays out in a two-step framework for identifying legislative acts protected by the Speech or Debate Clause." United States v. Menendez, 831 F.3d 155, 166 (3d Cir. 2016). First, this court must "look to the form of the [alleged acts] to determine whether it is inherently legislative or non-legislative." Id.     "If an act is neither manifestly legislative nor clearly non-legislative, then it is ambiguously legislative," and immunity "will turn on the content, purpose, and motive" of the alleged acts at issue. Id. at 168-69.

Here, Mr. James' acts were inherently legislative in nature. For example, the collection, translation, and retention of Fireburn documents was done for the express purpose of crafting and debating legislation related to Fireburn commemoration. "Preparations for a committee hearing are clearly protected by the Speech or Debate Clause . . . ." Menendez, 132 F. Supp. 3d at 627; see also Dowdy, 479 F.2d at 224-26 (finding that the collection of documents and records in anticipation of a *possible* subcommittee hearing were legislative in nature); McSurely, 553 F.2d at 1286 ("The [Supreme Court has held] that 'the power to investigate and to do so through compulsory process plainly falls within" the test for legislative activity . . . .")(citation omitted).

As noted, Mr. James' committee held hearings on Fireburn legislation on January 10, 2010, just a few months before the alleged illegal acts at issue in Counts 1 and 2 of the indictment, and in the midst of the allegations in Count 3.  This committee hearing was an integral step in the passage of V.I. Senate Bill 28-0159, "commemorating laborers on Fireburn Day as a day to be revered and remembered in the Virgin Islands." Moreover, Mr. James researched and organized a Centennial Celebration committee, ultimately sponsoring a bill that provided funds for the planning and execution of the year-long celebration.[3]  Thus, the allegations

---

[3] The Centennial Celebration Bill (# 7157) clearly envisioned further legislative action as it merely created a fund and

contained in the indictment rest exclusively on acts taken in furtherance of legislation, the precise type of action immune from inquiry under 48 U.S.C. § 1572(d) and Lee, 775 F.2d at 518.

Even if this court does not find the collection of Fireburn documents to be explicitly legislative, "the content, purpose, and motive" of Mr. James' alleged actions establish that they were legislative in nature.  Even "informal" actions by a legislator can qualify for speech and debate immunity.  Lee, 775 F.2d at 521. Moreover, "without exception," the Supreme Court has "read the Speech or Debate Clause *broadly* to effectuate its purposes . . . ."  Eastland, 421 U.S. at 501–02 (emphasis added).

Here, Mr. James' contact with the Danish National Archives, the process of seeking the advancement of funds from the Virgin Islands' Legislature, and the use of wire transfers and deposits to facilitate translation and document production were, at minimum, informal legislative acts related to Mr. James' legislative role.  These types of acts, ". . . are endowed with Speech or Debate Clause immunity . . . ."  United States v. Rose, 790 F. Supp. 340, 343 (D.D.C. 1992).

There can be no debate that the location, translation, and dissemination of Fireburn documents was "related to and in furtherance of a legitimate task" of the Virgin Islands

---

department to begin "formulating plans and making preparations" for the 2017 Centennial.  See V.I. Senate Act # 7157, 1.

legislature. Eastland, 421 U.S. at 505.   Grand jury testimony, memos, emails, and the indictment itself establish as much.   Thus, like the issuance of subpoenas for records in Eastland, Mr. James' efforts to secure Fireburn documents -- including the financial transactions at the heart of this indictment -- are likewise protected by Speech and Debate immunity.[4]   The indictment must be dismissed.

### 3. In the Alternative, Suppression is Warranted.

In the alternative, all evidence obtained in violation of the immunity noted above must be suppressed.   First, government staff is immune from questioning related to a senator's legislative acts. Gravel, 408 U.S. at 616-17 ("We have little doubt that we are neither exceeding our judicial powers nor mistakenly construing

---

[4]  The allegations in this case stem exclusively from an effort to secure documents from Denmark, a sovereign nation well beyond the reach of legislative subpoena issued by Mr. James' committee.   Regardless, Mr. James' personal efforts to secure Fireburn documents through phone calls, emails, and wire are analogous to the legislative subpoenas of the kind held immune from inquiry in Eastland.   421 U.S. at 505.   "'(W)here the legislative body does not itself possess the requisite information . . . [e]xperience has taught that mere requests for such information often are unavailing . . . so some means of compulsion are essential to obtain what is needed.'" Id. at 505-06 (quoting McGrain, 273 U.S. at 175). "To conclude that the power of inquiry is other than an integral part of the legislative process would be a miserly reading of the Speech or Debate Clause in derogation of the 'integrity of the legislative process.'" Id.  (citations omitted).   To find that Mr. James' behavior was different than that in Eastland ignores the complex reality of the legislature's efforts to secure Fireburn documents from Denmark and runs afoul of the Supreme Court's mandate to interpret Speech and Debate immunity "broadly." Id. at 510.

the Constitution by holding that the Speech or Debate Clause applies not only to a Member but also to his aides insofar as the conduct of the latter would be a protected legislative act if performed by the Member himself."). Moreover, legislative acts, even informal ones, may never be introduced into evidence against a protected defendant like Mr. James. See United States v. Helstoski, 442 U.S. 477, 487 (1979) ("The Court's holdings . . . leave no doubt that evidence of a legislative act of a Member may not be introduced by the Government . . . .").

Discovery in this case is replete with evidence of the government running afoul of this clear restriction. It includes grand jury testimony from Mr. James' former senior advisor, an employee and aid, as well as other employees of the legislature whose job was, in part, to assist Mr. James. This type of evidence is privileged under the immunity statute and should not have been presented to the grand jury, much more at trial.

Similarly, the indictment was secured utilizing – and the government intends to offer at trial – documents secured from the legislature through subpoena and other means directly related to Mr. James' legislative work, including emails sent to and from Mr. James related to his legislative efforts. This, too, is improper.

The relationship between legislative immunity and the procurement of documentary evidence is explained in Chang v. United States, 512 F. Supp. 2d 62, 66 (D.D.C. 2007). The D.C. Speech or

Debate Clause, playing the same role as the Speech or Debate Clause in the U.S. Constitution, excludes "inquiry ... into the motivation for" acts "that occur in the regular course of the legislative process." Id.(quoting Helstoski, 442 U.S. at 487).  In Chang, a subpoena was directed by the Metropolitan Police Department for documents in the possession of a former Special Counsel investigating the conduct of the District of Columbia's Committee on the Judiciary.  Id. at 63. In quashing the subpoena, the District Court rightly concluded that the subpoenaed documents were "shielded from production pursuant to the legislative immunity accorded . . . under the District of Columbia Speech or Debate Clause."  Id. This ruling came despite the fact that the documents targeted by the subpoena were in the personal possession of the subpoena's target well after her service as counsel was complete and despite the fact that the target had spoken publicly on the subject matter at issue in the targeted documents.  Id. at 66. "To find otherwise," the district court held, "would severely undermine the purposes of legislative immunity."  Id. The same result is warranted here.

     In short, the prosecution of Mr. James is untenable absent rampant violations of the immunity afforded in 48 U.S.C. § 1572 (d).  As such, all evidence secured in violation of its broad protection must be suppressed.

**WHEREFORE**, for the above stated reasons, counsel respectfully requests that this court grant his motion to dismiss the indictment or, in the alternative, to suppress all evidence obtained in violation of the legislative immunity granted by 48 U.S.C. § 1572 (d).

DATED: February 3, 2017

                              Respectfully submitted,

                              OMODARE B. JUPITER
                              FEDERAL PUBLIC DEFENDER

                              */s/ Omodare B. Jupiter*
                              OMODARE B. JUPITER
                              Federal Public Defender
                              1115 Strand Street
                              St. Croix, VI 00820
                              Tel (340) 773-3585
                              Fax (340) 773-3742
                              E-mail: Omodare_jupiter@fd.org

                              */s/ Brendan A. Hurson*
                              BRENDAN A. HURSON
                              Assistant Federal Public Defender
                              1336 Beltjen Rd., Suite 202
                              St. Thomas, VI 00802
                              Tel (340)774-4449
                              Fax (340)776-7683
                              E-mail: Brendan_Hurson@fd.org

## CERTIFICATE OF SERVICE

I, HEREBY CERTIFY that on the 3rd day of February, 2017 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Ronald W. Sharpe
United States Attorney

Amanda R. Vaughn
Justin D. Weitz
Trial Attorneys
Public Integrity Section
U.S. Department of Justice
1400 New York Ave. NW, 12th Floor
Washington, D.C. 20005
(202) 616-4530 (office)
(202) 714-4232 (cell)
Amanda.vaughn@usdoj.gov
Justin.Weitz@usdoj.gov


                                   */s/ Omodare B. Jupiter*