IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

---

UNITED STATES OF AMERICA,          )
                                   )
                   Plaintiff,      )
                                   )
vs.                                )   CRIM. NO. 2015-42
                                   )
WAYNE JAMES,                       )
                   Defendant.      )
_____)

REPORTER'S TRANSCRIPT

<u>MOTION HEARING</u>

Thursday, July 13, 2017

---

BEFORE:      THE HONORABLE CURTIS V. GOMEZ
             District Judge


APPEARANCES:  OFFICE OF THE UNITED STATES ATTORNEY
              BY:  AMANDA VAUGHN, AUSA
              5500 Veterans Drive, Suite 260
              St. Thomas, VI 00802

                   For the Government

              FEDERAL PUBLIC DEFENDER'S OFFICE
              BY:  OMODARE JUPITER, AFPD
              11115 Strand Street
              PO Box 223450
              St. Croix, VI 00822

                   For the Defendant

              ---


COURT REPORTER:   CHANDRA R. KEAN, RMR
                  Official Court Reporter
                  Virgin Islands District Court
                  St. Thomas, Virgin Islands



1                          <u>INDEX</u>

2

3     ARGUMENT BY THE GOVERNMENT                    4

4     ARGUMENT BY THE DEFENDANT                    16

5     ARGUMENT BY THE GOVERNMENT                   46

6     RULING BY THE COURT                          52

7

8              (Court recessed)

9                          ---

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          <u>PROCEEDINGS</u>

2

14:35:36   3          (Court called to order at 2:35 p.m.)

14:35:36   4              THE CLERK:  United States of America versus

14:35:37   5   Wayne James.

14:35:42   6          Please enter your appearances.

14:35:46   7              MS. VAUGHN:  Good afternoon, Your Honor.

14:35:47   8   Amanda Vaughn of the United States.

14:35:49   9              THE COURT:  Good afternoon, Attorney Vaughn.

14:35:52   10              MS. VAUGHN:  And at counsel's table with me --

14:35:54   11              THE COURT:  Speak right into the microphone so

14:35:56   12   we can hear you well.

14:35:59   13              MS. VAUGHN:  At counsel's table with me is

14:36:02   14   Agent Christopher DeGraff of the FBI.

14:36:06   15              MR. JUPITER:  Good afternoon, Your Honor.

14:36:07   16   Omodare Jupiter on behalf of Wayne James, who is

14:36:10   17   present.

14:36:10   18              THE COURT:  Okay.  Good afternoon, Attorney

14:36:11   19   Jupiter.

14:36:12   20          Okay.  We are here on the defense motion to

14:36:18   21   dismiss.  I think where we left it was the Court had a

14:36:25   22   hearing.  I made a ruling.  I said it was without

14:36:28   23   prejudice.

14:36:31   24          There was supplemental information to be filed.

14:36:33   25   The defense filed, then appealed.  And the circuit

14:36:38   1   dismissed the appeal, saying there ought to be a ruling

14:36:43   2   before the matter is subject to appeal.  Now, there is

14:36:50   3   supplemental information on the record.

14:37:01   4       So let's hear from the government first.  Where are

14:37:04   5   we, Attorney Vaughn?

14:37:06   6                    ARGUMENT BY THE GOVERNMENT

14:37:06   7       MS. VAUGHN:  Yes, Your Honor.  It's the

14:37:09   8   government's position that none of the supplemental

14:37:13   9   material changes the outcome here.  The Court had

14:37:17   10  previously denied the motion without prejudice, and it's

14:37:21   11  the government's position that even given the

14:37:24   12  supplemental material, the Court should finally deny the

14:37:27   13  motion to dismiss.

14:37:30   14       THE COURT:  Now, the supplemental material

14:37:32   15  points to the testimony of -- or at least in some part

14:37:37   16  to one of the witnesses who speaks about educational

14:37:43   17  inquiries that were undertaken.  Why is that not part of

14:37:49   18  the Speech or Debate Clause inquiry?

14:37:52   19       MS. VAUGHN:  Is Your Honor referring to the

14:37:55   20  grand jury testimony?

14:37:56   21       THE COURT:  Yes.

14:37:58   22       MS. VAUGHN:  So --

14:37:59   23       THE COURT:  Because, as I understand it, it

14:38:01   24  seems that the defense is taking a two-pronged

14:38:06   25  approach.

14:38:06  1        One is that the indictment covers speech or debate

14:38:11  2   acts that are properly -- that are not properly the

14:38:14  3   subject of an indictment.  And to the extent that the,

14:38:21  4   that there isn't a clear violation of the Speech or

14:38:27  5   Debate Clause there, and as I understand it, the defense

14:38:29  6   is saying that the grand jury was so permeated with

14:38:32  7   exposure to Speech or Debate Clause material that it

14:38:38  8   warrants the treatment that the Court said was

14:38:41  9   appropriate in Helstoski.

14:38:46  10       So the Court is of a sense that we covered a lot of

14:38:49  11   ground with respect to the first prong.  So we're

14:38:52  12   dealing with the second prong here, and that requires, I

14:38:55  13   sense from Helstoski -- there's not much case law that

14:39:00  14   takes this approach, but in Helstoski there's some

14:39:03  15   review and assessment of the grand jury testimony.

14:39:06  16       And to the extent the grand jury testimony is the

14:39:12  17   thing that's an indicator of whether there was a lot of

14:39:14  18   exposure to material that they ought not to have been

14:39:19  19   exposed to, and that permeated the whole grand jury

14:39:26  20   proceeding, to the extent that is what the inquiry needs

14:39:31  21   to focus on, should the Court have some pause that there

14:39:34  22   was some discussion about the educational inquiry that

14:39:45  23   Senator James was concerned with?  Why is that, why is

14:39:48  24   that even appropriately before the grand jury?

14:39:52  25       MS. VAUGHN:  Your Honor, I think looking at

14:39:54  1    Helstoski -- so if we've decided that the indictment on

14:39:57  2    its face does not allege any legislative acts, and then

14:40:01  3    we look at what was presented to the grand jury --

14:40:03  4         THE COURT:  To be fair to the defense, we'll

14:40:05  5    revisit that, too, just to make sure we're comprehensive

14:40:07  6    here.  But, yeah, we'll just focus on the second prong

14:40:10  7    for now.

14:40:11  8         Go ahead.

14:40:11  9         MS. VAUGHN:  So, one, even if there -- it's

14:40:16 10    sort of a two-part question.  One is, if there was

14:40:20 11    evidence of legislative agents presented to the grand

14:40:23 12    jury, that, in and of itself, is not a basis for

14:40:25 13    dismissal.

14:40:26 14         It's only a basis for dismissal where the

14:40:32 15    indictment would not have been returned absent that

14:40:37 16    evidence.  So that's the first question -- that's the

14:40:40 17    first issue.  Even if it was presented, it's not a

14:40:44 18    proper basis if the indictment still would have been

14:40:47 19    returned.

14:40:47 20         And I think that the fact that the indictment on

14:40:49 21    its face does not allege any official acts --

14:40:51 22         THE COURT:  Let's deal with the first part.

14:40:53 23    That is, are there portions of the transcript that get

14:40:58 24    into material that you shouldn't have gotten into?

14:41:01 25         MS. VAUGHN:  No, Your Honor.

| | | |
|---|---|---|
| 14:41:02 | 1 | THE COURT:  Okay.  Pages 10 through 12, then, |
| 14:41:05 | 2 | of the transcript that talks about the educational |
| 14:41:09 | 3 | inquiry, why is that necessary? |
| 14:41:11 | 4 | MS. VAUGHN:  Your Honor, I don't have the |
| 14:41:13 | 5 | transcript in front of me, but I think what Your Honor |
| 14:41:14 | 6 | is referring to is when the grand jury witness is |
| 14:41:17 | 7 | discussing that this was in -- this was to prepare for |
| 14:41:20 | 8 | legislation? |
| 14:41:23 | 9 | THE COURT:  Yes. |
| 14:41:24 | 10 | MS. VAUGHN:  So -- |
| 14:41:24 | 11 | THE COURT:  Well, I'm going to say yes, but, |
| 14:41:27 | 12 | yeah, I'd prefer you refer to the transcript, not my |
| 14:41:30 | 13 | recollection. |
| 14:41:30 | 14 | MS. VAUGHN:  That in itself is a post hoc |
| 14:41:36 | 15 | rationalization that is undermined by the |
| 14:41:38 | 16 | contemporaneous communications by the defendant.  So and |
| 14:41:44 | 17 | -- so that's first. |
| 14:41:47 | 18 | And second, that witness was, herself, inconsistent |
| 14:41:52 | 19 | about what the purpose of this work was for. |
| 14:41:55 | 20 | THE COURT:  What was the question that |
| 14:41:57 | 21 | generated the response, though? |
| 14:42:00 | 22 | MS. VAUGHN:  I'm -- I can try to pull up the |
| 14:42:02 | 23 | transcript. |
| 14:42:03 | 24 | THE COURT:  Okay.  Well, was there a question |
| 14:42:05 | 25 | from the government that generated the response?  My |

14:42:07  1   question is really one that goes to:  Why was there a

14:42:10  2   need for a question that would generate that response?

14:42:15  3        MS. VAUGHN:  I think the question was something

14:42:17  4   along the lines of -- I can see if I can find it real

14:42:20  5   fast, Your Honor.  I'm sorry --

14:42:21  6        THE COURT:  If you need to grab the transcript,

14:42:23  7   you can go right ahead and do that.

14:42:44  8        MS. VAUGHN:  You said pages 10 through 12, Your

14:42:47  9   Honor?

14:42:47 10        THE COURT:  Yes, or thereabouts.

14:43:23 11        MS. VAUGHN:  So there was a question, "What did

14:43:25 12   Mr. James propose to do during his tenure in the Senate

14:43:29 13   related Fireburn?"

14:43:30 14      So that question --

14:43:31 15        THE COURT:  Why is that necessary?

14:43:33 16        MS. VAUGHN:  Well, it goes to the heart of why

14:43:35 17   he was submitting -- what he was claiming this money was

14:43:38 18   going to be for.  That's part of the misrepresentation

14:43:41 19   he made to the Legislature.  He claims the money was for

14:43:46 20   research related to Fireburn, in fact he instead

14:43:50 21   pocketed the money and used it for his personal

14:43:53 22   expenses.

14:43:53 23        THE COURT:  The question is:  What was he going

14:43:55 24   to do during his tenure in the Senate related to

14:43:58 25   Fireburn?

14:43:59  1          It wasn't so much how he billed.  I know there was

14:44:02  2     discussion in the transcript about the billing process

14:44:05  3     and travel, et cetera, which I think Lee and certainly

14:44:08  4     other cases make clear that the travel, in and of

14:44:11  5     itself, is not speech or debate material, unless that's

14:44:13  6     the subject of the legislation.

14:44:15  7          But in this case you're asking him what's he going

14:44:18  8     to do during his tenure.  Why is that necessary to, to

14:44:24  9     get to what I think is what has been charged here, which

14:44:27  10    I thought were along the lines of, one, billing for

14:44:31  11    expenses incurred before he was a senator, billing for

14:44:35  12    things he had already billed for, and billing for -- or

14:44:41  13    receiving funds and converting those funds to his own

14:44:44  14    use.

14:44:45  15         Why, why is it necessary to ask the question:

14:44:47  16    What's he going to do during his tenure?

14:44:51  17              MS. VAUGHN:  Yes.  And the question -- I think

14:44:52  18    it's important that the question is worded as:  What did

14:44:55  19    he propose to do?

14:44:58  20         Promises of future acts is not, is not a protected

14:45:03  21    legislative act.  So what he proposed to do falls well

14:45:06  22    outside of the realm of what is protected under the

14:45:09  23    Speech or Debate Clause.

14:45:11  24         And then this question specifically is important

14:45:14  25    to, was important in this investigation, although not

14:45:17  1    essential to the indictment.

14:45:19  2        I concede that.  This question is not essential to

14:45:23  3    obtain the returning of the indictment.  But it is

14:45:26  4    relevant to the general investigation that was being

14:45:28  5    conducted, because part of the inquiry was whether the

14:45:31  6    defendant was misrepresenting what he was doing in

14:45:35  7    relation to Fireburn.

14:45:37  8        THE COURT:  Assuming that that area of inquiry

14:45:41  9    during the grand jury was something that certainly, that

14:45:45  10   wasn't necessary, and arguably in violation of the

14:45:49  11   Speech or Debate Clause, what, what should the Court

14:45:52  12   look at next?

14:45:54  13       MS. VAUGHN:  So the Court should look at if the

14:45:56  14   indictment would have been returned absent that

14:45:58  15   question, if the Court ultimately deems that question

14:46:01  16   improper.

14:46:02  17       THE COURT:  So is that a question of volume or

14:46:09  18   primacy or of several other things, including those

14:46:12  19   things, to determine whether it permeated the whole

14:46:15  20   grand jury hearing?

14:46:15  21       MS. VAUGHN:  It's really just a question of

14:46:18  22   given the allegations in the indictment -- I mean, under

14:46:21  23   McDade you could have explicitly an allegation in the

14:46:24  24   indictment that is a legislative act.  And even if that

14:46:28  25   single allegation must be struck, if the counts still

14:46:33   1    stand --

14:46:33   2         THE COURT:  But McDade wasn't a case where they

14:46:36   3    were digging into the grand jury testimony the way the

14:46:39   4    Court did in Helstoski, correct?

14:46:42   5         MS. VAUGHN:  McDade was not.

14:46:43   6         THE COURT:  Right.  McDade, they were looking

14:46:45   7    more at the face of the indictment and making an

14:46:48   8    assessment on its face.  And that's why I posited here,

14:46:53   9    I sense that the defense is doing two things.  One is

14:46:56   10   looking at the face of the indictment and saying it's

14:46:58   11   problematic, and two, going behind the indictment and

14:47:03   12   looking at the grand jury hearing and saying it is so

14:47:06   13   permeated with violations that it's worthy of a

14:47:08   14   Helstoski type of remedy.

14:47:10   15       So I'm just focusing right now on the grand jury

14:47:13   16   and determining whether it's so permeated.  And my sense

14:47:18   17   would be is that if there is quite a volume of reference

14:47:22   18   to arguably unnecessary, arguably improper questioning,

14:47:28   19   then I would sense that there is the level of permeation

14:47:32   20   that warrants a Helstoski sort of remedy.  So speak to

14:47:37   21   that point.

14:47:38   22         MS. VAUGHN:  Well, first, Your Honor, this

14:47:40   23   transcript is only one of four witnesses who were in

14:47:42   24   front of the grand jury for, in this investigation.  And

14:47:48   25   it was through a different witness -- and the government

14:47:51  1    can submit that transcript to the Court, if it would

14:47:53  2    like.  It was through --

14:47:54  3          THE COURT:  Well, whose burden is it?  It's the

14:47:57  4    defense's burden, isn't it, at this stage?

14:47:59  5          MS. VAUGHN:  It is the defense's burden, yes,

14:48:01  6    Your Honor.

14:48:01  7          THE COURT:  All right.  Go ahead.

14:48:05  8          MS. VAUGHN:  But you can't -- it's not whether

14:48:06  9    it permeated the grand jury proceedings.  The question

14:48:09  10   is whether the evidence that the Court deems problematic

14:48:12  11   was essential to the indictment.  And here, this one

14:48:18  12   question and answer, one, is not referenced in the

14:48:23  13   indictment, and it's just a small piece of what was

14:48:26  14   presented to the grand jury.

14:48:27  15       What was presented to the grand jury through other

14:48:29  16   testimony was every single invoice that -- every single

14:48:34  17   cash advance request that the defendant submitted

14:48:36  18   related to Fireburn, and his contemporaneous e-mails,

14:48:41  19   financial records, demonstrating that he did not use the

14:48:44  20   money for what he claimed he would, but, in fact,

14:48:46  21   pocketed.

14:48:47  22       That all came in through another witness, and

14:48:50  23   that's what's in the indictment.

14:48:52  24       This witness was only one of four.  And, again, the

14:48:57  25   government would argue that this question, what he

14:49:00  1    proposed to do is not seeking evidence of legislative

14:49:03  2    acts in the first place.  It's asking what his proposal

14:49:05  3    was.  And a promise to perform future legislative acts

14:49:08  4    is not, is not a protected act.

14:49:16  5           THE COURT:  Okay.  Let me hear you on the first

14:49:18  6    part now, which is the face of the indictment.

14:49:21  7           MS. VAUGHN:  Yes, Your Honor.

14:49:26  8       As the government did in its proposed findings it

14:49:32  9    submitted to the Court, if the Court were to go through

14:49:35  10   a paragraph-by-paragraph analysis of the indictment,

14:49:40  11   it's clear that not a single one of the allegations

14:49:42  12   turns on evidence of legislative acts.

14:49:44  13      And, again, I would point out that, I would first

14:49:46  14   point out that the defendant has not identified which

14:49:49  15   allegations he actually believes allege legislative

14:49:53  16   acts.  He's made a general claim that the indictment

14:49:55  17   turns on legislative acts.

14:49:56  18      So that's why it's necessary, without the defendant

14:49:58  19   identifying specifically which allegations he finds

14:50:01  20   problematic, to do a paragraph-by-paragraph analysis of

14:50:04  21   --

14:50:04  22           THE COURT:  There's a count that goes to, use

14:50:08  23   converting funds that were supposed to be paid to the

14:50:11  24   archives, the Danish National Archives, a portion of

14:50:15  25   which I suggest the government suggests was used to

14:50:17  1   legitimately pay off the debts incurred at Danish

14:50:23  2   National Archives.

14:50:23  3        And then there's a portion that was, I think,

14:50:28  4   suggested or indicated in the indictment that was

14:50:32  5   converted to personal use.  Is that the government's

14:50:35  6   theory?

14:50:35  7             MS. VAUGHN:  Yes, Your Honor.

14:50:36  8             THE COURT:  Okay.  Is there any concern that

14:50:39  9   because of the reference to the portion that's

14:50:42  10  legitimate with the objectionable conduct, that that

14:50:48  11  implicates the Speech or Debate Clause?

14:50:51  12            MS. VAUGHN:  Not at all, Your Honor.  So the

14:50:53  13  defendant submitted invoices, some of which, the

14:50:57  14  government concedes, he ended up sending money to the

14:51:01  15  intended recipient for, most of which he did not.  He

14:51:06  16  pocketed it.

14:51:07  17       And the actual charges, the wire fraud charges and

14:51:10  18  the embezzlement charge, span a time period in 2010 in

14:51:15  19  which he -- the government alleges, the indictment

14:51:18  20  alleges, that he just pocketed the money.  So it's

14:51:21  21  complete fraud.  And that's the essential time period.

14:51:25  22       Then looking at the general scheme, which does

14:51:27  23  extend all the way back to the beginning, as the

14:51:30  24  government showed through the exhibits it submitted

14:51:32  25  originally, the defendant was submitting requests to the

14:51:36   1   legislature based on work that he had sought or that he

14:51:39   2   had obtained prior to even his election to the

14:51:43   3   legislature.  And work and conduct before someone's even

14:51:47   4   in the legislature cannot be deemed legislative acts.

14:51:51   5            THE COURT:  No, you can bypass that for the

14:51:57   6   moment.

14:51:57   7            MS. VAUGHN:  And then it's the government's

14:51:59   8   allegation that even to the -- I want to back up for one

14:52:05   9   moment.

14:52:06   10       Nowhere in the indictment does it allege

14:52:10   11   legislative fact-finding.  And that's really the only

14:52:12   12   bucket in which we could be anywhere close here.  And

14:52:16   13   nowhere does the indictment allege legislative

14:52:19   14   fact-finding.

14:52:20   15       It alleges basically the defendant submitted an

14:52:22   16   invoice request, which we know from Lee is not

14:52:25   17   protected.  He received money from that request, which

14:52:28   18   we also know is not protected, because the pay function

14:52:32   19   is completely unrelated to the deliberative and

14:52:36   20   communicative processes of the legislature.

14:52:38   21       So he submitted his request.  He received the money

14:52:40   22   and he cashed the check and pocketed it.  That's the

14:52:43   23   government's allegation.  Or he cashed the check and he

14:52:45   24   used it for some purpose that was not what he had told

14:52:48   25   the legislature he was going to use it for.

14:52:51   1         And so the cashing of the checks is also not a

14:52:53   2    protective legislative act.  The only thing that is

14:52:57   3    protected is something that's an integral part to the

14:53:00   4    deliberative and communicative processes of the

14:53:03   5    legislature, and the indictment nowhere alleges that.

14:53:06   6         And I understand the defendant has submitted in his

14:53:08   7    supplemental materials, hearing transcripts, he

14:53:11   8    submitted bills, but neither of those things are

14:53:14   9    referenced in the indictment in any way.

14:53:17   10        And the fact that it might be a centennial

14:53:20   11   celebration or it might be a Fireburn day, the fact that

14:53:23   12   the defendant can identify things covering the same

14:53:26   13   topic does not render all of his act -- all of his acts

14:53:30   14   related to that topic as protected legislative acts.

14:53:34   15        As the Supreme Court made clear in Gravel, it is

14:53:37   16   not anything in any way related to the legislative

14:53:41   17   process that deemed something to be a legislative act.

14:53:44   18             THE COURT:  All right.  Thank you, Attorney

14:53:47   19   Vaughn.

14:53:47   20        Attorney Jupiter.

14:54:08   21             MR. JUPITER:  Good afternoon, Your Honor.

14:54:09   22             THE COURT:  Good afternoon.

14:54:10   23                 ARGUMENT BY THE DEFENDANT

14:54:10   24             MR. JUPITER:  Your Honor, I wasn't sure where

14:54:14   25   the Court wanted to focus on today.  So if the Court --

14:54:19   1   I did prepare, just in case we needed to go through the

14:54:24   2   various attachments that I think most strongly support

14:54:28   3   our argument, I did -- what I did was I renumbered them,

14:54:35   4   including two of the government's exhibits, just for the

14:54:38   5   purposes of this, my argument.  And I gave a copy of

14:54:43   6   that binder to the government and I can give a copy to

14:54:46   7   the Court.

14:54:48   8       I think the Court is actually going in a little bit

14:54:51   9   different direction, and I can address that.  But if we

14:54:52  10   do get into --

14:54:53  11           THE COURT:  You have a courtesy copy for the

14:54:55  12   Court?

14:54:56  13           MR. JUPITER:  Yes.

14:54:57  14           THE COURT:  Okay.  You can come up.

14:55:24  15           MR. JUPITER:  I want to focus the Court on the

14:55:26  16   fact that this is a case where the government is

14:55:28  17   charging a scheme to defraud, a scheme to defraud,

14:55:33  18   saying that Mr. James started a scheme to defraud --

14:55:37  19           THE COURT:  Well, there are -- as I recall,

14:55:39  20   there are two wire fraud charges, Counts 1 and 2, and

14:55:42  21   then there's program fraud, 666, is Count 3, correct?

14:55:46  22           MR. JUPITER:  Right.

14:55:47  23           THE COURT:  Okay.  And at the nub of these, of

14:55:49  24   course, a wire has to be involved.  But at the nub it is

14:55:53  25   alleging, I believe, at least three different types of

14:55:57  1   criminal conduct.

14:55:58  2        One is billing for expenses before Mr. James was

14:56:07  3   Senator James.  One was double-billing.  And the other

14:56:14  4   is converting to personal use funds that should have

14:56:18  5   gone to the Danish National Archives.  A portion of the

14:56:21  6   funding did go to the Danish National Archives and a

14:56:26  7   portion did not, and the objectionable conduct that is

14:56:28  8   charged is the portion that didn't.

14:56:30  9        Is that your sense of what -- is that the core of

14:56:34  10   the indictment as to the criminal conduct?

14:56:38  11        MR. JUPITER:  That is the -- the Court has

14:56:40  12   identified the manner and means, I think.  And, yes, I

14:56:46  13   agree with the Court that --

14:56:48  14        THE COURT:  Okay.

14:56:49  15        MR. JUPITER:  -- that those are the ways that

14:56:50  16   the government is saying the scheme to defraud was

14:56:53  17   carried out.

14:56:53  18        But it's -- what I wanted to emphasize was that the

14:56:58  19   scheme to defraud, itself, which I think distinguishes

14:57:03  20   this from the cases that the government cites, the

14:57:07  21   scheme to defraud itself was towards legislative acts.

14:57:11  22        And that scheme to defraud was saying that

14:57:14  23   Mr. James started out a scheme in April of 2009 that was

14:57:23  24   designed, not to fool his constituents, not to fool

14:57:28  25   someone outside of the legislature but using the

14:57:32  1    legislative process itself.

14:57:34  2        Consequently --

14:57:36  3        THE COURT:  Well, before you get there, you

14:57:42  4    don't dispute that if you try to get compensation for

14:57:48  5    acts undertaken before becoming a public official, and

14:57:54  6    getting public funds to pay for that, that there's at

14:58:00  7    least arguably a, some criminal conduct that is the

14:58:04  8    sub- -- that could be the subject of an indictment.

14:58:09  9        MR. JUPITER:  It could be the subject of an

14:58:11  10   indictment, certainly.

14:58:12  11        THE COURT:  Okay.  Let me ask the question more

14:58:14  12   precisely, then.

14:58:16  13        Do you dispute that seeking compensation for

14:58:23  14   expenses incurred before a legislator is a legislator is

14:58:28  15   outside of the scope of the Speech or Debate Clause?

14:58:37  16        MR. JUPITER:  I think for that broad statement,

14:58:38  17   I think that it, especially in this case, it can be.

14:58:44  18   For the specific --

14:58:45  19        THE COURT:  Just so -- I want to be very clear.

14:58:47  20   You're saying that it is outside of the Speech or Debate

14:58:50  21   Clause?  There's no Speech or Debate Clause protection?

14:58:53  22        MR. JUPITER:  No, no, no.  There's Speech and

14:58:56  23   Debate Clause protection.

14:58:57  24        THE COURT:  For --

14:58:59  25        MR. JUPITER:  Okay.  Now --

| 14:59:00 | 1 | THE COURT:  -- seeking funds for expenses |

THE COURT:  -- seeking funds for expenses incurred before a legislator is a legislator.

Because I'm looking at the acts that are at the core here and that are mentioned in the indictment.  And one of them is, I think, that Mr. James sought compensation for expenses incurred before he was a senator.  Is that your understanding, that's what's alleged.

MR. JUPITER:  And I think I can answer that directly, Your Honor.

THE COURT:  And my question, to make it more general, is just whether that conduct that occurs before a legislator is a legislator is within the protection of the Speech or Debate Clause?

MR. JUPITER:  No, no.

THE COURT:  Okay.

MR. JUPITER:  Okay.  And that's why I wanted to make sure, this scheme to defraud starts while he -- the scheme to defraud identified in the indictment says beginning at or near April 9th, 2009, while he was a senator.

He is not being charged for acts that occurred before he was a senator.  In fact, he's not being, he's not being charged with making an agreement with private parties before he was a senator.

15:00:17  1          He's not being charged with investigating with --

15:00:21  2    like there was something criminal about him doing his

15:00:23  3    research as a private historian before he was a senator.

15:00:28  4    There's nothing wrong with him coming up with an

15:00:31  5    agreement.

15:00:32  6          Those -- none of those acts they're saying are

15:00:34  7    criminal.  They're saying that this scheme to defraud

15:00:37  8    started April 9th, 2009, and that Mr. James, in April

15:00:42  9    of -- in April of 2009 came up with this scheme that,

15:00:47  10   "I'm going to get money from the legislature."

15:00:50  11         And it's very clear from our attachments, in terms

15:00:55  12   of what the scheme was.  And I think it's even clear

15:00:59  13   from the indictment.

15:01:01  14         And the government concedes it is all related to

15:01:06  15   legislative acts.  From the beginning, in April of 2009,

15:01:12  16   to him contacting the -- and I want to make sure I'm not

15:01:19  17   muddying up the record.  But what the government seeks

15:01:24  18   to -- if you look in the folder, Government's Exhibit

15:01:27  19   Number 12, I read number -- for purposes of this

15:01:29  20   hearing, our Exhibit Number 1 --

15:01:31  21              THE COURT:  Am I to understand that you're

15:01:33  22   saying that the scheme or artifice to defraud begins at

15:01:38  23   a point when Mr. James was a senator?

15:01:43  24              MR. JUPITER:  Exactly.

15:01:44  25              THE COURT:  And so your theory is that the

15:01:46  1    government is charging conduct that is at a time when he

15:01:52  2    was a senator, and arguably someone who could benefit

15:01:56  3    from the protection of the Speech or Debate Clause?

15:01:59  4                MR. JUPITER:  No question.

15:02:00  5                THE COURT:  Okay.  So then, are you saying that

15:02:02  6    the government cannot reconcile that with paragraph 11,

15:02:10  7    for instance, which refers to conduct that predates

15:02:18  8    Mr. James becoming a senator?

15:02:20  9          That is, it alleges James submitted an invoice for

15:02:23  10   translation work that was completed before his election

15:02:27  11   to the legislature, and James received legislature funds

15:02:30  12   for payment of the invoice.

15:02:33  13               MR. JUPITER:  So their proof is --

15:02:35  14               THE COURT:  Well, my question is a yes or no.

15:02:37  15   Are you saying that the government cannot reconcile

15:02:39  16   that?

15:02:39  17         Can they reconcile that or cannot reconcile that.

15:02:43  18               MR. JUPITER:  I'm a little *lost on what you

15:02:45  19   mean by "reconcile."

15:02:46  20               THE COURT:  Is there --

15:02:47  21               MR. JUPITER:  They're not saying it was -- the

15:02:49  22   criminal behavior occurred before he was a senator.

15:02:53  23   They're saying that because he, because this was some --

15:03:00  24   these were services that were done before he was a

15:03:04  25   senator, when he asked for the money, that at that

15:03:08  1    particular time it became criminal.  His asking for the

15:03:12  2    money was --

15:03:12  3         THE COURT:  Are you suggesting -- am I to

15:03:14  4    understand you're suggesting there's something logically

15:03:17  5    inconsistent here?

15:03:19  6      Because there is arguably criminal conduct that

15:03:24  7    preceded the charged time.  That is --

15:03:27  8         MR. JUPITER:  I disagree with the Court's --

15:03:28  9         THE COURT:  I'm just asking a question.  I'm

15:03:30  10   trying to understand -- okay.  Let me ask you this:  Is

15:03:32  11   the government not charging at paragraph 11, for

15:03:36  12   example, that as a senator -- which is the only time

15:03:40  13   when he could get government funds -- that he tried to

15:03:43  14   get government funds for things which he could not

15:03:48  15   receive government funds, that is, expenses incurred

15:03:53  16   before he was a senator?

15:03:58  17        MR. JUPITER:  Yes.

15:03:59  18        THE COURT:  Okay.  Why would that not be

15:04:01  19   conduct -- why isn't that conduct that is outside the

15:04:06  20   protection of the Speech or Debate Clause?

15:04:10  21        MR. JUPITER:  Because the criminal conduct,

15:04:12  22   they're saying that the conduct that's criminal is the

15:04:15  23   conduct that occurred in his request for funds, not in

15:04:23  24   his -- they're not saying that at the time that

15:04:26  25   Mr. James had these services done, according to their

15:04:30  1    theory, that it was criminal for him to have a book

15:04:33  2    translated.  They're saying it was criminal for him to,

15:04:40  3    it was criminal for him to come up with this scheme to

15:04:44  4    defraud to pay for that service.

15:04:48  5        And the question then turns upon whether or not,

15:04:53  6    when Mr. James is trying to get legislation passed and

15:04:56  7    trying to prepare for a, for his committee meeting and

15:05:02  8    obtain materials for that, whether or not it was proper

15:05:05  9    for him, in committing those legislative acts -- which I

15:05:08  10   think are clearly legislative acts when he committed

15:05:11  11   those legislative actions, when he went, sought to

15:05:15  12   secure this material that he needed to prepare for the

15:05:18  13   subcommittee -- the committee hearing, when he sought to

15:05:22  14   draft this legislation, when he did all of these

15:05:25  15   legislative actions, were those legislative actions at

15:05:29  16   that time criminal?

15:05:31  17       They're not alleging that in 2006 or 2007 that he

15:05:34  18   had this scheme, like, "Oh, I'm going to be senator in a

15:05:37  19   couple years.  So what I'm going to do is I'm going

15:05:40  20   to" -- that's not their theory.  Their theory is that

15:05:42  21   his scheme started in 2009.

15:05:44  22       THE COURT:  Is the government not charging

15:05:46  23   something along these lines -- let's assume for the sake

15:05:49  24   of argument you have a flat tire and you incur an

15:05:54  25   expense for a new tire two years before you become a

15:06:00  1    legislator.  And then you become a legislator.  And

15:06:03  2    while a legislator, you submit an invoice to get money

15:06:07  3    for that replacement tire.

15:06:10  4         Are you suggesting that that is protected by the

15:06:14  5    Speech or Debate Clause?

15:06:17  6         That is, the undertaking to try to get the payment

15:06:22  7    for that tire that you paid for, or that the expense

15:06:26  8    that was incurred before the person was a legislator.

15:06:30  9         MR. JUPITER:  In the case of a flat tire I

15:06:32  10   think is highly unlikely.  But I think if you're

15:06:35  11   drafting legislation to get your tire fixed, it possibly

15:06:39  12   could.

15:06:41  13        In terms of whether or not the government can

15:06:43  14   allege, in terms of whether or not, you know, it's

15:06:48  15   possible, I doubt it.  I think that's, you know, that

15:06:50  16   would be hard to say, that that would be inextricably

15:06:55  17   tied to any kind of legislative process.

15:06:57  18        But the scheme specifically here is that his scheme

15:07:01  19   to defraud was to use the legislative process.  Calling

15:07:05  20   on him to defend whether or not what he did to prepare

15:07:10  21   for the committee meetings, to prepare to get this bill

15:07:14  22   drafted, to sway his fellow senators, and the debate

15:07:21  23   that took place and the speeches he made, to do all of

15:07:25  24   that, whether or not his actions, his request, while he

15:07:30  25   was a senator, he has to defend and say these were

15:07:33  1   legitimate.  And that's exactly what the Speech and

15:07:36  2   Debate Clause prohibits.

15:07:37  3        THE COURT:  Okay.  Am I to understand you to

15:07:38  4   say, then, that as part and parcel of his legislative

15:07:42  5   activities, seeking compensation for certain expenses,

15:07:47  6   you're saying that is part and parcel of the protected

15:07:51  7   legislative activity?

15:07:55  8        MR. JUPITER:  I hate to make a broad statement

15:07:57  9   like that.  What I would say was that we --

15:07:59  10       THE COURT:  Well, answer my question first,

15:08:01  11  then you can explain.

15:08:09  12       MR. JUPITER:  Requesting funds, in themselves,

15:08:12  13  is not a legislative activity.

15:08:14  14       THE COURT:  Okay.

15:08:15  15       MR. JUPITER:  Requesting, requesting funding

15:08:19  16  for, to obtain, in this case, the materials and then

15:08:23  17  doing the, in the process of preparing for drafting

15:08:28  18  legislation, and also when you have the, the express

15:08:34  19  purpose of debating and preparing for the committee

15:08:39  20  meeting, the committee hearings, public hearings that

15:08:42  21  Mr. James specifically did, and makes reference to,

15:08:48  22  those are.

15:08:48  23       THE COURT:  Now, to the extent the government's

15:08:50  24  allegation is cabined in a way so that it charges that

15:08:58  25  Mr. James, for example, is seeking compensation for a

15:09:03  1    translation that occurred and that was completed before

15:09:06  2    he was a senator, are you saying that that effort to get

15:09:15  3    compensation or the expensing or invoicing of that

15:09:22  4    expense is something that is protected?

15:09:24  5            MR. JUPITER:  In this, it is protected.

15:09:27  6    Specifically when you look at the fact that the

15:09:34  7    legislation itself related to payment for the

15:09:38  8    acquisition as well as translation of documents, the

15:09:43  9    acquisition and translation of all of these original

15:09:47  10   records, as well as documents related to Fireburn.

15:09:52  11           THE COURT:  We're just looking at paragraph 11.

15:09:54  12   It says, "James submitted an invoice for translation

15:09:56  13   work that was completed before his election to the

15:10:01  14   legislature, and James received legislature funds for

15:10:05  15   payment of the invoice."

15:10:07  16           So if I were to use my example, again, just for

15:10:13  17   ease of reference, James submitted an invoice for a

15:10:16  18   replacement tire that was replaced before he was a

15:10:21  19   senator, and received funds for that replacement tire --

15:10:25  20   I know it's not drafting legislation, but it's for

15:10:30  21   completed work that occurred before his entry into the

15:10:33  22   legislature.

15:10:36  23           Are you saying that that receives the benefit of

15:10:40  24   the Speech or Debate Clause; one, the effort to receive

15:10:45  25   the funding and, two, the act in itself, that is, having

15:10:51 1    something completed before being a member of the

15:10:53 2    legislature?

15:10:54 3         MR. JUPITER:  Okay.  So the act itself of

15:10:57 4    having something completed before being in the

15:11:01 5    legislature, that's not --

15:11:01 6         THE COURT:  That's not protected, correct?

15:11:05 7         MR. JUPITER:  Well, that's not criminal

15:11:06 8    activity.

15:11:06 9         THE COURT:  Well, my question is -- the

15:11:07 10   question here is really, is it entitled to protection by

15:11:11 11   the Speech or Debate Clause.  And my question is, is it?

15:11:16 12        MR. JUPITER:  That --

15:11:16 13        THE COURT:  It's a yes or no.

15:11:18 14        MR. JUPITER:  No.  In terms of whether or not,

15:11:20 15   for instance, we're sitting in trial and asking, is that

15:11:26 16   protected?  No.

15:11:29 17     It is something that occurred outside the

15:11:31 18   legislative process.  Is that protected?  No.

15:11:35 19     The question is, is whether someone, a senator, has

15:11:37 20   to defend against whether or not the payment for a

15:11:42 21   document that he uses, he, whether or not he has to

15:11:49 22   defend in court his acquisition of that document.

15:11:55 23     Now, what the government is alleging is --

15:11:57 24        THE COURT:  As I understand it, though, on its

15:12:01 25   face, though, the indictment says it's for the, an

15:12:05  1    invoice for translation work, not for receiving, not for

15:12:08  2    a copy of that work, but for the translation work

15:12:12  3    itself.

15:12:13  4        If that's what it alleges on its face, am I not

15:12:16  5    required to look at that and then assess based on what's

15:12:20  6    on the face of the indictment?

15:12:21  7            MR. JUPITER:  In terms of whether or not it's

15:12:23  8    criminal for him to pay for it, for the legislature to

15:12:31  9    inquire.  And so --

15:12:32  10           THE COURT:  Isn't the inquiry, though, whether

15:12:34  11   it is a legislative act?

15:12:36  12           MR. JUPITER:  That's exactly -- and that's

15:12:38  13   exactly what --

15:12:39  14           THE COURT:  And if it is a legislative act,

15:12:41  15   then arguably it might be entitled to protection by the

15:12:47  16   Speech or Debate Clause.  But as I understand you, what

15:12:50  17   it sounds like you're saying, it is not a legislative

15:12:51  18   act, in which case we don't even reach the --

15:12:55  19           MR. JUPITER:  I was very careful to

15:12:57  20   distinguish.  Because the act- -- you're asking me to

15:12:59  21   distinguish between whether or not, whether or not the

15:13:04  22   activity -- regarding the activity that predated him

15:13:08  23   being a legislator is protected.

15:13:10  24       That activity is not protected.  What's protected

15:13:15  25   is whether or not it was proper for him to pay for

15:13:20   1    something that he, something that he used to acquire --

15:13:25   2              THE COURT:  I'm going to put up the indictment.

15:13:29   3       Do you have the indictment there, Attorney Jupiter?

15:13:35   4       Because as I understand it, the Court's inquiry

15:13:38   5    necessarily requires that I look at the indictment,

15:13:41   6    correct?

15:13:46   7              MR. JUPITER:  Yes, Your Honor.

15:13:47   8              THE COURT:  Okay.

15:14:10   9              MR. JUPITER:  Here it is.

15:14:11  10              THE COURT:  Okay.  If you can put it on the

15:14:12  11    Elmo.  If you can put it on the Elmo, paragraphs 8, 9,

15:14:17  12    10, 11.

15:14:59  13       Okay.  Is it -- am I to understand that converting

15:15:03  14    a portion of funds received from the legislature, is

15:15:08  15    that a legislative act?

15:15:15  16              MR. JUPITER:  Appropriating legislative funds?

15:15:19  17              THE COURT:  Well, we'll go to the indictment.

15:15:20  18    I'm just asking generally, is converting legislative

15:15:24  19    funds to your personal use, is that a legislative act?

15:15:26  20              MR. JUPITER:  No.

15:15:27  21              THE COURT:  Okay.  Now looking at the

15:15:28  22    indictment at paragraph 8, it seems to allege that James

15:15:33  23    obtained cash advances for payment to Danish National

15:15:38  24    Archives, and that a portion of it was converted for

15:15:41  25    personal use.

15:15:44  1          To the extent that the wire fraud counts go to that
15:15:49  2   type of activity, that is, converting to personal use
15:15:53  3   government funds, is that conduct that is legislative,
15:15:59  4   the conversion to the personal use?
15:16:02  5          MR. JUPITER:  The conversion to the personal
15:16:03  6   use is not legislative.
15:16:06  7          THE COURT:  To the extent the government is, or
15:16:10  8   paragraph 8 is read to charge that type of conduct as
15:16:15  9   objectionable, tell me, what is the legislative act that
15:16:21  10  is to be gleaned from paragraph 8?
15:16:28  11         MR. JUPITER:  The legislative act is his
15:16:32  12  transferring the, to effect the transfers to Denmark on
15:16:43  13  behalf of the legislature -- well, no, I'm sorry -- is
15:16:50  14  obtaining cash advances from the legislature to effect
15:16:54  15  the transfer to Denmark on behalf of the legislature.
15:17:02  16  And I don't think you just look at the indictment here,
15:17:05  17  but you look specifically at, you -- this is
15:17:09  18  incorporating what they say the, the scheme to defraud
15:17:14  19  was.
15:17:15  20         The scheme to defraud was him telling the
15:17:18  21  legislature, "I'm doing this for legislation."  I don't
15:17:26  22  think you isolate the paragraphs from each other.
15:17:32  23         So --
15:17:34  24         THE COURT:  Okay.  And let's go to paragraph 9,
15:17:36  25  if you will.  That alleges that Mr. James double-billed

15:17:43  1    the legislature for expenses.  And then it alleges, as I

15:17:51  2    understand it, that he received funds and then he -- for

15:17:54  3    a certain purpose, and then he obtained funds for the

15:18:00  4    very same purpose.

15:18:01  5        Is the, is obtaining cash for something that has

15:18:07  6    already been compensated, is that a legislative act?

15:18:16  7            MR. JUPITER:  It is a legislative act if --

15:18:19  8            THE COURT:  So you're saying the receipt of

15:18:20  9    cash, in itself, is a legislative act?

15:18:24  10            MR. JUPITER:  I did not say in and of itself.

15:18:27  11            THE COURT:  Okay.

15:18:29  12            MR. JUPITER:  I say -- what I said, if it is

15:18:32  13    done for the purposes of legislation.  I don't, I

15:18:40  14    believe the case law is clear that the Court can look --

15:18:43  15            THE COURT:  What authority is there for that,

15:18:45  16    that -- is it -- you're saying that as charged in the

15:18:49  17    indictment, this is for the purpose of legislation?

15:18:54  18        I'm, I'm asking about the portion that, I believe,

15:18:58  19    paragraph 9 focuses on, which is the second hyphenated

15:19:04  20    word, which is double-billed.  Is the

15:19:09  21    doubling-billing --

15:19:09  22            MR. JUPITER:  No criminal act, in and of

15:19:11  23    itself, is legislative.  I would -- well, I can't even

15:19:14  24    say, go that far.  But I would say that usually, yeah,

15:19:22  25    under, if you're talking about a specific criminal act

15:19:26  1    in isolation, you know, most of the cases we found is

15:19:30  2    there's probably going to be a finding -- I can't say in

15:19:33  3    every one, because some criminal acts are -- I think the

15:19:36  4    cases make clear that you're going to have some things

15:19:39  5    that are going to end up being covered, some possibly

15:19:46  6    criminal acts that may end up being subject to the

15:19:50  7    Speech or Debate Clause.

15:19:52  8        The cases specifically say that there's, this

15:19:56  9    clause will make it more difficult for the government to

15:19:58  10   prove their cases.  But that's not the point of inquiry.

15:20:02  11   The point of inquiry doesn't end when you say:  Okay, we

15:20:06  12   take this one act and it's criminal in and of itself.

15:20:09  13   You take this one act and it's criminal in and of

15:20:13  14   itself.

15:20:13  15            THE COURT:  You keep saying that.  My question

15:20:15  16   was, I was asking if it's legislative.  That's what I'm

15:20:18  17   asking you.  You know, I want to know if the

15:20:21  18   double-billing in and of itself is something that is

15:20:23  19   legislative and entitled to protection by the Speech or

15:20:29  20   Debate Clause.

15:20:29  21            MR. JUPITER:  In and of itself, no.

15:20:30  22            THE COURT:  Okay.  And then in context here

15:20:32  23   you're saying that a double- -- that an allegation of

15:20:34  24   double-billing is a legislative act, in context here?

15:20:39  25            MR. JUPITER:  In context here, double-billing

15:20:43  1    for the purposes of obtaining material for material to

15:20:47  2    draft legislation, obtaining material to prepare for a

15:20:53  3    senate hearing is going to be covered by a, is going --

15:21:00  4    if it's directly related to, and is an integral part of

15:21:06  5    the legislative process, then it is covered by the

15:21:09  6    Speech or Debate Clause.

15:21:10  7          THE COURT:   Okay.   Let me ask you to focus on

15:21:14  8    paragraph 10 for the moment.   And that is submitting an

15:21:19  9    invoice and receiving funds for something that was not

15:21:28  10   done.

15:21:28  11       Is that -- stepping away from the indictment, is

15:21:34  12   submitting an invoice and receiving funds for something

15:21:37  13   that was not done, is that a legislative act or not?

15:21:43  14         MR. JUPITER:   Submitting an invoice for, if it

15:21:48  15   is -- I think the inquiry is whether or not it was

15:21:50  16   submitted for purposes of legislation.

15:21:54  17         THE COURT:   Okay.

15:21:54  18         MR. JUPITER:   In and of itself, submitting an

15:21:56  19   invoice for research and translation work, in and of

15:21:59  20   itself, in a vacuum, we could never say that -- I mean,

15:22:02  21   I don't know how anyone can say that that's legislative.

15:22:08  22   But I --

15:22:08  23         THE COURT:   Tell me -- I guess -- I think your

15:22:11  24   position might be, then, that you're saying in context

15:22:14  25   here on the face of the indictment that what is alleged

15:22:17   1    is something that is arguably legislative, then?

15:22:23   2              MR. JUPITER:  I think because of the -- my

15:22:25   3    position is that because of the first part, that it's

15:22:29   4    manifestly legislative.

15:22:31   5              THE COURT:  When you say "the first part," tell

15:22:33   6    me what is the first.

15:22:40   7              3MR. JUPITER:  Particularly, I'll just go

15:22:41   8    straight to paragraph 4:  "While Senator James

15:22:48   9    proposed" -- and that word "proposed" is important.

15:22:52   10   Now, they don't say "James proposed through

15:22:56   11   legislation," but how does a senator propose?

15:22:59   12        "While Senator James proposed using legislature

15:23:04   13   funds to obtain historical documents related to the

15:23:09   14   Fireburn from Danish National Archives located in

15:23:14   15   Denmark."

15:23:15   16        These are the general allegations.  James proposed

15:23:20   17   using legislative funds to obtain, translate, and

15:23:25   18   distribute copies of the documents to institutions in

15:23:30   19   the US Virgin Islands.

15:23:33   20        All of the paragraphs that the Court refers to are

15:23:36   21   premised on this.  And if we have any question as to

15:23:45   22   what is meant by "proposed," then we go to what actually

15:23:50   23   he was doing and what actually is being referred to

15:23:55   24   while he's a senator in April.

15:23:57   25        And that's where we get to the documents that show

15:24:00  1    he was drafting legislation that is completely

15:24:03  2    consistent with the grand jury testimony that was

15:24:06  3    elicited by the government, that's completely consistent

15:24:11  4    with the time period that the government refers to in

15:24:13  5    the indictment, that was obtained from this grand jury

15:24:17  6    that heard that testimony --

15:24:19  7              THE COURT:  Well, I'm going to get to the grand

15:24:21  8    jury testimony in a moment, but just for the moment I

15:24:24  9    wanted to focus on paragraph 10.

15:24:26  10         You're saying that when you look at paragraph 4,

15:24:30  11   "Future proposed conduct," you're saying that future

15:24:34  12   proposed conduct in conjunction with the submission of

15:24:37  13   an invoice for something that was never done is

15:24:41  14   legislative activity?

15:24:46  15        Because you're saying paragraph 4 is the one that

15:24:48  16   says, is proposing something, right?  And you said look

15:24:51  17   at it in context.  I'm trying to get a sense of the

15:24:54  18   context you're trying to establish.

15:24:56  19        Am I to understand that a proposal, or proposed use

15:25:06  20   of funding, which would be a future thing, in

15:25:11  21   conjunction with the actual submission of an invoice for

15:25:15  22   work that was never done, is legislative activity?

15:25:18  23             MR. JUPITER:  Yeah.  That scheme to -- the

15:25:21  24   scheme to defraud is a legislative scheme, yes, Your

15:25:24  25   Honor.  The proposed -- they're saying this is how he

15:25:26  1    carried out his scheme.  And the scheme is a, is clearly

15:25:31  2    a scheme that involves -- that directly goes to

15:25:36  3    legislation -- how was he going to justify getting the

15:25:39  4    funds?  "I'm going to draft legislation.  I'm going to

15:25:42  5    have committee, hearing meetings.  I'm going to get this

15:25:45  6    material.  I'm going to debate it on the floor."

15:25:47  7          There's an amendment that talks about, the

15:25:51  8    amendment to the bill that didn't get out, initially get

15:25:54  9    out of committee.  It was amended how?  By saying that

15:25:57  10   there would be an educational component that would

15:26:00  11   include the dissemination of these materials that I'm

15:26:02  12   obtaining.  They're not saying he didn't obtain any of

15:26:06  13   these materials.

15:26:07  14          THE COURT:  Let me see if --

15:26:08  15          MR. JUPITER:  All of this goes directly to the

15:26:10  16   scheme to defraud is a scheme to get legislation passed.

15:26:16  17          THE COURT:  Okay.  And then if you can just

15:26:19  18   focus on 11, paragraph 11 for a moment.  I think I

15:26:22  19   started out asking questions about that before I

15:26:24  20   actually went to the indictment.

15:26:26  21          Paragraph 11 says that, "James submitted an invoice

15:26:30  22   for translation work that was completed before his

15:26:33  23   election to the legislature, and James received

15:26:37  24   legislature funds for payment of this invoice."

15:26:49  25          And again in context with what is proposed in

15:26:52  1    paragraph 4, or at any point above paragraph --

15:26:57  2    paragraphs 8, 9, 10 and 11, are you suggesting that

15:27:04  3    proposing using legislative funds, and then actually

15:27:08  4    submitting an invoice for work that was done, a

15:27:11  5    translation was done before Mr. James became a senator,

15:27:16  6    and receiving funds while he is a senator for work that

15:27:20  7    was done and completed before his election, am I to

15:27:25  8    understand that that is legislative activity?

15:27:30  9         MR. JUPITER:  In this context, yes, when it is

15:27:34  10   done for the --

15:27:35  11        THE COURT:  Okay.

15:27:35  12        MR. JUPITER:  When it is done, when it is a

15:27:37  13   part of the integral legislative process.

15:27:44  14        THE COURT:  All right.  Let me hear you on the

15:27:46  15   grand jury transcript.

15:27:47  16      As I understand, your position is that the

15:27:53  17   testimony during the grand jury included violations of

15:27:59  18   the Speech or Debate Clause, and that those violations

15:28:03  19   so permeated the grand jury that it warrants dismissal

15:28:09  20   in the manner that the Third Circuit said was

15:28:11  21   appropriate in Helstoski.

15:28:14  22      Is that your argument?

15:28:16  23        MR. JUPITER:  That's one of the arguments, yes,

15:28:18  24   Your Honor.

15:28:18  25        THE COURT:  Okay.  So tell me, what is it that

15:28:23  1    is objectionable in the grand jury?

15:28:27  2         Because as I understood it you submitted the

15:28:30  3    transcript of a witness who, I think the Court pointed

15:28:34  4    out for the government, at one point that witness speaks

15:28:37  5    of educational programs or undertaking.  And I think it

15:28:48  6    was preceded by a question:  What did Senator James

15:28:53  7    propose to do during his term of office?

15:29:02  8              MR. JUPITER:  So this is -- I have it as a,

15:29:08  9    page 21 that's filed under seal, as one of our exhibits.

15:29:22  10   And the Court -- there's the question the first time by

15:29:26  11   the government.  And the answer related to Fireburn.  He

15:29:30  12   wanted to use -- first of all, when the Danes left in

15:29:34  13   1917, they took all the records, the Danish records back

15:29:37  14   to Copenhagen, Denmark.

15:29:39  15        And there's a discussion that follows.  I won't go

15:29:43  16   through all of it --

15:29:43  17             THE COURT:  Speak right into the microphone so

15:29:46  18   we can hear you.

15:29:48  19             MR. JUPITER:  There's a discussion that follows

15:29:51  20   for several pages.  And page 22, with, right after,

15:30:00  21   there's a -- the witness says, and as the chair of the

15:30:03  22   committee -- "as chair of the committee on education,

15:30:06  23   youth and culture, this was significant."

15:30:09  24        Another question:  "What did James propose to do

15:30:13  25   during his tenure in the senate related to Fireburn?"

15:30:18   1          "To use the information to draft legislation --

15:30:22   2   rather, through recognition of Fireburn to use the

15:30:26   3   legislation to draft" -- it says "craft" but I believe

15:30:30   4   it's "draft legislation dealing with the commission, the

15:30:33   5   centennial commission."

15:30:34   6          Another question:  "Okay.  Did Senator James

15:30:37   7   propose to obtain documents from Denmark related to

15:30:41   8   Fireburn?"

15:30:42   9          "It was not -- the short answer is yes."

15:30:44   10         "And how did he propose to do that?"

15:30:48   11         This was very important to the government's case

15:30:51   12   because they wanted to establish that this was not a

15:30:53   13   scheme to defraud that just started in 2010.  They

15:30:59   14   wanted to relate events that went all the way back to

15:31:03   15   2009.

15:31:05   16         The witness is giving the government information

15:31:09   17   about the legislative process, what he propose to do,

15:31:13   18   how he was going to do it, how he did it; photocopying

15:31:19   19   the documents.

15:31:21   20         Goes on, page 23:  How did he get the money?  How

15:31:28   21   he traveled to Denmark, that's related to that.  How did

15:31:33   22   it come out of his budget?  They keep going for several

15:31:41   23   pages about the documents.

15:31:44   24         Page 25, when they -- and I think it's when the --

15:31:51   25   "But when the documents arrived in St. Croix, were they

15:31:53  1   in Danish or English or both?"

15:31:56  2       "They were in both.  They had already been

15:31:59  3   translated."

15:32:04  4       It goes on for several pages, Your Honor.  And it

15:32:08  5   was obviously important that the government wanted the

15:32:12  6   grand jury to hear about how Mr. James was going to

15:32:19  7   effectuate this legislation.

15:32:25  8       And for the government now to say:  Well, the

15:32:29  9   witness was inconsistent, well, they didn't point that

15:32:32  10  out to the grand jury, they didn't say, "oh, Grand jury,

15:32:35  11  don't believe this witness," I didn't see anything in

15:32:37  12  the record that says that.  They were trying to elicit

15:32:39  13  more and more information to substantiate the fact that

15:32:42  14  Mr. James's purported, or what they would characterize

15:32:46  15  as his purported efforts to get legislation passed was a

15:32:55  16  fraud.

15:32:57  17       THE COURT:  Okay.  Now, why is it that the

15:33:00  18  discussion here -- I think I had referred to page 10.

15:33:02  19  And you're correct, it's actually pages 21 through 26.

15:33:07  20  Then I think there's some discussion on 31 to 33, and

15:33:15  21  that's more about the procedures involving the payment

15:33:17  22  of funds to the Fireburn project.

15:33:21  23       But focusing on 21 through 26, is it your sense,

15:33:26  24  assuming that some or all of that is objectionable, for

15:33:31  25  Speech or Debate Clause purposes, that it so permeates

15:33:35    1    the grand jury process?

15:33:39    2            MR. JUPITER:  It, it is.  But more so it puts

15:33:42    3    everything, puts everything else in context as to what

15:33:46    4    the government's investigation was about.

15:33:50    5            THE COURT:  Assuming for the sake of argument

15:33:53    6    that it doesn't so permeate, but that it is

15:33:57    7    objectionable, what's the remedy?

15:34:00    8        That is, if it so permeates then the Helstoski

15:34:05    9    result is required, correct?  Dismissal?

15:34:07   10            MR. JUPITER:  Yes, Your Honor.

15:34:08   11            THE COURT:  But if it isn't -- if I were to

15:34:09   12    conclude, arguably, this is objectionable, you know, you

15:34:12   13    didn't need to go into this in order to prove your case

15:34:17   14    or to develop a record to return an indictment, isn't

15:34:24   15    there a remedy short of dismissal, if this isn't

15:34:29   16    information that is, that is properly brought before the

15:34:35   17    grand jury?

15:34:37   18            MR. JUPITER:  The Court -- I believe the Court

15:34:38   19    would have to take a fruits analysis and see what fruits

15:34:42   20    were derived --

15:34:44   21            THE COURT:  Well, wouldn't it just be an

15:34:46   22    excision, to the extent it were to have gone afoul?

15:34:58   23            MR. JUPITER:  So if the Court were looking for

15:35:00   24    a remedy short of dismissal, I think that the Court

15:35:03   25    could require that the government -- any, you know,

15:35:07  1    until the government presents their evidence, we don't

15:35:11  2    know, we can't really say what evidence is the fruit of

15:35:16  3    this inquiry.

15:35:20  4         The other thing could be --

15:35:22  5         THE COURT:  Is it a use concern that the courts

15:35:24  6    are concerned with here?

15:35:27  7         That is, should the government -- would the

15:35:29  8    government just be precluded from using certain things

15:35:32  9    that are objectionable?

15:35:36  10         MR. JUPITER:  That's all I can think of right

15:35:38  11    now, Your Honor.  I would like to think about that a

15:35:40  12    little more.

15:35:41  13         THE COURT:  All right.  Now, am I to understand

15:35:43  14    you, are you saying that the government cannot give a

15:35:46  15    sense of context with which the crime occurred?

15:35:51  16         That is, for instance, as I understand it, the

15:35:54  17    government is alleging that a scheme or artifice

15:35:56  18    unfolded, and the scheme or artifice was to defraud the

15:36:00  19    legislature and the people of the Virgin Islands of

15:36:03  20    public funds by submitting double-billing, false

15:36:06  21    invoices and seeking remuneration for things that had

15:36:10  22    already been compensated, and to give a sense of

15:36:16  23    context.

15:36:16  24         Am I to understand that you're saying the

15:36:18  25    government cannot give a sense of what was in the ether

15:36:28  1    at the time?  That is, if --

15:36:30  2            MR. JUPITER:  I don't think they can, from the

15:36:33  3    standpoint of when the crime itself -- so the crime

15:36:35  4    itself is the, is the legislative act.  So that's

15:36:39  5    what -- I think they relied in their pleadings very

15:36:43  6    heavily on Brewster.  And so in the sense when --

15:36:49  7    Brewster goes very specifically to the act of bribery,

15:36:55  8    right, and says it's not, it's not the actions taken in

15:36:59  9    the execution of the agreement when the bribe is taken,

15:37:06  10   it's the bribe itself which is outside of the

15:37:09  11   legislature's sphere.

15:37:10  12       As opposed to here, where the legislative sphere is

15:37:15  13   the actual scheme that they're saying -- so when -- so

15:37:19  14   the actual scheme is a legislative scheme.  As you're

15:37:22  15   saying here, "I'm going to commit this crime," according

15:37:26  16   to them.  They're saying --

15:37:27  17           THE COURT:  Are you saying there can be a

15:37:28  18   legislative scheme to defraud that is somehow regarded

15:37:38  19   as a legislative act?

15:37:42  20           MR. JUPITER:  So let's go --

15:37:43  21           THE COURT:  My question is a yes or no.

15:37:47  22           MR. JUPITER:  Yes.

15:37:49  23           THE COURT:  Okay.

15:37:49  24           MR. JUPITER:  I had to think a little bit, but

15:37:51  25   I think so, Your Honor.

15:37:52  1        THE COURT:  So a legislator could have a scheme

15:37:54  2   as part of his legislative activity to do something that

15:37:57  3   is arguably defrauding the government, but provided that

15:38:00  4   it's a legislative act or provided it's something that

15:38:04  5   can be argued to be a legislative act, it could arguably

15:38:08  6   be protected by the Speech or Debate Clause.

15:38:13  7        MR. JUPITER:  Let's go to the extreme to prove

15:38:16  8   the point and say, what if there's a bill drafted to

15:38:20  9   commit a criminal act.  So, you know, I mean, it's all

15:38:24  10  out in public in terms of, this is, this is actually in

15:38:27  11  the legislative, this is in the sphere of legislation.

15:38:31  12     I think that's going -- obviously, it makes no

15:38:34  13  sense that a legislature would say, "I'm going to

15:38:36  14  propose a bill to commit a crime."

15:38:38  15     But to prove the point, I think that's completely

15:38:41  16  within the legislative -- that's completely within the

15:38:45  17  legislature to be able to deal with those matters.  And

15:38:48  18  that's the whole point, is that all of this was before

15:38:51  19  the legislature, all of this was done, all of this

15:38:53  20  scheme that they're saying was to defraud the

15:38:58  21  legislature itself was, was to, was, is what is being

15:39:06  22  charged, not something outside of the legislative

15:39:11  23  sphere.

15:39:15  24        THE COURT:  Now, the -- I think I asked you a

15:39:18  25  question earlier about use.  That is, assuming that the

15:39:21  1    Court were to conclude that anything uttered during the

15:39:26  2    grand jury did not, to the extent it violated the Speech

15:39:30  3    or Debate Clause, it didn't so permeate the undertaking

15:39:33  4    of the grand jury such that dismissal isn't warranted.

15:39:44  5         Wouldn't the remedy be, then, to the extent there's

15:39:46  6    something that's arguably on the cusp there, that the

15:39:50  7    Court simply be vigilant, since it is a use privilege,

15:39:54  8    and just make sure that the government doesn't use any

15:40:00  9    evidence that is objectionable?

15:40:03  10         Isn't that your remedy?

15:40:05  11              MR. JUPITER:  I thought that's what I was

15:40:07  12    saying.

15:40:07  13              THE COURT:  Okay.

15:40:07  14              MR. JUPITER:  I thought that's what I was

15:40:08  15    saying.  Yes, Your Honor.

15:40:09  16              THE COURT:  Okay.  Okay.

15:40:10  17              MR. JUPITER:  When I said "fruits," I meant the

15:40:15  18    fruits of their misconduct.

15:40:16  19              THE COURT:  Okay.  All right.  Thank you.

15:40:23  20         Okay.  Attorney Vaughn?

15:40:32  21                   ARGUMENT BY THE GOVERNMENT

15:40:32  22              MS. VAUGHN:  Your Honor, I only have a few

15:40:34  23    points of response, unless the Court has specific points

15:40:37  24    you'd like me to address.

15:40:39  25              THE COURT:  Okay.  Go ahead.

15:40:43  1          MS. VAUGHN:  But I think what, the exercise

15:40:45  2     that the Court just went through with the indictment is

15:40:47  3     really where the focus has to be under the Speech or

15:40:52  4     Debate Clause, that paragraph-by-paragraph analysis.

15:40:54  5          And when you do that, it's clear this is a case --

15:40:58  6     and I can list off several others.  This is a case like

15:41:12  7     Rostenkowski, where the Court affirmed that a

15:41:15  8     congressman could be tried for misapplying congressional

15:41:18  9     funds.

15:41:19  10          This is a case like Diggs, where the Court

15:41:22  11     confirmed a congressman's conviction for misapplying

15:41:25  12     funds allotted for compensating congressional employees.

15:41:29  13          This is case like Hollander v Clay, where the Court

15:41:33  14     refused to dismiss a claim against a congressman for

15:41:36  15     submitting false travel vouchers.

15:41:40  16          THE COURT:  Unlike those cases, though, in this

15:41:42  17     case and in Helstoski, I haven't seen it in another

15:41:45  18     circuit, the defendant suggests that there is something

15:41:48  19     going on in the grand jury that triggers a different

15:41:50  20     analysis, doesn't it?

15:41:52  21          We'll just refer to it as sort of the Helstoski

15:41:55  22     analysis.  Is there -- those other cases, Diggs,

15:42:01  23     Rostenkowski, I don't recall that those courts went into

15:42:04  24     the type of drill-down into the grand jury transcript

15:42:10  25     that Helstoski did, and that is suggested by the defense

15:42:17  1      here.

15:42:18  2              MS. VAUGHN:  Well, Your Honor, yes.  When the

15:42:20  3      indictment on its face does not allege any legislative

15:42:24  4      acts, there really is no reason to look into the grand

15:42:27  5      jury proceedings, because if the indictment is not

15:42:31  6      turned on legislative acts, it's not legislative acts

15:42:33  7      evidence on which the grand jury relied to return that

15:42:37  8      indictment.

15:42:38  9          And so Helstoski says that, you know, if you

15:42:42  10     present privileged material to the grand jury, it's only

15:42:44  11     fatal where the infection cannot be excised.  And if

15:42:47  12     it's not in the indictment in the first place, there's

15:42:50  13     nothing to excise.

15:42:51  14         The Supreme Court in Johnson said that you can

15:42:56  15     proceed on an indictment where it's wholly purged of

15:43:00  16     elements offensive to the Speech or Debate Clause.

15:43:02  17     Again, there was no --

15:43:03  18             THE COURT:  So it's the government's position

15:43:05  19     that if you lose on the facial review, that is, going

15:43:08  20     through the indictment, you don't get a Helstoski bite

15:43:12  21     of the apple?

15:43:14  22             MS. VAUGHN:  Yes, Your Honor.  Like any other

15:43:15  23     motion to dismiss, once the -- you typically don't pull

15:43:18  24     back the curtain and look at the grand jury proceedings

15:43:22  25     if the indictment is valid on its face.

15:43:26  1          And the Ninth Circuit has actually directly

15:43:29  2     addressed this, and they've said, clearly, quote, "The

15:43:32  3     mere fact that some legislative act evidence was

15:43:34  4     presented to the grand jury cannot entitle the

15:43:36  5     legislator to dismissal."

15:43:39  6          So where you have a situation like here, where the

15:43:43  7     indictment on its face does not allege any official

15:43:47  8     acts, it necessarily --

15:43:49  9               THE COURT:  What authority is there that you

15:43:51  10    have where there was a challenge, both to the face of

15:43:56  11    the indictment, that is, suggesting that it reached

15:44:00  12    legislative acts that were protected by the Speech or

15:44:04  13    Debate Clause, and also there was a challenge to the

15:44:06  14    undertaking in the grand jury, that is, the evidence

15:44:10  15    presented to the grand jury that arguably the grand jury

15:44:15  16    heard evidence that violated the Speech or Debate

15:44:20  17    Clause?

15:44:20  18               MS. VAUGHN:  Your Honor, I'm not actually -- I

15:44:22  19    can't think of a case off the top of my head where both

15:44:26  20    of those questions were being addressed.

15:44:27  21               THE COURT:  Okay.  Go ahead.

15:44:29  22               MS. VAUGHN:  I also wanted to clarify that the,

15:44:34  23    I think Attorney Jupiter said that the government

15:44:37  24    conceded that these, the allegations were connected to

15:44:40  25    legislative acts .

1    15:44:41    The government does not concede that.  I want to
2    15:44:44    make sure that's clear for the record.  It's the
3    15:44:46    government's position that none of the conduct alleged
4    15:44:48    in the indictment is related to any legislative acts.
5    15:44:57    I mean, I think that it's clear if you walk through
6    15:44:58    the allegations in the indictment, it's important to
7    16:08:01    stay tethered to those allegations.  And at the point
8    15:45:04    that we're talking about, whether the defendant obtained
9    15:45:07    documents, what he did with those documents, that's
10   15:45:10    completely untethered from the allegations in the
11   15:45:13    indictment, that the defendant submitted invoices and
12   15:45:16    received money based on invoices and that those invoices
13   15:45:19    were fraudulent.
14   15:45:20          THE COURT:  What's your response to the
15   15:45:23    defense's position that -- about the scheme or the
16   15:45:25    artifice -- I think what defense is suggesting is,
17   15:45:28    pushed to its logical extreme, to the extent there is a
18   15:45:31    scheme that is undertaken during the course of a
19   15:45:35    legislator's tenure, that arguably that could be a
20   15:45:39    legislative act.
21   15:45:45          MS. VAUGHN:  There's two parts to the answer.
22   15:45:47    The first part is Gravel and McDade, both the Supreme
23   15:45:50    Court and the Third Circuit say just because you do
24   15:45:52    something while you're a legislature -- legislator
25   15:45:54    doesn't mean it's a legislative acts.  You start from

15:45:57   1        that premise.  Even though a legislator takes part in

15:45:59   2        all sorts of conduct, this is only a subset of that

15:46:03   3        that's legislative.

15:46:04   4            And then you look at if you're engaging in a scheme

15:46:06   5        to defraud while you're a legislature -- legislator.

15:46:09   6            So in Lee, for example --

15:46:10   7                THE COURT:  But I think, I think that Attorney

15:46:13   8        Jupiter's point is that to the extent the scheme is,

15:46:21   9        let's say, for example, made part of legislation that's

15:46:25  10        being proposed, that arguably then even a scheme can be

15:46:33  11        legislative protected activity.

15:46:35  12                MS. VAUGHN:  In that case, Your Honor, the

15:46:37  13        scheme would not be protected.  The piece of legislation

15:46:41  14        is a protected act.  So the government cannot introduce

15:46:44  15        evidence of the bill or the law that was passed, but the

15:46:50  16        government could enter other evidence.

15:46:52  17            So, for example, in Lee, the defendant there, the

15:46:57  18        government had alleged that the defendant submitted a

15:47:00  19        voucher for a trip and that that voucher was, was false,

15:47:05  20        that the trip was actually for personal reasons.

15:47:08  21            The Court said:  Well, the trip may or may not be

15:47:11  22        legislative.  He may or may not have engaged in

15:47:14  23        protected activity.  But the voucher itself is not

15:47:18  24        protected.  The representations he made in the voucher

15:47:21  25        are not protected.

15:47:23  1        And so that's a situation where you very well could

15:47:24  2   have some aspect of the conduct that's protected.  But

15:47:27  3   the charged conduct, the misrepresentations in the

15:47:30  4   voucher is not protected.

15:47:34  5        THE COURT:  Okay.  All right.  Thank you.

15:47:34  6

15:47:34  7              RULING BY THE COURT

15:47:38  8        THE COURT:  All right.  Before the Court is the

15:47:39  9   defense motion to dismiss for violation of the Speech or

15:47:43 10   Debate Clause.

15:47:43 11        The Court has undertaken a review of the

15:47:49 12   indictment, a detailed review of the indictment.  The

15:47:51 13   Court engaged in inquiry with counsel with respect to

15:47:55 14   certain paragraphs.  That is not to suggest the Court

15:47:58 15   didn't review the entire indictment.

15:48:01 16        The Court is certainly appreciative of the

15:48:08 17   defense's position, but is not persuaded by it.  The

15:48:11 18   acts that are charged here, that are labeled as

15:48:15 19   objectionable and subject of criminal exposure, the

15:48:25 20   Court doesn't find that they are even close to

15:48:27 21   legislative acts.

15:48:30 22        Given some of the examples that the Court used with

15:48:33 23   its hypothetical with the tire, for example -- the Court

15:48:35 24   doesn't even need to get to the hypothetical.  But just

15:48:38 25   looking at the face of the indictment and where the nub

15:48:40  1    of the conduct is outlined, paragraph 10, for instance,

15:48:54  2    it is hard to conceive of a way that submitting an

15:48:57  3    invoice for work that was never done, how that can be a

15:49:00  4    legislative act worthy of protection that is outlined in

15:49:05  5    the Speech or Debate Clause.

15:49:07  6         Similarly, with respect to paragraph 11, submitting

15:49:12  7    an invoice and receiving funds on that invoice for work

15:49:17  8    that was undertaken and completed before election to the

15:49:23  9    legislature, it is hard to conceive how that can be

15:49:25  10   viewed as a legislative act.

15:49:29  11        Similarly, obtaining cash advances and converting a

15:49:35  12   portion of that cash advance for personal use, it is

15:49:39  13   hard to conceive how that can be regarded as a

15:49:42  14   legislative act.

15:49:44  15        And finally, obtaining a cash advance for payment

15:49:46  16   to the Danish National Archives, when those funds had

15:49:54  17   already been used and obligated for that purpose, and

15:49:59  18   then doing it again for the same expense, it's hard to

15:50:03  19   conceive how that can be regarded as a legislative act.

15:50:07  20        And doing what the defense suggests -- and of

15:50:11  21   course the Court is duty-bound to look at the indictment

15:50:14  22   as a whole, at -- in context, the circumstance -- the

15:50:20  23   outcome doesn't, doesn't change.

15:50:24  24        Looking at -- I believe the defense suggested

15:50:29  25   looking at paragraph 4, for instance -- that is, what

15:50:33  1   Senator James proposed to do -- and coupling that with

15:50:40  2   some of the examples that the Court pointed out.

15:50:42  3        Coupling that paragraph 4, proposed use of

15:50:45  4   legislative funds, and the allegations at paragraphs 8,

15:50:48  5   9, 10, 11, or looking at the indictment as a whole, the

15:50:54  6   Court is hard-pressed to find anything that comes close

15:50:57  7   to an allegation that would implicate legislative

15:51:02  8   activity.

15:51:03  9        To be sure, there is certainly conduct that is

15:51:08  10  referred to in the indictment that indicates, for

15:51:14  11  instance, that Mr. James was a senator and that there

15:51:18  12  was discussion of the Fireburn and an intention to

15:51:26  13  propose legislation and propose the use of funds for

15:51:31  14  things related to the Fireburn.

15:51:34  15       Significantly, though, the case law doesn't support

15:51:36  16  the outcome that's urged by the defense.  And that is

15:51:41  17  that somehow the mention or the proximity of a

15:51:46  18  discussion of the Fireburn somehow transforms what is

15:51:57  19  nonlegislative activity into legislative activity.

15:52:01  20       The case law in this circuit is very clear, Lee,

15:52:05  21  Helstoski, just to name a few, McDade, that certain

15:52:10  22  acts, in and of themselves, do not constitute

15:52:13  23  legislative acts worthy of the protection afforded by

15:52:16  24  the Speech or Debate Clause.

15:52:18  25       Now, to the extent that there is no violation of

15:52:24 1    the Speech or Debate Clause on the, in the indictment,

15:52:30 2    and for the sake of argument, assuming that you can go

15:52:35 3    behind the grand jury and review the grand jury

15:52:43 4    testimony, again, the defense has submitted the grand

15:52:47 5    jury transcript of a witness, and the Court has reviewed

15:52:50 6    that testimony.

15:52:53 7        And while arguably at pages, I believe, 21

15:52:56 8    through 26, there might be some mention of what

15:53:01 9    Mr. James intended to do during his tenure as a senator

15:53:05 10   with respect to the Fireburn, and while arguably that

15:53:09 11   may not have been necessary to return an indictment, it

15:53:16 12   does not reach the level of permeation that was

15:53:19 13   discussed and contemplated in Helstoski, such that the

15:53:23 14   entire process is so infected that it warrants

15:53:29 15   dismissal.

15:53:30 16       Finally, the Court will note that -- well, let me

15:53:33 17   just note this final part.

15:53:35 18       The Court has reviewed the entirety of the

15:53:38 19   transcript and the submissions, the supplemental

15:53:40 20   transmission -- submissions of the defense, and the

15:53:42 21   Court finds that the outcome has not changed.  There's

15:53:46 22   nothing in any of the submissions that indicate that,

15:53:51 23   one, the grand jury proceedings were so permeated by

15:53:54 24   violations that they warrant dismissal; or two, that

15:53:58 25   suggests that anything in the indictment is a violation

15:54:04    1    of the Speech or Debate Clause.

15:54:08    2         Finally, the Court notes that the Speech or Debate

15:54:12    3    Clause protection is really something that goes to a use

15:54:16    4    privilege.  And given the -- this matter has been raised

15:54:20    5    before the Court and the Court is certainly alert to --

15:54:23    6    alerted to the concern, and given that Mr. James was at

15:54:29    7    one time Senator James, the Court is certainly mindful

15:54:33    8    that things undertaken in his legislative capacity that

15:54:36    9    are truly legislative acts, that those matters should

15:54:42   10    never be brought before any jury.  And the Court is

15:54:46   11    certainly mindful of that and will be vigilant during

15:54:50   12    any such trial of that matter to make sure that the use

15:54:54   13    privilege is one that is protected.

15:55:11   14         Is there something else we need to tend to,

15:55:14   15    Attorney Vaughn?

15:55:14   16         Let me finally say, the motion is denied.

15:55:17   17         Yes, Attorney Vaughn?

15:55:18   18         MS. VAUGHN:  Your Honor, I just want to clarify

15:55:19   19    for the record, too, that the government does maintain

15:55:21   20    its objection that the Revised Organic Act applies in

15:55:24   21    the first place.

15:55:25   22         THE COURT:  Yes.  I think I made a ruling on

15:55:27   23    that.  It's 1572, correct?

15:55:30   24         MS. VAUGHN:  Yes.

15:55:30   25         THE COURT:  Yes.  And the Court is mindful.

15:55:31  1    And I think the government's position is this, if I

15:55:34  2    recall from our February discussion:  Is that a state

15:55:38  3    legislator receives no protection in the Speech or

15:55:43  4    Debate Clause.  But the Court is mindful that the

15:55:44  5    Supreme Court case that addressed that speaks to, unless

15:55:49  6    the Congress so provided, and the Court finds that 1572

15:55:52  7    is one of those instances where the Congress

15:55:59  8    specifically provided and explicitly put in the language

15:56:01  9    of the Speech and Debate Clause.

15:56:03  10       So the Court regards the protection in 1572 as

15:56:06  11   something that attaches here, because as the Court

15:56:08  12   recalls, it is a provision that specifically refers to

15:56:13  13   the Virgin Islands Legislature.  And the provision

15:56:18  14   reads, "No member of the legislature shall be held to

15:56:21  15   answer before any tribunal other than the legislature

15:56:24  16   for any speech or debate in the legislature, and the

15:56:27  17   member shall in all cases, except treason, felony or

15:56:31  18   breach of the peace, be privileged from arrest during

15:56:33  19   their attendance at sessions of the legislature and in

15:56:36  20   going to and returning from the same."

15:56:39  21       That is a provision that applies specifically to

15:56:41  22   the Virgin Islands Legislature .  It is a provision in,

15:56:45  23   significantly, a federal law.  And the Court finds that

15:56:49  24   the concern raised by the government and one that was

15:56:57  25   addressed by the U.S. Supreme Court in Gillock is -- the

15:57:07  1    circumstances presented in Gillock are a little bit

15:57:09  2    different.  That was a Tennessee legislator where there

15:57:12  3    was no such provision in federal law relating to the

15:57:15  4    Tennessee Legislature.

15:57:17  5        And there is one that relates to the Virgin Islands

15:57:20  6    Legislature.  The Court is duty-bound to consider that

15:57:22  7    and honor and cannot ignore it.

15:57:27  8        So the Court's holding, which I believe was evident

15:57:33  9    before, the Court understands the government objects to

15:57:35  10   that, and the Court doesn't see any reason to change its

15:57:38  11   holding.

15:57:39  12       I believe that covers the motion in its entirety.

15:57:42  13       Attorney Jupiter, is there anything else?

15:57:44  14           MR. JUPITER:  No, Your Honor.

15:57:45  15           THE COURT:  Okay.

15:57:46  16       Attorney Vaughn, is there anything else?

15:57:47  17           MS. VAUGHN:  Yes, sorry, Your Honor.

15:57:50  18       The government would also like to clarify as to

15:57:52  19   whether the Court will be issuing a written opinion or

15:57:55  20   if this is the Court's, the Court's ruling.

15:57:58  21           THE COURT:  I will -- the Court's intention is

15:58:03  22   to, at the very least, issue an order.  I think I've

15:58:06  23   been fairly explicit in what I've said from the bench,

15:58:10  24   although the Court will probably issue an order that

15:58:12  25   will indicate, "for the reasons outlined by the Court

15:58:15  1    during the hearing," and then issue the order that

15:58:20  2    officially denies the -- or not "officially"; it is very

15:58:24  3    official, it is denied.  But we'll have a separate order

15:58:27  4    issued.  And I can do that today.

15:58:32  5         If the government is asking whether there will be a

15:58:34  6    separate memorandum opinion, to the extent the Court

15:58:40  7    refers to its reasons that are outlined here from the

15:58:43  8    bench, there will be none.

15:58:46  9         But to the extent the Court has some time between

15:58:55  10   now and the trial of this matter, which I think is set a

15:59:00  11   week from this coming Monday, if I'm not mistaken, I

15:59:03  12   think it's the 24th of July; is that correct?

15:59:07  13             MR. JUPITER:  Yes.

15:59:07  14        And for scheduling purposes, Your Honor, we will be

15:59:10  15   seeking an interlocutory appeal.

15:59:13  16             THE COURT:  Okay.  Then we'll make sure that we

15:59:15  17   get something else, although I think this is fairly

15:59:21  18   explicit, so that the defense can file its petition as

15:59:25  19   soon as possible.  All right.

15:59:27  20        I expect that the government will be -- I don't

15:59:30  21   know if the government is planning to file a futility

15:59:36  22   motion or not, or if the government needs some time to

15:59:39  23   consider that, but, Attorney Vaughn, did you have a

15:59:42  24   thought on that one way or the other?

15:59:44  25             MS. VAUGHN:  I do, Your Honor.  Given the

15:59:46    1    posture that we're in now, that the Third -- that we
15:59:49    2    have gone to the Third Circuit once, that the Court sent
15:59:53    3    it back down for review before -- and so that it could
15:59:58    4    review it before trial, the government is likely not
16:00:02    5    going to be filing an additional motion, a futility
16:00:06    6    motion.
16:00:06    7         So given that, and given that the defendant has a
16:00:09    8    right to an interlocutory appeal, the government would
16:00:13    9    propose maybe instituting a similar procedure as to what
16:00:16   10    we did before, where we update the Court once a month as
16:00:19   11    to the status of the interlocutory appeal, and then have
16:00:22   12    a status hearing once we know the Third Circuit's
16:00:26   13    schedule, so that we can set a more firm trial after the
16:00:29   14    appeal is resolved.
16:00:30   15              THE COURT:  All right.  Okay.  All right.
16:00:33   16    Thank you, Counsel.
16:00:34   17         I'll see counsel in chambers in five minutes.
16:00:38   18         (Court in recess at 4:00 p.m.)
           19
           20                        ---
           21
           22
           23
           24
           25

1
2
3
4                           CERTIFICATE
5
6          This document is hereby certified
7         to be a true and accurate transcript
8           of the foregoing proceedings.
9
10
11     /s_____    July 30, 2017
                Chandra Kean, RMR                  DATE
12            Official Court Reporter
13
14
15
16
17
18
19
20
21
22
23
24
25