DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

UNITED STATES OF AMERICA,          )
                                   )
                 Plaintiff,        )
                                   )
          v.                       )     Criminal No. 2015-42
                                   )
WAYNE JAMES,                       )
                                   )
                 Defendant.        )
_____  )


ATTORNEYS:

Joycelyn Hewlett, Acting United States Attorney
Delia L. Smith, AUSA
Amanda Vaughn, AUSA
Justin D. Weitz, AUSA
United States Attorney's Office
St. Thomas, VI
     *For the United States of America,*

Omodare B. Jupiter, Federal Public Defender
Brendan A. Hurson, AFPD
St. Thomas, U.S.V.I.
     *For defendant Wayne James.*


**MEMORANDUM OPINION[1]**

GÓMEZ, J.

     Before the Court is the "Motion to Dismiss Indictment or,

In the Alternative, For Suppression of Evidence" of Wayne James.

---

[1] The Court previously ruled on the motion to dismiss the indictment. This memorandum opinion outlines the reasons for the Court's ruling.

*United States v. James*
Criminal No. 2015-42
Memorandum Opinion
Page 2

## I.   FACTUAL AND PROCEDURAL HISTORY

Wayne James ("James") was elected to the legislature of the Virgin Islands (the "Legislature") as a Senator in 2008. James served from 2009-2011. James has an interest in an era of Virgin Islands history referred to as the Fireburn[2] and undertook legislative efforts to commemorate it. He sought to make Danish documents memorializing the Fireburn available to the people of the Virgin Islands. He also sought to help commemorate the Fireburn through other means, such as establishing a day of remembrance.

As part of those commemorative efforts, James received funds from the Legislature to "seek out, procure, and translate documents that would prove instrumental to Mr. James' legislative efforts to properly commemorate the Fireburn." (ECF No. 92, at 6.) In receiving the funds from the legislature, James received at least two wire transfers from the Virgin Islands government.

As part of a federal audit into the Legislature's finances, some questions were raised regarding the funds James received as

---

[2] The Fireburn was a post emancipation labor revolt in the Virgin Islands. The Fireburn resulted in the burning of hundreds of acres of land. The Fireburn is an event of great cultural significance to many in the Virgin Islands. Most documentation of the Fireburn was removed to Denmark. Some of those documents remain in the Danish National Archives. Those documents are not written in English.

*United States v. James*
Criminal No. 2015-42
Memorandum Opinion
Page 3

part of his work on the Fireburn legislation. The Grand Jury investigated James. During its investigation, the Grand Jury heard testimony from various people, including James's "Special Advisor" Hortense Rowe ("Rowe"). Rowe explained that James sought to procure information from the Danish National Archives, "information recorded in Danish, as well as to get others, other persons to translate the information from Danish to English." *Id.* at 9. To achieve this purpose, James used "money that was allotted to the office of Senator Wayne A.G. James for his senatorial purposes." *Id.* Rowe further explained that the money "covered all expenses relating to the retrieving of the documents, the translation of the documents, the photocopying of the documents, the translation of the documents, the photocopying of the documents, the transfer of information to DVD, and (sic) the shipment to St. Croix." *Id.*

James was indicted on October 1, 2010. That indictment consisted of three counts. Counts I and II allege wire fraud. Count III alleges Federal Program embezzlement.

On February 3, 2017, James filed a "Motion to Dismiss Indictment or, In the Alternative, For Suppression of Evidence" (the "Motion"). ECF No. 87. In the Motion, James argues that the indictment should be dismissed, or, in the alternative, that evidence should be suppressed due to violations of the Speech or

Debate clause of the Virgin Islands Revised Organic Act, 48 U.S.C. § 1572(d). On February 7, 2017, a hearing was held in this matter. After hearing the evidence, the Court denied the Motion without prejudice. At the end of the February 7, 2017, hearing, the Court offered James the opportunity to submit any additional evidence he might possess. On February 7, 2017, and February 8, 2017, James submitted additional evidence for the Court's consideration. On February 9, 2017, James filed a Notice of Appeal. James had appealed the Court's February 7, 2017, oral order.

On April 12, 2017, the Third Circuit issued a Judgment addressing James's appeal. The Third Circuit held that because the Court's February 7, 2017, order "was not a definitive decision," the Third Circuit did not have jurisdiction. *United States v. James*, 2017 WL 1371400, at *1 (3d Cir. April 12, 2017). The Third Circuit further stated

> We encourage the District Court to enter a final decision and order on the defendant's motion, taking into account the supplemental materials and making whatever formal findings of fact that are necessary. *See United States v. Menendez*, 831 F.3d 155, 164 (3d Cir. 2016) (noting that we review speech-or-debate findings of fact for clear error); *see also* Fed. R. Crim. P. 12(d) ("When factual issues are involved in deciding a [pretrial criminal] motion, the court must state its essential findings on the record."). The District Court should issue its decision in advance of trial so that we may review it. *See, e.g., United*

*United States v. James*
Criminal No. 2015-42
Memorandum Opinion
Page 5

> *States v. Modanlo*, 762 F.3d 403, 410-13 (4th
> Cir. 2014).

*Id.*

On July 13, 2017, the Court held a supplemental hearing on

the Motion. After hearing argument, the Court denied the Motion.

## II.   DISCUSSION

48 U.S.C. § 1572(d) ("Section 1572(d)") states:

> No member of the [Virgin Islands] legislature
> shall be held to answer before any tribunal
> other than the legislature for any speech or
> debate in the legislature and the members
> shall in all cases, except treason, felony, or
> breach of the peace, be privileged from arrest
> during their attendance at the sessions of the
> legislature and in going to and returning from
> the same.

The Third Circuit has recognized that Section 1572(d) "is

worded similarly to the speech or debate Clause of the United

States Constitution, which is the legislative immunity provision

for our national representatives." *Government of the Virgin

Islands v. Lee*, 775 F.2d 514, 519 (3d Cir. 1985). "Since the

purposes of the two immunity provisions are so closely

parallel," the Third Circuit has found "that the interpretation

given to the Speech or Debate Clause of the Federal

Constitution, while not dispositive as to the meaning of the

legislative immunity provision for the Virgin Islands, is,

nevertheless, highly instructive." *Id.*

*United States v. James*
Criminal No. 2015-42
Memorandum Opinion
Page 6

The Speech or Debate Clause "protects against inquiry into acts that occur in the regular course of the legislative process and into the motivation for those acts." *United States v. Brewster*, 408 U.S. 501, 525 (1972).

"[T]he Speech or Debate privilege is at its core a *use privilege*." *In re Grand Jury*, 587 F.2d 589, 596 (3d Cir. 1978). The burden of establishing the applicability of the privilege lies with the legislator who is invoking it. *See Lee*, 775 F.2d at 524.

### III.   <u>ANALYSIS</u>

James argues that he is immune from prosecution because he:

> served as a senator in the legislature from 2009 to January of 2011. The alleged illegal conduct occurred almost exclusively within that time period, including two (2) wire transfers in 2010 and a series of acts from late 2010 through 2011. Further, the vast majority of evidence the government intends to offer in its case-in-chief memorializes acts committed in the course of that service. As such, the indictment must be dismissed. In the alternative, all evidence secured in violation of this clear privilege must be suppressed.

*Mot. to Dismiss*, ECF No. 92, at 11.

In order to assess whether James's conduct is protected, the Court will first determine the threshold matter of whether Section 1572(d) applies in the current context.

*United States v. James*
Criminal No. 2015-42
Memorandum Opinion
Page 7

## A. Applicability of Section 1572(d)

The United States argues that Section 1572(d) does not "limit the power of the federal government to prosecute state and local corruption." *Id*. On that basis, the United States contends that Section 1572(d) does not bar federal prosecutions because the Revised Organic Act is the functional equivalent of a state constitution. The Government also notes that "[n]o state legislator in any of the fifty states or Puerto Rico enjoys such protections" from federal investigation and prosecution. *Id.* at 12. For those reasons, the Government contends an interpretation of the ROA and 48 U.S.C. § 1572 that grants Virgin Islands legislators such protection is inconsistent with Congressional intent. *See id.* at 13.

In *United States v. Gillock*, 445 U.S. 360 (1980), the United States Supreme Court addressed a state legislator's speech or debate rights in the context of a federal prosecution. In that case, Edgar Gillock ("Gillock"), a state senator in Tennessee, was indicted in the Western District of Tennessee on various counts relating to the alleged misuse of his position as a state senator. *See id.* "Before trial, Gillock moved to suppress all evidence relating to his legislative activities." *Id.* at 362. The motion was based on the Speech or Debate Clause

in the Tennessee constitution. *See id*. The district court

granted the motion. *See id*.

On appeal, the Sixth Circuit remanded the matter to the

district court for additional consideration. *See id.* at 363. On

remand, the district court again granted the motion to suppress,

and the government once again appealed. *See id.* at 365. The

Sixth Circuit affirmed the suppression of evidence related to

the legislative process--such as Gillock's participation in

legislative committees, requests for a formal opinion from the

Attorney General, and actions taken on the floor of the state

senate. *See id.* at 365-66. The Government then appealed to the

Supreme Court. *See generally id.*

The Supreme Court reversed. *Id.* at 374. In its analysis,

the Supreme Court emphasized that one of the primary purposes of

speech and debate clauses is "to preserve the constitutional

structure of separate, coequal, and independent branches of

government." *Id.* at 369 (internal quotations omitted).

Regardless, when the federal government has power to act, the

supremacy clause "dictates that federal enactments will prevail

over competing state exercises of power." *Id.* The Court further

explained that:

> The Federal Speech or Debate Clause, of
> course, is a limitation on the Federal
> Executive, but by its terms is confined to
> federal legislators. The Tennessee Speech or

> Debate Clause is in terms a limit only on the
> prosecutorial powers of that State. Congress
> might have provided that a state legislator
> prosecuted under federal law should be
> accorded the same evidentiary privileges as a
> Member of Congress. Alternatively, Congress
> could have imported the "spirit" of *Erie R.
> Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82
> L.Ed. 1188 (1938), into federal criminal law
> and directed federal courts to apply to a
> state legislator the same evidentiary
> privileges available in a prosecution of a
> similar charge in the courts of the state. But
> Congress has chosen neither of these courses.

*Id.* at 374.

Here, it is well established that "the Revised Organic Act

of 1954 . . . functions as the Virgin Islands' constitution."

*See Brown v. Hansen*, 973 F.2d 1118, 1120 (3d Cir. 1992). The ROA

creates the structure of the government of the Virgin Islands.

*See United States v. Willis*, 844 F.3d 155, 165 (3d Cir. 2016)

("[The ROA] vests the power of the Government of the Virgin

Islands in three coequal branches: the legislative, the

executive, and the judicial. These three branches constitute one

territorial entity . . . ."). That underlying purpose of the

ROA, however, does not transform the ROA from a federal statute

to a local statute. Unlike the speech or debate provision in

Gillock—which was the product of state legislation—Section

1572(d) remains the product of federal legislation. *Cf. Kendall*

*v. Russell*, 572 F.3d 126, 131 n.4 (3d Cir. 2009) ("As the ROA is

a federal statute, the District Court had federal question

*United States v. James*
Criminal No. 2015-42
Memorandum Opinion
Page 10

jurisdiction in this case pursuant to 28 U.S.C. § 1331."). As such, the Court will interpret the ROA, including its speech or debate clause provision, in the same manner as other federal statutes.

"[T]he starting point for interpreting a statute is the language of the statute itself." *Mitchell v. Horn*, 318 F.3d 523, 535 (3d Cir. 2003). The Court "do[es] not look past the plain meaning unless it produces a result demonstrably at odds with the intentions of its drafters or an outcome so bizarre that Congress could not have intended it." *Id.* (internal quotation marks and citations removed).

Section 1572(d) states:

> No member of the legislature shall be held to answer before any tribunal other than the legislature for any speech or debate in the legislature and the members shall in all cases, except treason, felony, or breach of the peace, be privileged from arrest during their attendance at the sessions of the legislature and in going to and returning from the same.

The plain language of Section 1572(d) is very broad in its pronouncement that "[n]o member of the legislature shall be held to answer before any tribunal . . . ." 48 U.S.C. § 1572(d). The statute does not qualify the breadth of the protection it grants. That language necessarily includes federal courts. Indeed, the Supreme Court has recognized that the grant of such

*United States v. James*
Criminal No. 2015-42
Memorandum Opinion
Page 11

a privilege to a state legislator is entirely within the

prerogative of the Congress. *E.g.*, *Gillock*, 445 U.S. at 374 (". 

. . Congress could have . . . directed federal courts to apply

to a state legislator the same evidentiary privileges available

in a prosecution of a similar charge in the courts of the

state.").

It is true that no *state* legislature enjoys such a

privilege. *See id.* However, in other contexts, Congress has seen

fit to treat the Virgin Islands differently from the states and

even from other territories.[3] That is precisely what Congress did

with Section 1572(d). Significantly, it chose to grant Virgin

Islands legislators speech or debate privileges in federal court

similar to those privileges that members of Congress enjoy.

Indeed, the Third Circuit has recognized that the "'Virgin

Islands' legislative immunity provision . . . is worded

similarly to the Speech or Debate Clause of the United States

Constitution, which is the legislative immunity provision for

our national representatives." *Gov't of the Virgin Islands v.*

---

[3] For example, the Virgin Islands is outside the customs zone of the United
States. *See United States v. Hyde*, 37 F.3d 116, 121 (3d Cir. 1994)(quoting
Act of March 3, 1917, § 3 (reprinted in 1 V.I. Code Ann. 42 (1967)) and
explaining that "[t]he statute passed by Congress provided that '[t]here
shall be levied, collected, and paid upon all articles coming into the United
States or its possessions from the Virgin Islands the rates of duty and
internal-revenue taxes which are required to be levied, collected, and paid
upon like articles imported from foreign countries.'").

*United States v. James*
Criminal No. 2015-42
Memorandum Opinion
Page 12

*Lee*, 775 F.2d 514, 519 (3d Cir. 1985). Given the similar purpose
of the immunity provisions, the Third Circuit has found that
"the interpretation given to the Speech or Debate Clause of the
Federal Constitution, while not dispositive . . . is,
nevertheless, highly instructive." *Id.* at 520. Here, the Court
regards Section 1572(d) as the extension of a privilege to
Virgin Island legislators who may appear in a federal tribunal,
consistent with the privilege afforded to members of Congress by
the Speech or Debate Clause. As such, the Court holds that
Section 1572(d) affords members of the Virgin Islands
Legislature protection from prosecution for conduct that falls
within the confines of legislative speech or debate.

**B. Whether James's Conduct is Protected**

Having determined that the speech or debate privilege in
Section 1572(d) extends to a Virgin Islands Senator who is
prosecuted by federal prosecutors, the Court will now determine
whether the United States has violated James's speech or debate
rights.

Legislative immunity "protect[s] an official exercising a
legislative function "from inquiry into legislative acts or the
motivation for actual performance of legislative acts . . . ."
*Fowler-Nash v. Democratic Caucus of Pa. House of
Representatives*, 469 F.3d 328, 331 (3d Cir. 2006) (quoting

*United States v. James*
Criminal No. 2015-42
Memorandum Opinion
Page 13

*Brewster,* 408 U.S. at 508). However, the Supreme Court has recognized that not all actions taken by a legislator are protected by the Speech or Debate Clause:

> The heart of the Clause is speech or debate in either House. Insofar as the Clause is construed to reach other matters, they must be an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House.

*Gravel v. U.S.*, 408 U.S. 606, 625 (1972). The Clause "does not prohibit inquiring into activities that are casually or incidentally related to legislative affairs but not a part of the legislative process itself" or "illegal conduct simply because it has some nexus to legislative functions." *Brewster*, 408 U.S. at 528.

There is:

> a two-step framework for identifying legislative acts protected by the Speech or Debate Clause. First, we look to the form of the act to determine whether it is inherently legislative or non-legislative. Some acts are so clearly legislative in nature that no further examination has to be made to determine their appropriate status. Examples of manifestly legislative acts include introducing and voting on proposed resolutions and legislation, introducing evidence and interrogating witnesses during committee hearings, subpoenaing records for committee hearings, inserting material into the

*United States v. James*
Criminal No. 2015-42
Memorandum Opinion
Page 14

Congressional Record, and delivering a speech
in Congress. And even though such manifestly
legislative acts may have been pursued and
accomplished for illegitimate purposes, such
as personal gain, the acts themselves are
obviously legislative in nature. Thus an
unworthy purpose does not eliminate Speech or
Debate protection.

On the other side of the spectrum, some acts
are so clearly non-legislative that no inquiry
into their content or underlying motivation or
purpose is needed to classify them. Examples
include legitimate constituent services such
as the making of appointments with Government
agencies, assistance in securing Government
contracts, preparing so-called news letters to
constituents, news releases, and speeches
delivered outside the Congress, and, of
course, *illegitimate activities* such as
accepting bribes in exchange for taking
official action. *Even if these non-legislative
acts involve policy or relate to protected
legislative activity, they are not protected.*

If an act is neither manifestly legislative
nor clearly non-legislative, then it is
ambiguously legislative, and we proceed to the
second step of the Speech or Debate analysis.
There we consider the content, purpose, and
motive of the act to assess its legislative or
non-legislative character. Ambiguously
legislative acts—including trips by
legislators and informal contacts with the
Executive Branch—will be protected or
unprotected based on their particular
circumstances.

*United States v. Menendez*, 831 F.3d 155, 166 (3d Cir. 2016)

(emphasis added) (internal citations and quotations omitted).

The burden of establishing the applicability of legislative

*United States v. James*
Criminal No. 2015-42
Memorandum Opinion
Page 15

immunity, by a preponderance of the evidence, rests with the
legislator. *See Lee*, 775 F.2d at 524.

When legislative acts are implicated, the Court must
dismiss an indictment if: (1) a review of the indictment
establishes that it relies on legislative acts, *see United
States v. Helstoski*, 576 F.2d 511, 516 (3d Cir. 1978)
("*Helstoski I*")*;* or (2) before the grand jury, there was
"wholesale violation of the speech or debate clause" such that
the privileged material "cannot be excised" and "permeated the
whole proceeding[,]" *United States v. Helstoski*, 635 F.2d 200,
205 (3d Cir. 1980) ("*Helstoski II*"). James contends that his
indictment must be dismissed on both grounds. The Court will
address each argument in turn.

   **i.   The Indictment**

The Court will first address whether the indictment relies
on legislative acts. The indictment alleges that James undertook
certain acts that violate 18 U.S.C. § 1343, the wire fraud
statute. Specifically, the government alleges in Counts I and II
that:

>    8.  **JAMES** obtained cash advances from the
>    Legislature, payable to **JAMES**, for all
>    expenses related to the Fireburn research
>    project, purportedly to effect transfers to
>    Denmark on behalf of the Legislature. **JAMES**
>    obtained cash advances ostensibly for payment
>    to the Danish National Archives, but in fact
>    only paid part of them to the Danish National

*United States v. James*
Criminal No. 2015-42
Memorandum Opinion
Page 16

Archives, converting the remainder for his personal use.

9. **JAMES** double-billed the Legislature for expenses, obtaining a cash advance for payment to the Danish National Archives for work for which he had received a previous cash advance.

10. **JAMES** submitted invoices for research and translation work that was never done, and **JAMES** received Legislature funds for payment of these invoices.

11. **JAMES** submitted an invoice for translation work that was completed before his election to the Legislature, and **JAMES** received Legislature funds for payment of the invoice.

(ECF No. 1 at 2-3.)

Additionally, Count III alleges that James violated the federal program embezzlement statute 18 U.S.C. § 666(a)(1)(A) by receiving "Government of the Virgin Islands funds based on false representations that the money would be used to fund historical research, when in fact James appropriated a portion of the money to his own use," *id.* at 4.

In *United States v. Brewster*, a former United States Senator, ("Daniel Brewster") was charged with, among other charges, obtaining bribes in exchange for supporting postal rate legislation. *See* 408 U.S. at 502-03. Brewster argued that the bribery charges were barred by the Speech or Debate Clause. *Id.* at 503. The trial court agreed and dismissed those charges. *Id.* at 503-04.

The Government then filed a direct appeal to the Supreme

Court. *Id.* at 504. On appeal, the Supreme Court reversed,

holding that the Speech and Debate clause did not bar the

charges. *Id.* at 529. It reasoned that the dismissed charges did

not require "inquiry into legislative acts or motivation for

legislative acts" because:

> The question is whether it is necessary to inquire
> into how appellee spoke, how he debated, how he
> voted, or anything he did in the chamber or in
> committee in order to make out a violation of this
> statute. The illegal conduct is taking or agreeing
> to take money for a promise to act in a certain
> way. There is no need for the Government to show
> that appellee fulfilled the alleged illegal
> bargain; acceptance of the bribe is the violation
> of the statute, not performance of the illegal
> promise.
>
> Taking a bribe is, obviously, no part of the
> legislative process or function; it is not a
> legislative act. It is not, by any conceivable
> interpretation, an act performed as a part of or
> even incidental to the role of a legislator. It is
> not an 'act resulting from the nature, and in the
> execution, of the office.' Nor is it a 'thing said
> or done by him, as a representative, in the
> exercise of the functions of that office,' 4
> Mass., at 27. Nor is inquiry into a legislative
> act or the motivation for a legislative act
> necessary to a prosecution under this statute or
> this indictment. When a bribe is taken, it does
> not matter whether the promise for which the bribe
> was given was for the performance of a legislative
> act as here or, as in [*United States v.*] *Johnson*,
> [383 U.S. 169, 86 S.Ct. 749, 15 L.Ed.2d 681
> (1966),] for use of a Congressman's influence with
> the Executive Branch. And an inquiry into the
> purpose of a bribe 'does not draw in question the
> legislative acts of the defendant member of

> Congress or his motives for performing them.' 383
> U.S., at 185, 86 S.Ct., at 758.

*Id.* at 525-27. The Court emphasized that "[t]he Speech or Debate

Clause does not prohibit inquiry into illegal conduct simply

because it has some nexus to legislative functions." *Id.* at 528

(discussing *United States v. Johnson*, 383 U.S. 169, 86 S.Ct.

749, 15 L.Ed.2d 681 (1966)).

Therefore,

> [t]he [Speech or Debate] Clause prohibits only
> proof that a member actually performed a
> legislative act . . . [T]he Clause does not
> prohibit closely related but nevertheless distinct
> showings, such as that a member promised to
> perform a legislative act in the future or even
> that a member was thought to have performed a
> legislative act in the past and was paid in
> exchange for or because of it.

*United States v. McDade*, 28 F.3d 283, 293 (3d Cir. 1994) (citing

*United States v. Helstoski*, 442 U.S. 477, 490, 99 S. Ct. 2432,

2440, 61 L. Ed. 2d 12 (1979); *Brewster,* 408 U.S. at 526-27).

Here, James is alleged to have double-billed for expenses,

filed sham invoices, and converted government funds. The Court

finds that obtaining cash advances or reimbursements and

depositing them into a personal account, double-billing the

legislature, or submitting invoices for work either completed

prior to his senatorial term or not at all do not qualify as

legislative acts. *See id.; cf.* Lee, 775 F.2d at 524 (holding

that making a request for reimbursement from the legislature is

*United States v. James*
Criminal No. 2015-42
Memorandum Opinion
Page 19

"in itself not legislative"). While the allegations in James'
indictment arguably have some "nexus" to the legislation
recognizing the Fireburn uprising, it is not necessary for the
Government to introduce any evidence regarding whether James
performed a legislative act to establish his guilt. Instead, the
Government may show that James received funds from the
legislature for research and translation services that were
performed prior to his election or not at all in order to
establish his guilt on all three counts.

Furthermore, even assuming *arguendo* that the actions
outlined in the indictment were "ambiguously legislative," the
Court, after considering James' "purpose[s] and motive[s],"
finds that they are non-legislative.[4] *See Menendez*, 831 F.3d at
166. In support of his contention that his research constitutes
legislative acts, James directs the Court to several documents.
First, while James was a senator, several bills or bill-drafting
requests at least arguably implicated the Fireburn: (1) Bill No.
28-0159, proposed by Senator Terrence Nelson, which commemorated
Fireburn day,[5] (ECF No. 87-2); (2) Bill No. 28-0143, which

---

[4] James also contends that his research should be viewed as similar to a
legislative subpoena--an unambiguous legislative act.  He reasons that he
could have sought the documents by subpoena if his subpoena power extended to
Denmark. He cites no authority for that proposition, and the Court rejects
it.
[5] James also directs the Court to the transcripts of the hearings where that
bill was discussed.

*United States v. James*
Criminal No. 2015-42
Memorandum Opinion
Page 20

created a Centennial Commission, (ECF No. 87-7); and (3) a

drafting request submitted by James for a bill commemorating

Fireburn day, (ECF No. 108-1).

James also directs the Court to an email to then-Senate

President Louis Hill ("Hill") in which he stated:

> Described below is a portion of which was
> unearthed in my recent trip to the Danish
> Archives. I am also expected to receive a series
> of documents from the Justice Department as well
> as other departments that, based on the recent
> findings, were involved with documenting the
> insurrection. These documents serve a critical
> component in the research component of several
> bills I will introduce during the 28th legislature.
> In addition the information is invaluable to my
> Committee on Education, Youth, and Culture.
>
> As indicated before, the recently uncovered
> documents are being translated so that our
> community can truly access the information.

(ECF No. 87-3.) Similarly, James directs the Court to a May 21,

2010, memorandum sent from Rowe, in which she stated:

> Enclosed herewith are several documents pertaining
> to the ongoing requests for archival material from
> the Danish National Archives. Said research
> material pertains to the 1878 Fireburn, the
> finding expected to be gleaned therefrom to be
> used for legislation.

(ECF No. 87-6.) Rowe also testified before the grand jury that

James intended:

> To use the information to draft legislation,
> rather to recognition of Fire Burn to use the
> information to -- to -- to craft legislation
> dealing with the commission, the 11 Centennial
> Commission, which is the commission to celebrate

> the 100 years of occupation, U.S. occupation of
> the Virgin -- in the Virgin Islands.

(ECF No. 112, at 22:7-13.)

Significantly, at other times, James suggested that the translation and copying of the Fireburn documents was for other purposes. For example, on August 24, 2009, James sent an email requesting information on a potential affair involving a Danish Government secretary that post-dated the Fireburn. (*See* ECF No. 104-5, at 2.) In a follow-up email, he indicated that when he received documents related to that affair, he would use those documents to write a screenplay. (ECF No. 104-6, at 2.) He also described his plan to "shop . . . [the screenplay] around" at the Cannes film festival. (ECF No. 104-7, at 2.)

The Court has reviewed the transcripts and other documents submitted to the Court. Having reviewed the evidence presented, the Court is not satisfied that James has met his burden. Although the bills and proposed draft bills are at least arguably related to the Fireburn, James has not provided any evidence of how the requested documents relate to those bills. Moreover, the emails between James and the representative of the Danish National Archives make clear that James was seeking

*United States v. James*
Criminal No. 2015-42
Memorandum Opinion
Page 22

documents for personal use and financial gain.[6] (*See* ECF No. 104-6, at 2; ECF No. 104-7, at 2.)

Thus, even assuming *arguendo* that ambiguous legislative acts are implicated here, the Court finds that James has not met his burden to show that the indictment is based upon "legislative acts" within the scope of the protections of the Speech and Debate Clause.

### ii.  Grand Jury Evidence

The Court will next consider whether before the grand jury there was "wholesale violation of the speech or debate clause" such that the privileged material "cannot be excised" and "permeated the whole proceeding." *See Helstoski II*, 635 F.2d at 205. The burden of proving such an unexcisable violation lies with the defendant. *Cf. United States v. Swindall*, 971 F.2d 1531, 1548 n.21 (11th Cir. 1992) (holding that exposure to

_____

[6] James also described his intention to provide Fireburn documents to the community, as indicated in his email to Hill. (ECF No. 87-3.) That intention was also discussed during Rowe's grand jury testimony. (*See* ECF No. 112, at 21:19-22:3; 27:1-7; 34:6-13; 45:1-6.) The Court need not resolve whether that was, in fact, one of James's motivations. Even assuming that it was, acquiring and sharing those documents would not constitute a protected legislative act. *Cf. Hutchinson v. Proxmire,* 443 U.S. 111, 123-31, 99 S. Ct. 2675, 2682-86, 61 L. Ed. 2d 411 (1979) (issuance of press releases and newsletters not protected by the Speech and Debate Clause); *Doe v. McMillan*, 412 U.S. 306, 311-18, 93 S. Ct. 2018, 2024-27, 36 L. Ed. 2d 912 (1973) (public dissemination of a congressional report not protected by the Speech and Debate Clause); *Gravel,* 408 U.S. at 622-27 (private republication of documents introduced and made public at a congressional hearing not protected by the Speech and Debate Clause).

*United States v. James*
Criminal No. 2015-42
Memorandum Opinion
Page 23

liability is an element of the legislative immunity defense, not part of a harmless error analysis).

James has presented the Court with the Grand Jury transcript of Rowe, Senator James's former senior advisor, in an attempt to establish that the proceedings were tainted with evidence of legislative acts sufficient to require the Court to dismiss the indictment. (ECF No. 112.) After considering the entirety of the fifty page transcript, the Court is unpersuaded that improper evidence regarding legislative acts sufficiently "permeated" the proceeding to warrant the dismissal of the indictment.

The bulk of the testimony clearly is unrelated to legislative acts. Most of Rowe's testimony discusses her background, James's travel, and payment and reimbursement policies for the office. *Id*. The Third Circuit has held that both information regarding a legislator's travel, *see McDade*, 28 F.3d at 298, and reimbursement payments, *see Lee*, 775 F.2d at 524, do not qualify as evidence of legislative acts. Other portions of the transcript relate to the transportation, storage, and ultimate destruction of the Fireburn documents. That testimony is completely divorced from any discussion of then-Senator James's alleged legislative plans.

*United States v. James*
Criminal No. 2015-42
Memorandum Opinion
Page 24

The Court is aware, however, of two portions of the transcript that reference legislative acts. First, the discussion on pages ten to twelve address James's education-related fact-finding trips:

> Q: Now, in his role as the chairman of the Education, Youth, and Culture committee,--
>
> A: Yes.
>
> Q: –what sort of outreach did he do to foreign countries?
>
> A: Well, with foreign countries, he, for example, studied the education system of foreign countries, for example, in Brazil, where Brazil is almost predominantly Black, a Black country. They're part of the African diaspora. And their educational standards and system worked well for the Blacks in that—in that country. So he was able to understand their procedures and to incorporate some of those procedures in legislation that would be crafted by the Senator for the Virgin Islands.
>
> Q: What did he do in order to understand those procedures?
>
> A: Well, he would interact with—he would visit schools. He would interact with—
>
> Q: In Brazil?
>
> A: Yes.

(ECF No. 112, at 10-11.) That type of fact-finding activity in furtherance of Senator James' committee responsibilities is legislative activity. *See Lee*, 775 F.2d at 521 ("[F]act-finding occupies a position of sufficient importance in the legislative

*United States v. James*
Criminal No. 2015-42
Memorandum Opinion
Page 25

process to justify the protection afforded by legislative

immunity.").

Second, there were two questions posed to Rowe

regarding Senator James's legislative plans regarding

the Fireburn documents.

> Q: So, what did he propose to do during his
> time in the Senate related to Fire Burn?
>
> A: Related to Fire Burn, he wanted to use—
> first of all, when the Danes left in 1917,
> they took all the records, the Danish records,
> back to Copenhagen, Denmark.
>
> . . .
>
> Q: What did Senator James propose to do during
> his tenure in the Senate related to Fire Burn?
>
> A: To use the information to draft
> legislation, rather to recognition of Fire
> Burn to use the information to -- to -- to
> craft legislation dealing with the commission,
> the Centennial Commission, which is the
> commission to celebrate the 100 years of
> occupation, U.S. occupation of the Virgin --
> in the Virgin Islands.

(ECF No. 112, at 21-22.) Those questions were clearly intended

to elicit information regarding James's legislative activities

and were improper.[7]

---

[7] The other testimony related to the Fireburn exclusively pertained to the
payments for the Danish documents, rather than any subsequent legislation.
For the reasons previously discussed, that evidence is not evidence of
legislative acts.

*United States v. James*
Criminal No. 2015-42
Memorandum Opinion
Page 26

Having determined that at least some evidence of legislative acts was presented to the Grand Jury, the Court must determine whether this evidence sufficiently infected the grand jury proceedings to warrant dismissal of the charges. *See Helstoski II*, 635 F.2d at 205. This Court finds that it did not.

In *Helstoski II*, a former Congressman, Henry Helstoski ("Helstoski"), was charged with, among other charges, obtaining bribes from aliens in return for introducing immigration bills. *Helstoski II*, 635 F.2d at 202. Helstoski sought to dismiss various charges on the basis that evidence presented to the grand jury fell within the protections of the Speech or Debate Clause. *Helstoski I*, 576 F.2d at 518-19.

The trial court initially denied that motion on the basis that "courts simply will not go behind the face of an indictment, once it is returned, in order to test the competency of the evidence adduced before the grand jury." *Id.* at 518. Helstoski then filed a motion for mandamus with the Third Circuit. *Id.* at 512. The Third Circuit denied that petition on the basis that: (1) the matter did not implicate the trial court's jurisdiction, and (2) the argument was "better left for decision on appeal from a final judgment" because "the Speech or Debate Clause does not bar trial of the defendant on these charges." *Id.* at 518-20.

*United States v. James*
Criminal No. 2015-42
Memorandum Opinion
Page 27

On appeal, the Supreme Court affirmed the denial of mandamus. *Helstoski v. Meanor*, 442 U.S. 500, 505-08, 99 S. Ct. 2445, 2448-49, 61 L. Ed. 2d 30 (1979). It reasoned that mandamus was not appropriate because an interlocutory appeal was available. *Id.*

Helstoski then renewed his motion to dismiss in the trial court. *Helstoski II*, 635 F.2d at 202. The trial court found that the evidence presented to the grand jury included extensive evidence of legislative acts, including:

> testimony concerning Helstoski's motivations for the introduction of private immigration bills, the procedures by which such bills were presented in the House of Representatives, his office procedures for handling such requests, as well as correspondence and files concerning these bills and copies of the bills themselves.

*See id.* at 202. The trial court also "determined that the prosecutor's practice of reading the transcripts of testimony, previously given to each grand jury that considered the matter, had the effect of aggravating the original error of admitting evidence." *Id.* at 205. Having considered that evidence, the trial court further found that: (1) the "improper testimony before the grand jury was a substantial factor underlying the indictment," *id.* at 204; (2) "improper introduction of privileged matter permeated the whole proceeding," *id.* at 205; and (3) the "infection" of the improper evidence could not be

*United States v. James*
Criminal No. 2015-42
Memorandum Opinion
Page 28

"excised," *id.* For those reasons, the trial court granted Helstoski's motion and dismissed the charges.

On appeal, the Third Circuit affirmed. It reasoned that, in light of the trial court's factual findings, "the government's charges '[violated the Speech and Debate Clause by] rely[ing] on legislative acts or the motivation for legislative acts.'" *See id.* at 206 (quoting *Brewster*, 408 U.S. at 512).

The circumstances presented in *Helstoski II* are markedly different from the circumstances presented here. Here, it is highly improbable that the two short exchanges outlined above influenced the grand jury's decision to indict. The information regarding James's travel to Brazil, while admittedly implicating legislative acts, is irrelevant to the investigation and can be easily excised. Furthermore, the discussion regarding James's legislative plans is not a substantial factor underlying the indictment. For the reasons previously discussed, that evidence is unnecessary for the Government to prove the commission of the crimes alleged in the indictment. The prosecutors may simply demonstrate that payments were made to James that were unwarranted and illegal. Thus, any evidence regarding the Fireburn legislation can be excised from the prosecution. Indeed, in exercising its gatekeeper function, the Court will

*United States v. James*
Criminal No. 2015-42
Memorandum Opinion
Page 29

exclude and excise any proposed evidence that runs afoul of the

Speech or Debate Clause.

For the foregoing reasons, the Court denied the motion to

dismiss the indictment.


S_____
     **CURTIS V. GÓMEZ**
     **District Judge**