IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

---

UNITED STATES OF AMERICA,    )
    )
        Plaintiff,    )
    )
vs.    )  NO. 15-CR-42-CVG-RM
    )
    )
WAYNE A.G. JAMES,    )
    )
        Defendant.    )
_____)

REPORTER'S TRANSCRIPT

JURY TRIAL

AUGUST 15, 2018

---

BEFORE:    THE HONORABLE CURTIS V. GOMEZ,
    District Judge

APPEARANCES:  OFFICE OF THE UNITED STATES ATTORNEY

    BY: DELIA SMITH, AUSA
        AMANDA R. VAUGHN, AUSA
        LUKE CASS, AUSA

    For the Government

    OFFICE OF THE FEDERAL PUBLIC DEFENDER
    BY:  OMODARE JUPITER, ESQ.

    For the Defendant

---

COURT REPORTER:  PERSHA STOUTT-WARNER, RMR
    Official Court Reporter
    Virgin Islands District Court
    St. Thomas, Virgin Islands

```
1                        PROCEEDINGS
2              (Court called to order at 9:22 a.m.)
3              THE CLERK:  United States of America versus
4    Wayne James.
5              THE COURT:  Who is here?
6              ATTORNEY JUPITER:  Good morning, Your Honor.
7    Omodare Jupiter for Wayne James.  He is not present.  We
8    waived his appearance for purposes of the hearing.
9              THE COURT:  Attorney Jupiter, the Court notes
10   that your brother and sister on the other side, they are
11   not here.  Do you have any idea where they are or what?
12             ATTORNEY JUPITER:  No, Your Honor.  I got the
13   call from the courtroom deputy; I rushed to get my
14   courtroom clothes on and get on over here.
15             THE COURT:  Well, I apologize for the
16   inconvenience.  I think we're going to have to make an
17   inquiry to find out why the U.S. Attorney's Office isn't
18   here.  I'll ask you to be patient and we'll -- hopefully
19   we'll be able to resolve this fairly shortly.
20             ATTORNEY JUPITER:  Sure, Your Honor.
21        [Recess.]
22        [Back on the record.]
23             THE CLERK:  United States of America versus
24   Wayne James.
25             ATTORNEY SMITH:  Good morning, Your Honor.
```

1    Delia Smith appearing on behalf of the United States.

2              THE COURT:  Good morning.

3              ATTORNEY JUPITER:  Good morning.  Omodare

4    Jupiter, appearing on behalf of Wayne James, who is not

5    present.  We waived his presence.

6              THE COURT:  Okay.  Good morning, Attorney.

7    There were a few lingering issues I thought we could

8    tend to this morning.  The first would be with respect

9    to the exhibits that were under advisement.  Those that

10   are under 403 will not be included, so the record is

11   clear.

12       The second matter is a matter, as I noticed in

13   reviewing the record, that defense had raised at a

14   sidebar that hadn't been addressed.  You had moved for a

15   mistrial, Attorney Jupiter.  You want to be heard on

16   that, as to why?

17             ATTORNEY JUPITER:  Yes.  Yes, Your Honor.  I

18   think I would just go on what the Court's comments were

19   with regards, to the comments with regards to how the

20   government was advised what the Court's ruling was going

21   to be, that is, with respect to the matters surrounding

22   the appeal bond.  Now the government did, after the

23   Court advised the government in the morning, as well as

24   at sidebar -- and the record is very clear the Court

25   laid out all the times that the government was advised

 1     with regard to any testimony regarding the appeal bond,

 2     that when they brought in Attorney Groner as a witness

 3     they advised, the Court advised the government in detail

 4     that it doesn't want to go into any matters regarding

 5     the appeal bond.

 6          Attorney Groner, I didn't understand why he was

 7     still on the witness stand after we came back, when the

 8     Court advised he was not going, that those matters were

 9     not going to be gone into, nevertheless, the jury saw

10     him come on the stand.  And the jury came back, saw him

11     on the stand again and then the government said no

12     questions, after the Court had indicated that he would

13     not be testifying.  Then the government brought in

14     another witness that was on the same matter.

15          Now, the government did ask the Court to approach

16     but the Court's procedure here is that the Court would

17     not entertain bench conferences.  And that's why the

18     Court has conferences outside of, outside of the regular

19     course of trial because the Court does not usually want

20     to have bench, sidebar conferences during the trial

21     while the jury is seated.  I think it is for the reason

22     we don't want the jury to think that we're hiding

23     something from them.  And that's, I think, the effect

24     that that had over and over again, that the defense was

25     keeping the government from bringing some information to

1       the jury the jury may or may not have thought was

2       useful.  So, that's the whole idea of having matters be

3       taken care of while the jury is not here, so it doesn't

4       have that kind of effect.  And I think it had that kind

5       of effect over and over again, particularly since the

6       defense raised matters pretrial.

7             In my opinion Your Honor should have, we should

8       have just had a ruling that would say how the Court was

9       going to rule at some point on that evidence, rather

10      than defense attorney continually standing up saying

11      objection, objection, objection.  Because after a while

12      it gives the jury, I think, an effect that the defense

13      is keeping, one of the sides is keeping information from

14      getting out and it's information that -- even though the

15      Court instructed the jury that they are not to take

16      anything into that cumulatively it has that effect when

17      they are exposed to the actual objection over and over

18      again.

19            So, I think that coupled with the government asking

20      the same question over and over that was objected to and

21      trying to admit exhibits, asking the same foundational

22      questions throughout the trial had a cumulative effect,

23      a negative effect on the jury.  So, that's why we moved

24      for a mistrial.

25                  THE COURT:  All right.  Just so I'm clear then,

1   is the nature of your petition one that asserts that

2   there is what, misconduct and the jury was exposed to

3   certain evidence that they aught not to have been

4   exposed to?  Is it the first, the second, or both, or

5   something else?

6            ATTORNEY JUPITER:  I can't say that the jury,

7   they were -- I can't say the jury was exposed to

8   evidence that it was not supposed to be exposed to.

9   There were probably some foundational, more than

10  foundational questions that came in substantively, I

11  think, particularly with the custodian of records from

12  the bank.  And it escapes me as to which bank.  I think

13  it was Banco Popular, the witness who came in after

14  Attorney Groner.  I think she did actually have --

15           THE COURT:  I believe that was Chumney.  And I

16  don't think she was Banco Popular.  I believe Perez was

17  Banco Popular.

18           ATTORNEY JUPITER:  Ms. Perez.  That's correct.

19  And I believe she did actually give some substantive

20  testimony that was in violation of the Court's rules.

21  So, I would say that there was some evidence that was

22  improperly brought before the jury.

23           THE COURT:  Okay.  So, this is not, or is it,

24  an allegation of some misconduct that warrants a

25  mistrial?

1          ATTORNEY JUPITER:  I would have to say that it

2     is misconduct, Your Honor.

3          THE COURT:  All right.  Let me hear from the

4     government.  Attorney Smith.

5          ATTORNEY SMITH:  Your Honor, there is

6     absolutely no basis for the Court to entertain any

7     motions from the defense regarding mistrial.  The United

8     States was instructed at the beginning of this trial

9     that nothing, no evidence regarding the $18,000 bond was

10     to be used in our opening.  We excluded that.  The

11     United States was subsequently advised by the Court that

12     the evidence that would have brought the actual Order

13     from the Appellate Division of the District Court from

14     the Superior Court's appeal, that that was inadmissible,

15     and that the testimony regarding that litigation was

16     also inadmissible.  As such, Mr. Groner was excused.  He

17     didn't even say his name.  Nothing came, was uttered

18     from Mr. Groner, nor were any questions asked by the

19     government of Mr. Groner.

20          Secondly, when the -- I think her name was Indira.

21     Her last name escapes me.  But when --

22          THE COURT:  Chumney.

23          ATTORNEY SMITH:  Chumney.  When Miss Chumney

24     took the stand the only questions asked of her were

25     regarding foundational questions.  And then the Court

1   interrupted and inquired whether or not in any way -- at

2   sidebar the Court inquired whether or not this witness

3   would testify about the payment or anything going back

4   to the $18,000 transaction that stemmed from the appeal

5   of the District Court.  Again, the Court decided that

6   this was, in fact, the same type of evidence that it had

7   ruled upon earlier and, again, the United States asked

8   that Miss Chumney be excused and she was excused.  So,

9   the issue of misconduct, Your Honor, I think, is a

10  nonissue.

11      Secondly, the Court performed its gatekeeping

12  function by making sure that the defendant got a fair

13  trial.  Everything that the Court did was intended to

14  safeguard Mr. James from ever having being unduly

15  prejudiced by anything that the United States -- even

16  though our feelings were that it was, in fact, fair

17  evidence, we adhered to all of the decisions made by the

18  Court and respected the Court's gatekeeping function to

19  protect the defendant.  And I don't know where the Court

20  could rely on any acts by the government that would

21  amount to a misconduct claim, nor could the Court review

22  anything that occurred in this trial that would be even

23  considered improper evidence for the jury while they sat

24  for the two days that we presented evidence.

25      So, we just feel, Your Honor, that this is a

1     baseless claim made by the defense.  We understand that

2     the defense --

3          THE COURT:  Well, should I be assuming, for the

4     sake of argument, that there was no evidence that was

5     placed before the jury that would, that should not have

6     been there, that is, the Court arrested that before that

7     could happen?  And the that to which I refer is the

8     evidence, for the sake of argument, if not, that's not

9     the issue that defense hangs its hat on, but more the

10    issue of misconduct.  That is, did the government do

11    something, tried to slip something in there that it was

12    specifically instructed not to?

13         As I suspect, the reason for the petition, as I was

14    looking through the record this morning, it was probably

15    the fifth time, fourth or fifth time, that I had said

16    don't go there.  In fact, I think I had told the

17    government in opening statement don't mention the

18    $18,000.  The Court assessed the evidence as it came in,

19    and I think by the end, or in the afternoon on the first

20    day the Court instructed not to delve into the Appellate

21    Division matter.  And to be sure that the message was

22    received I believe I asked Counsel to come to chambers

23    on the second day in the morning to let counsel know, do

24    not get into the Appellate Division matter in any way,

25    in any form, at any angle.  And I think I used the term,

1    if you open that door we could have a mini trial on the

2    issue.  Certainly the Court's concern was, at the very

3    least, the defense would then question whether any

4    witnesses had some bias since Attorney Groner was one of

5    the lawyers who represented the opposition to Mr. James

6    in that Appellate Division landlord tenant dispute

7    matter.  The Court is concerned that merely going into

8    bias would bring up the underlying case that the Court

9    certainly didn't want to get into, under 403, because,

10   of course, it could confuse the issues, waste time,

11   create undue delay.

12       I made that clear in the morning and then I came in

13   here and on the record I thought I made it clear as

14   well.  And thereafter the government called Mr. Groner,

15   whose sole testimony, as I understand, I think we had a

16   sidebar about that, was to get into specifically the

17   $18,000 transaction.  The only thing that the $18,000

18   related to was an appeal bond of the Appellate Division

19   case that I heard, that I said I didn't want to get

20   into.  And I looked at the end of the transcript on that

21   and I said, "we're not going there."  And then Mr.

22   Groner was excused.

23       But then after that the government then called Miss

24   Chumney.  And the Court always expects the best from

25   every party and expects that every party understands the

 1    letter and spirit of the court's ruling.  But the sole

 2    reason for calling Miss Chumney, as I understood, and we

 3    discovered at sidebar, was so she could testify about

 4    the very $18,000 appeal bond payment that I had said

 5    we're not going to get into because it could raise those

 6    403 issues.  I believe she had some very very brief

 7    introductory testimony but the Court arrested that.

 8        But to the extent there is an exposure to evidence,

 9    is the misconduct issue one that has some weight given

10    the four or five instructions by the Court, don't go

11    there, don't touch on this issue in any way?  Is that

12    something that should give rise to the relief that the

13    defendant seeks?

14            ATTORNEY SMITH:  No, Your Honor.

15            THE COURT:  Tell me why not.

16            ATTORNEY SMITH:  Your Honor, we understood the

17    Court's ruling.  We understood that the Court was

18    specifically concerned with the appellate issue and the

19    litigation --

20            THE COURT:  The question would be, if the

21    United States was -- if it was so clear to the United

22    States government, why was Mr. Groner called and then

23    the sidebar and then Miss Chumney called?

24            ATTORNEY SMITH:  I will explain, Your Honor.  I

25    will explain.  We, in good faith the United States

1    believed that we had sanitized Attorney Groner's

2    testimony only to speak of the debt that was attributed

3    to the past rent that stemmed some five-year period, not

4    that it was litigated or that there was a bond, or that

5    it was appealed.

6         THE COURT:  You said rent, that's the

7    underlying case, correct?

8         ATTORNEY SMITH:  The Victoria House landlord

9    tenant dispute.

10        THE COURT:  Which was contested.  It was a

11   landlord tenant dispute --

12        ATTORNEY SMITH:  Yes, sir.

13        THE COURT:  -- that this Court heard in its

14   reviewing appellate capacity that I said I didn't want a

15   mini trial on.  And that was the sole issue that Mr.

16   Groner was called to testify about, correct?

17        ATTORNEY SMITH:  Your Honor, again our only

18   good faith attempt was to address the debt and not the

19   litigation.  And we believed in good faith --

20        THE COURT:  I think I used the term in chambers

21   in the morning, I said, if you open that door then it

22   could allow Attorney Jupiter to drive a Mack truck

23   through it to impeach the person who you bring on that

24   issue.  I would expect that since Mr. Groner was the

25   attorney in the underlying landlord tenant dispute, and

1    I didn't want to have a landlord tenant dispute in the

2    middle of a criminal trial, that I made it clear in

3    chambers don't open that door.

4            ATTORNEY SMITH:  I understand, Your Honor.

5            THE COURT:  So, I'm just trying to understand

6    what was it, how is it that you sanitized it if the only

7    issue he's going to talk about, as you just said, was

8    the $18,000, I think you said rent payment?

9            ATTORNEY SMITH:  Yes.  Your Honor, we, I think

10   the Court's focus should be that nothing done or

11   attempted by the United States was in bad faith.  We

12   wholeheartedly believed that we had, in fact, sanitized

13   what would have been very limited testimony from

14   Attorney Groner that would have established that the

15   monies that we were alleging was embezzled by the

16   defendant was used to pay for an unlawful purpose.  And

17   so, we will concede --

18           THE COURT:  I can appreciate that.  I

19   understand that with respect to Mr. Groner.  But tell me

20   what was the thinking when Miss Chumney was called after

21   I reiterated again at sidebar, and I checked the

22   language, I said, "we're not going there."

23           ATTORNEY SMITH:  Your Honor, that was a

24   mistake.  That was a mistake and it was corrected

25   immediately.  And we will own that mistake.  But again,

1    Judge, the issue for the Court is to decide whether or

2    not the misconduct is one that would require a sanction

3    that is the most severe of sanctions that is available

4    to the Court.  And I pray that Your Honor is not

5    convinced that those actions are such that rise to that

6    level because again, Your Honor, there has been no

7    prejudice.  The defendant has not been unduly prejudiced

8    by any act of the government, nor was the jury exposed

9    to any evidence that was improper.  And for those

10   reasons we believe that the Court's gatekeeping function

11   was a complete success in this effort, and that the

12   government owns what we did wrong.  But, Your Honor, we

13   will also argue that at no way did it amount to any

14   misconduct that would be fitting for such a severe

15   sanction as a mistrial.

16        THE COURT:  All right.  Thank you, Attorney

17   Smith.  I'll give you the last word since it's your

18   petition, Attorney Jupiter.

19        ATTORNEY JUPITER:  I don't think the government

20   can rely on good faith when Miss Chumney was put on the

21   stand.  Before they even asked a question, the

22   government attorney --

23        THE COURT:  Well, I think your sister just said

24   she concedes that a mistake was made.  Why - I mean, is

25   there any harm to the extent that there is a

1    demonstration of prejudice?

2            ATTORNEY JUPITER:  Yes, Your Honor.  I think

3    that for a jury to see witnesses being brought in and

4    then counsel, government counsel objects to the

5    witness -- I mean, of course, you can't help all of

6    that.  But when you have one witness brought in, you

7    know, after a conference, you have sidebar, that witness

8    comes in again after lunch and is told no questions, the

9    jury says, well what's going on?  He was just here.

10   They didn't ask any questions.  Then another witness

11   comes in and the government says, oh, can we approach?

12   Because they know they are wrong.  They know this is in

13   violation of the Court's ruling.  And have the witness

14   up there, paraded up there in front of the jury, asked

15   for sidebar and the Court says no.  And rather than say

16   okay, we have no -- at least then it still hurts to have

17   them bring the witness in, not ask a question, and kind

18   of look around and say, oh, yeah, sorry, jury.  We

19   wanted to give you all some information but, you know,

20   defense attorney and the Court did not let us do it, so

21   here is another witness.  They have to get out of here

22   too.  But at least at that point they could have done

23   that.  Rather than doing that, not asking any questions,

24   after the Court said no at sidebar, they start

25   questioning the witness, and questioning them knowing

1    that they are wrong, looking around like, what should I

2    do?  Well, you shouldn't question the witness.  They do

3    question the witness.  They let the witness talk.  They

4    let the witness know, they let the jury know that this

5    witness is coming here with bank records, with

6    incriminating evidence of bank records that the Court is

7    not going to let the jury hear about.  And that's

8    question after question.  Then Counsel has to stand up

9    and say objection, can I get a sidebar.  And the Court,

10   as his policy is, has made known, and as local rules

11   says, no, counsel, you can't.  No, thank you.  Like the

12   Court always does, like Ms. Smith always knows that the

13   Court always does, like I know that the Court always

14   does, like the two attorneys from Washington D.C. have

15   learned that the Court always does.  And they continue

16   to question and continue to question and look around and

17   say I know I'm doing something wrong, but I'm going to

18   continue questioning.  And finally, the Court said okay,

19   come to sidebar.  You know you're wrong.  You're wrong.

20   I told you not to do that.  Go back, thank you, no

21   further questions of the witness.  Another witness the

22   jury is not able to see what this evidence was that the

23   defense attorney and the Court didn't let me hear.

24        I think that that's prejudicial, Your Honor, and I

25   think it's misconduct.  And I think there should be

1    mistrial.

2              THE COURT:  All right.  Well, I can appreciate

3    the defense's position.  And it certainly troubles the

4    Court that it took multiple instructions from the Court

5    that just seem to be unheeded.  And it is always

6    troubling to the Court where it seems that the attitude

7    might be arguably, I'll try to get this in at any cost

8    because it seems like it's playing a game, I can slip

9    one in.  If I didn't get it in after the first

10   admonition, I'll try after the second, the third, the

11   fourth, and I'll keep trying even though I thought the

12   Court was extremely explicit.

13        Having said that, though, with respect to the two

14   categories in which I think this breaks down, one would

15   be evidence presented to the jury, I think the Court in

16   every instance arrested any testimony before it got to

17   that point.  Certainly with respect to Mr. Groner, the

18   Court arrested that testimony before it could evolve.

19   With respect to Miss Chumney, the Court certainly gave

20   the government the benefit of the doubt that it

21   certainly, after four warnings by that time, would not

22   go there, and gave the benefit of the doubt to the

23   government only to find that that is precisely where

24   they were going, which was validated when I had to call

25   them to sidebar.

1    In any event, with respect to the evidence prong I

2    don't believe that any evidence came out that would

3    unduly prejudice the defense in this case.

4        So, that leaves the second issue that I believe is

5    the second category, and that would be whether there was

6    some misconduct that rose to the level that warrants a

7    mistrial.  And I can appreciate the defense's position

8    that there are certain optics in a trial and, while it's

9    not ideal, the Court doesn't find that it raises to the

10   level of prejudice that would warrant the relief

11   petitioned for.  Again, the touchstone for most

12   inquiries by the Court, including one for mistrial is,

13   is there some prejudice, some -- not that there isn't

14   prejudice in a trial.  There are adverse sides.  The

15   question is, is there some undue prejudice, something

16   that's unfair that warrants the relief?  And the Court

17   doesn't find that it rises to that level.

18       However, the Court was a bit concerned that it took

19   so many instructions from the Court to get a message

20   through that had been made clear from the very beginning

21   of the trial, by the afternoon of the first day, in the

22   morning before we began the second day, again with Mr.

23   Groner and again Ms. Chumney.  That's troubling.  The

24   Court certainly expects better from officers of the

25   court.

1          So, the petition is denied.  And I believe that

2      concludes the housekeeping matters, right?  Thank you,

3      Counsel.

4          **[Recess.]**

5          **[Back on the record.]**

6          THE CLERK:  District Court now in session.

7      Please be seated.

8          THE COURT:  Good afternoon, Counsel.  Good

9      afternoon, Members of the Jury.

10         The JURORS:  Good afternoon.

11         THE COURT:  I know you've been working hard.  I

12     understand you have reached a verdict.  Let me ask the

13     foreperson to hand up the verdict, please.

14         **[The verdict forms were tendered to the Court for**

15     **his inspection.]**

16         Will the defendant please rise.  Madam Foreperson,

17     if you could stand up and read the verdict form as it is

18     written.

19         THE FOREPERSON:  As to Count One, Wire Fraud,

20     on or about October 19, 2010, as charged in the

21     Indictment, We find the defendant, Wayne James, guilty.

22         As to Count Two, Wire Fraud, on or about October

23     22, 2010, as charged in the Indictment, We find the

24     defendant, Wayne James, guilty.

25         As to Count Three, theft concerning the program

1    receiving federal funds, We find the defendant, Wayne

2    James, guilty.

3            THE COURT:  Thank you, Madam Foreperson.  The

4    defendant can be seated.  Members of the Jury, let me --

5            ATTORNEY JUPITER:  Request polling, Your Honor.

6            THE COURT:  All right.  Ms. Brann.

7            THE CLERK:  Jurors, you have heard the

8    foreperson announce the unanimous jury verdict.  I will

9    now ask you individually is this your independent

10    verdict.  As I call your seat number, please stand.

11    Seat 1, is this your independent verdict?

12            SEAT NUMBER 1:  Yes, it is.

13            THE CLERK:  Seat 2, is this your independent

14    verdict?

15            SEAT NUMBER 2:  Yes, it is.

16            THE CLERK:  Seat 3, is this your independent

17    verdict?

18            SEAT NUMBER 3:  Yes, it is.

19            THE CLERK:  Seat 4, is this your independent

20    verdict?

21            SEAT NUMBER 4:  Yes, it is.

22            THE CLERK:  Seat 5, is this your independent

23    verdict?

24            SEAT NUMBER 5:  Yes, it is.

25            THE CLERK:  Seat 6, is this your independent

```
 1    verdict?
 2            SEAT NUMBER 6:  Yes, it is.
 3            THE CLERK:  Seat 7, is this your independent
 4    verdict?
 5            SEAT NUMBER 7:  Yes, it is.
 6            THE CLERK:  Seat 8, is this your independent
 7    verdict?
 8            SEAT NUMBER 8:  [No response.]
 9            THE CLERK:  Seat 8, is this your independent
10    verdict?
11            SEAT NUMBER 8:  [Mumbled.]
12            THE CLERK:  Seat 9, is this your independent
13    verdict.
14            THE COURT:  Hold on.  Wait.  Repeat the
15    question to seat 8.
16            THE CLERK:  Seat 8, is this your independent
17    verdict?
18            SEAT NUMBER 8:  Yes, I do.
19            THE COURT:  Go ahead.
20            THE CLERK:  Seat 9, is this your independent
21    verdict?
22            SEAT NUMBER 9:  Yes.
23            THE CLERK:  Seat 10, is this your independent
24    verdict?
25            SEAT NUMBER 10:  Yes, I do.
```

```
1              THE CLERK:  Seat 11, is this your independent
2      verdict?
3              SEAT NUMBER 11:  Yes, I do.
4              THE CLERK:  Seat 12, is this your independent
5      verdict?
6              SEAT NUMBER 12:  Yes, it is.
7              THE CLERK:  Judge, the jury has been polled.
8              THE COURT:  All right.  Thank you, Ms. Brann.
9      Just so the record is clear, I have a question of a few
10     jurors.  This question is a yes or no question.  You
11     just need to answer yes or no.
12         Juror in seat 8, is this your independent verdict,
13     yes or no.  Stand up.
14             SEAT NUMBER 8:  Sorry?
15             THE COURT:  So, is this your independent
16     verdict, yes or no.  You can stand up.
17             SEAT NUMBER 8:  [No response.]
18             THE COURT:  My question is a yes or no
19     question.  Is this your independent verdict, yes or no.
20             SEAT NUMBER 8:  Yes.
21             THE COURT:  Okay.  You can have a seat.  Juror
22     in seat 10, is this your independent verdict, yes or no.
23             SEAT NUMBER 10:  Yes.
24             THE COURT:  Juror in seat 11, is this your
25     independent verdict, yes or no?
```

1           SEAT NUMBER:  Yes.

2           THE COURT:  Okay, thank you.

3       All right.  Members of the Jury, let me thank you

4   for your service.  I know it is never easy serving as a

5   juror.  We call on you for your time, your patience,

6   your cooperation, and you have given us that and so much

7   more.  And for that I know that the government is

8   appreciative, and I know that the defense is

9   appreciative, and the Court, of course, is appreciative,

10  as is your country and your community.

11          Now, I know you've sat on this trial, but let

12  me remind you that your service is not yet over as a

13  juror for this court.  It will be soon.  But if you

14  receive a call please answer it, as your service is

15  still needed.  All right, with that let me wish you a

16  pleasant day and thank you very much.

17          THE CLERK:  All rise.

18          ATTORNEY JUPITER:  Your Honor, I have a motion

19  before the jury is excused.

20          THE COURT:  They are not excused yet.  I'm just

21  going to have them retire to the deliberation room for

22  the moment.

23      **[The jurors leave the courtroom.]**

24      Be seated.  Yes, Attorney Jupiter.

25          ATTORNEY JUPITER:  Your Honor, my motion

 1       preliminarily is for Juror Number 8 to be questioned by

 2       the Court to ascertain whether or not she understands

 3       English.  I note for the record that she answered the

 4       question initially, as to whether or not this was her

 5       independent verdict, she answered something that I could

 6       not make out; the Court was able to make it out.  She

 7       was asked a few times then eventually she said, "Yes, I

 8       do."  I do note, obviously, that after she said yes, I

 9       do, the remaining jurors said "yes, I do."  And I don't

10       think any of them had trouble understanding.  However,

11       after the Court asked her again, yes or no, she turned

12       to other jurors to seek guidance.  It seems to me that

13       she was seeking guidance on what was the Court asking

14       her.  I don't know whether or not that's because she

15       couldn't hear.  At this time I don't think the record is

16       clear, but I do think that the Court should ask some

17       questions to ascertain whether or not she can understand

18       English.

19              THE COURT:  All right.  Just so the record is

20       clear, the Court thanked the jurors.  But given the

21       petition that was raised I specifically said on the

22       record that the jury is not yet excused, just returning

23       to deliberation room so we could deal with that.  I say

24       that just so it's clear to the extent there is any

25       further work that needs to be done they are not excused.

1      So, let me hear from the government.

2              ATTORNEY VAUGHN:  Your Honor, the government

3      doesn't believe there is any reason to further question

4      Juror Number 8.  She followed the instruction once the

5      Court again asked her to state her answer in a yes or no

6      form.  She answered with one word, yes, indicating she

7      clearly understood what the Court was asking.  Her

8      initial answer was mumbled, and she eventually did say

9      yes as well there.  She has clearly followed the Court's

10     instructions.  There is no need to further question her.

11             THE COURT:  But the government, it seems to me

12     that you are missing some of the things that your

13     brother pointed out.  She did hesitate.  Did you observe

14     that, yes or no.

15             ATTORNEY VAUGHN:  I don't think she -- I

16     observed it.  But my understanding is she didn't seem

17     like she realized she was Juror Number 8, but.

18             THE COURT:  When she stood up, did you observe

19     her turn to someone else?

20             ATTORNEY VAUGHN:  I did.

21             THE COURT:  Okay.  Should I have pause because

22     of that?

23             ATTORNEY VAUGHN:  No, because Your Honor

24     inquired again a second time, and she stood up and

25     answered in the affirmative as was requested.

1          THE COURT:  Yes.  But everything that preceded

2     that, though, should there be any pause at all because

3     of that?  She said, "Yes, I do" when the question called

4     for a yes or no.  Should I be concerned?

5          ATTORNEY VAUGHN:  I don't think so, Your Honor,

6     because when Your Honor asked her again a second time

7     during further questioning, and asked for just a yes or

8     no answer, she did provide a single word answer, yes or

9     no.

10          THE COURT:  All right.  I have some concern

11     because I observed precisely what the defense spoke of.

12     That's the only reason that I jumped in to defray.  The

13     Court normally of its own doesn't ask the question.  The

14     question was asked because the first response suggested

15     there may have been some, either some problem giving

16     some clear audible indicator as to where she stood.

17     That doesn't mean that her answer wouldn't have been

18     yes.  I said hold on, go back, because it wasn't clear

19     to me.  And as I looked on the record, it's not even

20     really clear on the record what she said.  And that was

21     after the question was posed to the juror in seat number

22     9.  I'll check the transcript with the reporter in a

23     moment to see precisely what happened.  After the first

24     question was asked, it went on to the ninth juror

25     without a clear record of what the 8th juror said.  When

1    it was posed again, she seemed a little unclear and then

2    she turned to someone who mumbled something.  I'm not

3    even sure what Juror Number 9 said to Juror Number 8 but

4    there was some communication of some kind and then the

5    answer "Yes, I do", which seems unusual.  At least two

6    other jurors followed, Juror Number 10 and Juror Number

7    11, and that's why I asked the question of them.

8        Let me ask the government, to the extent there is

9    some concern, since the only question would be one of

10   whether there is unanimity here, what is the relief at

11   this stage?  Or what are the possible options?

12       ATTORNEY VAUGHN:  The question to be posed to

13   her again.  But it seems that she has answered in the

14   affirmative upon further questioning the second time the

15   Court asked her.

16       THE COURT:  All right.  So, are you -- so there

17   is no other option?  Is that what you are saying, just

18   ask her again?

19       ATTORNEY VAUGHN:  It was the government's

20   impression that she answered affirmatively to the

21   question in the first place.

22       THE COURT:  I guess my question is, assuming

23   for the sake of argument that there is some concern that

24   aught to be had here, is there some option that would

25   address that concern, some other option other than

1     asking the same question again?

2                ATTORNEY VAUGHN:  I'm not sure, Your Honor.

3                THE COURT:  Your brother suggests that there

4     might be a language problem which could certainly bring

5     into question other things.  Would a poll be something

6     that the government might suggest?

7                ATTORNEY VAUGHN:  A poll of the entire jury

8     again?

9                THE COURT:  All right.  Let me ask the defense

10    what suggestions the defense have.  Now, in this Court

11    we've had issues where we've had juror issues and the

12    question of unanimity has come up and the Court on

13    multiple occasions, well, multiple occasions in this

14    division as well as in St. Croix, where there have been

15    some question as to any irregularity, has conducted a

16    poll to make sure that unanimity was there and to

17    obviate the need for any issue arising post-verdict.

18         Do you believe a poll is appropriate here or some

19    voir dire of the juror by the Court?

20                ATTORNEY JUPITER:  Well, Your Honor, my only

21    concern was a language barrier.  I'm starting to think

22    now that maybe there is some other type of barrier.  I

23    don't know.  So, at this point --

24                THE COURT:  One second.

25         **[Off the record.]**

1          **[Back on the record.]**

2          Go ahead, Attorney Jupiter.

3          ATTORNEY JUPITER:  Well, Your Honor, I think

4    there is sufficient information for the Court to grant a

5    mistrial at this point.  First of all, Mr. James has not

6    only a right to a unanimous verdict, he also has a right

7    to 12 jurors to deliberate and to deliberate

8    independently.  I think what the Court has evidenced is

9    one juror who seemed to be guided on a simple question

10   by the jurors.  There is enough information that the

11   Court has that whatever barrier this juror has, she does

12   not -- I don't think the Court can be satisfied that

13   she, number 1, has the ability to have an independent

14   verdict; number two, that she has the ability to

15   deliberate independently; number 3, in terms of the voir

16   dire process, I don't think that this juror would have

17   been able to understand all of the questions that the

18   Court gave her during voir dire.

19        So, for those reasons we don't think -- you know,

20   the other option, the question that was posed to the

21   government, the other option is mistrial.  I have no

22   problem if the Court wants to grant a mistrial without

23   further questioning the jury.  So, at this point that's

24   what we're asking.

25          THE COURT:  Attorney Jupiter, short of a

1      mistrial, aren't there other options, though?  That is,

2      couldn't the Court undertake a voir dire of that juror

3      to find out, one, precisely whether the juror was

4      capable of understanding the question posed and; two,

5      that that was to the subsequent, the juror did

6      understand the question, that her answer was in fact an

7      affirmative answer?  I checked with the court reporter,

8      and the record should reflect that there is nothing for

9      the first time around because the juror, although the

10     question was posed to the juror in seat number 9, there

11     is no answer recorded for the juror in seat number 8

12     because the mumbling wasn't a yes, it wasn't yes, I do.

13     There was virtually nothing that was clear, at least to

14     the Court, and significantly there is nothing, no

15     official record because the Court reporter didn't hear

16     anything except sound, not words.

17          But it seems to me that some voir dire undertaken

18     by the Court might alleviate some of the concerns that

19     you have, and certainly a remedy that is short of the

20     mistrial.

21          And also, the reason I made it clear on the record

22     that the Court was not excusing the jury was it seems to

23     me if there is a question with respect to unanimity, and

24     there is a question when you drill down as to a single

25     juror, wouldn't the remedy be to have an alternate slip

1    into that spot, have the jurors then restart

2    deliberations and then ensure that you have a unanimous

3    jury?

4         ATTORNEY JUPITER:  Not at this point, Your

5    Honor, not with this juror, these jurors, the 12.

6         THE COURT:  Remember I said the jury is not

7    discharged.  If it was discharged, I can appreciate

8    there are many limitations.  If they are not discharged,

9    and I said on the record they are not excused, wouldn't

10   having an alternate come into the deliberating room and

11   excusing that juror, if indeed there is a problem at all

12   with that juror and the capacity to understand English

13   or understand the Court's questions, wouldn't that be an

14   option?

15        ATTORNEY JUPITER:  Absolutely not.  Eleven

16   people have signed the verdict form and announced their

17   verdicts.

18        THE COURT:  Well, Attorney Jupiter, I can

19   assure you in this court I've had at least one juror

20   that comes very clearly to mind who was sitting, I

21   think, in seat 11 some years ago, whose answer was yes

22   and no.  And the remedy that the Court undertook in that

23   case was to send them back to get a unanimous verdict.

24   Now some things changed a bit, but the verdict came

25   through.  And I think, if I'm not mistaken, I think that

 1    there was no problem on the review with that process.

 2    Why, to the extent that there is some question as to

 3    unanimity, couldn't we undertake that sort of remedy?

 4              ATTORNEY JUPITER:  Well, Your Honor --

 5              THE COURT:  Not assuming that mistrial isn't

 6    the option that the Court takes, short of that isn't

 7    that one of the options?

 8              ATTORNEY JUPITER:  I don't think it is an

 9    option, Your Honor.  And I'm not familiar with the Court

10    -- obviously, the Court has had experience with this and

11    seen the 3rd Circuit opinion on it.  So, I have not.

12    But I don't think it would be fair to have this jury --

13              THE COURT:  How to be fair.  I don't know if it

14    came up as a single issue that made it through the

15    Circuit, but what happened is that conviction was

16    affirmed.  I don't think that was an issue.

17              ATTORNEY JUPITER:  Well, I don't -- to be

18    honest with you, Your Honor, I don't know a 3rd Circuit

19    case that has dealt with this specific issue after a

20    jury, after a jury has already, although they have not

21    been discharged, they have already announced their

22    verdicts; they have signed the verdict forms; they stood

23    up; they've been polled.  And to say then you can start

24    them over with another juror come in, and all of them

25    already said, okay, we thought we were going home now we

1       have this other juror to start all over with.  I don't

2       think we can start all over again.  If I have to sit

3       up -- they feel like --

4           The Court even has thanked them for doing a good

5       job.  And as far as they know they are ready to go home.

6       And they have already made up their minds.  I don't see

7       how.  One, not at this stage, replacing them, replacing

8       the juror and telling them to start all over and listen

9       to this juror.  I think they would be back there saying,

10      hey, we've all made up our minds.  Is there anything you

11      want to say?  I don't think that that is the same thing

12      as 12 people starting from scratch.

13          THE COURT:  Let me ask you then your position

14      on an inquiry of that juror, just to assess whether

15      there is any issue with language?

16          ATTORNEY JUPITER:  That was my initial request,

17      Your Honor.  And I would say that is entirely

18      appropriate.  I don't know that it's -- I think that the

19      Court should do it.

20          ATTORNEY CASS:  May I be heard on this, Your

21      Honor.

22          THE COURT:  Yes.  Are you done, Attorney

23      Jupiter?

24          ATTORNEY JUPITER:  I am, Your Honor.

25          THE COURT:  So, you are sticking with your

1    first position then that the Court can undertake an

2    inquiry?

3            ATTORNEY JUPITER:  I'm sticking with my first

4    position that --

5            THE COURT:  Your first position, I thought, was

6    something along the lines that there is a question with

7    respect to capacity to understand English.  And I

8    thought that the followup to that would be that the

9    Court would then inquire?

10           ATTORNEY JUPITER:  That was my first request.

11   And after I thought about it for awhile, I thought there

12   may be other issues as well in terms of if it's not a

13   language barrier to try, for the Court to try to

14   ascertain what was the understanding, that it not be

15   with yes or no questions but that the juror show that

16   she can speak and comprehend the English language.

17           THE COURT:  Okay.  All right, thank you.

18           ATTORNEY CASS:  Your Honor, just so the record

19   the clear, mentioning language issues and now other

20   barriers, I think it's very clear she's seated in the

21   back left-hand portion of the jury box.  That's the

22   problem.  She didn't know her number, Your Honor.  Juror

23   8, she didn't know she was Number 8.  When she realized

24   that she stood, she responded twice in English to the

25   question.  I think there is really no reason to inquire

1    as to her language.  Twice on the record she responded

2    in English.

3             THE COURT:  Are you saying the first time she

4    responded?

5             ATTORNEY CASS:  Oh, Your Honor, she didn't know

6    she was Juror 8, so then she stood up and she responded.

7    And then we asked her again and she responded again.  I

8    don't know what else we're inquiring about.  They were

9    asked to her and she responded.  There is no reason for

10   a mistrial.  There is no reason to question her

11   language.

12            THE COURT:  Did you observe that she stood up

13   when Ms. Brann called her number at some point?

14            ATTORNEY CASS:  Yes, Your Honor.

15            THE COURT:  Did you understand her to answer

16   the first time around?

17            ATTORNEY CASS:  She answered, yes.

18            THE COURT:  All right, so you heard an answer

19   the first time?

20            ATTORNEY CASS:  Yes, she answered, Your Honor.

21            THE COURT:  You heard an answer the first time

22   she spoke, she spoke?

23            ATTORNEY CASS:  I think she didn't realize what

24   --

25            THE COURT:  I'm beyond that.  My question is

1    just a yes or no.  It's not a trick question.

2              ATTORNEY CASS:  Yes, Your Honor.

3              THE COURT:  You heard an answer the first time?

4              ATTORNEY CASS:  Yes.

5              THE COURT:  All right.  I didn't hear it; the

6    court reporter didn't hear it.  That's why I went back.

7    But, all right.  So, your position is that the answer

8    was -- what was the answer that you heard the first

9    time?  Before I said hold on, go back, what answer did

10   you hear?

11             ATTORNEY CASS:  She said yes.

12             THE COURT:  Just yes?

13             ATTORNEY CASS:  It was very soft spoken, yes.

14   She's closer to our table, Your Honor, so I that's

15   probably why we heard and no one else did, but.

16             THE COURT:  All right.  So, does the United

17   States have any concern that the record reflects no

18   answer?

19             ATTORNEY CASS:  Well, the second time around it

20   was asked --

21             THE COURT:  My question, just a yes or no.

22   You're going to get --

23             ATTORNEY CASS:  I have no concern, Your Honor,

24   about this.

25             THE COURT:  Okay.  All right.  I think with an

     1     abundance of caution what the Court will do is undertake

     2     an inquiry to assess whether there is some concern with

     3     understanding the language.  To the extent there is some

     4     concern with the language, which is something we've had

     5     in, I think, trials as recently as the past, within the

     6     past 16 months or so.  I think probably within the past

     7     16 months or so, we've simply put an alternate in place.

     8     Now, is there -- should the Court have any concern,

     9     should we get to that point, that is, where there is a

    10     language, a capacity to understand language that

    11     troubles the Court, are there any options that the Court

    12     has at that point?

    13          ATTORNEY CASS:  What you just suggested, Your

    14     Honor, putting in an alternate and redeliberating.  I

    15     don't think that's necessary, but that would be the

    16     option.

    17          THE COURT:  All right.  I appreciate your

    18     position.  I'm not persuaded by it.  I think what the

    19     Court is going to do is make an inquiry, of course,

    20     counsel will be there, and then the Court will make a

    21     determination as to whether there is a language issue

    22     with respect to the juror in seat 8.

    23          ATTORNEY CASS:  Yes, Your Honor.

    24          THE COURT:  All right.  Ms. Brann will be in

    25     touch with you shortly.  Thank you.

```
 1              THE CLERK:  All rise.  Remain standing while His
 2     Honor leaves the courtroom.
 3          [Off the record.]
 4          [Back on the record in chambers.]
 5              THE COURT:  Good afternoon.
 6              JUROR NUMBER 8:  Good afternoon.
 7              THE COURT:  Tell us your juror number, please.
 8              JUROR NUMBER 8:  Lucia Feliciano Polanco-Colon.
 9              THE COURT:  Tell us your juror number.
10              JUROR NUMBER 8:  103.
11              THE COURT:  We were just in the court and you
12     were asked some questions.  The first time you were
13     asked the question, what was your answer?
14              JUROR NUMBER 8:  The first one yes, I do.  I
15     answer you.
16              THE COURT:  And then what was your second
17     answer?
18              JUROR NUMBER 8:  The second, yes.
19              THE COURT:  And then what was your third
20     answer?
21              JUROR NUMBER 8:  Yes.
22              THE COURT:  Okay.  Now, did you turn to anyone
23     when you were in the jury box?
24              JUROR NUMBER 8:  No.
25              THE COURT:  Okay.  Did you ask any of the
```

1    jurors next to you any questions?

2              JUROR NUMBER 8:  No.

3              THE COURT:  Okay.  Do you understand English?

4              JUROR NUMBER 8:  Yes, I do.  Okay, I cannot

5    watch too much English for I know I understand

6    everything.

7              THE COURT:  Okay.  So, you didn't turn to --

8    did any of the jurors tell you anything when you were in

9    the jury box?

10             JUROR NUMBER 8:  No.  Just I listen and I say.

11             THE COURT:  Okay.  Did you speak any Spanish

12   when you were in the jury box?

13             JUROR NUMBER 8:  No.  No.  The sound, I speak

14   in Spanish for everybody speak English.

15             THE COURT:  I didn't understand that.

16             Juror Number:  No.  I say it had two person

17   Spanish in there, right?  You know, everybody know

18   English, so I speak to the English.

19             THE COURT:  You said there were two people

20   speaking Spanish?

21             JUROR NUMBER 8:  Yes, the two people Spanish,

22   two Puerto Ricans.

23             THE COURT:  And did you -- when you stood up, I

24   saw you turn to one of the persons sitting next to you

25   when we were just in court.

```
1                    JUROR NUMBER 8:  No.

2              THE COURT:  Okay, you didn't turn to anyone?

3                    JUROR NUMBER 8:  No.

4              THE COURT:  Okay, just so we're clear, not that

5     you're in trouble, we need to make sure what happened.

6                    JUROR NUMBER 8:  Yes.  It's okay.  No problem.

7              THE COURT:  So, you stood up.  No one next to

8     you said anything?

9                    JUROR NUMBER 8:  No, nobody.

10             THE COURT:  Did you say anything to anyone?

11                   JUROR NUMBER 8:  No.

12             THE COURT:  Okay.  Now, when the courtroom

13    deputy was calling the numbers, when she said juror in

14    seat number 7, or juror in seat number 8, tell us what

15    happened.

16                   JUROR NUMBER 8:  When she said juror in seat

17    number 8, juror, I confused.  That's why when she, the

18    one to me, the one close to me, I number 8.  So, she

19    number 7.  I confused.  I don't hear what the number you

20    call.  That's why I stay seat.  That's why I said sorry

21    because I know I stand up a time.

22             THE COURT:  And then what happened at that

23    time?

24                   JUROR NUMBER 8:  No, nothing happened.  Why?

25    Like you what?
```

1          THE COURT:  Tell me what happened after you

2     heard --

3          JUROR NUMBER 8:  I get nervous.  I get nervous.

4     So, everybody go to the room.

5          THE COURT:  Okay, I'm talking about in the

6     courtroom when you were just there, when the courtroom

7     deputy called the juror number.

8          JUROR NUMBER 8:  Yes.

9          THE COURT:  I want to know, tell me what

10    happened.

11         JUROR NUMBER 8:  When you call the juror

12    number, number 8, right, I confuse.  I thinking you say

13    number.  I don't remember a number 8.  That's why I stay

14    seat.

15         THE COURT:  Okay.  And then tell me what

16    happened after that.

17         JUROR NUMBER 8:  What I told you?

18         THE COURT:  Yes, tell me.

19         JUROR NUMBER 8:  I said sorry.  I say, I say

20    yes, I sorry because I know to stand up.  That's why I

21    told you sorry.

22         THE COURT:  And then what happened after that?

23         JUROR NUMBER 8:  When you tell me, and you call

24    two number, two more number.  You say tell me; I answer

25    you.  You say --

1          THE COURT:  Not me.  I'm not talking about me.

2     I'm talking about my courtroom deputy, the lady over

3     here, Ms. Brann.

4          JUROR NUMBER 8:  Uh-huh.

5          THE COURT:  Tell me what happened when she was

6     calling the number.  Not me, when she was calling the

7     number.

8          JUROR NUMBER 8:  When she was calling the

9     number, I sit and I stand up.  And that's the time I

10    told you sorry.

11         THE COURT:  Okay.  And then what happened after

12    that?

13         JUROR NUMBER 8:  She ask -- I can't remember.

14         THE COURT:  You don't remember what happened

15    after that?

16         JUROR NUMBER 8:  [Indicating.]

17         THE COURT:  The juror shook her head indicating

18    no.  So, we're just trying to find out -- you're not in

19    trouble or anything.  I just want to find out what

20    happened after this lady, my courtroom deputy, called

21    the juror number.  I just want to have a very clear

22    record of what happened.  So, as best as you can

23    remember.

24         JUROR NUMBER 8:  When I say, "Yes, I do."  Yes,

25    when she call my number.  When I --

1          THE COURT:  Yes.  She called your number and

2     what number was that?

3          JUROR NUMBER 8:  103.  No.  No.  The seat

4     number, seat number 8.

5          THE COURT:  Okay.  And then tell me what

6     happened after that.

7          JUROR NUMBER 8:  Sorry, I can't remember.

8          THE COURT:  Okay.  All right, okay.  Thank you

9     so much.

10          JUROR NUMBER 8:  You're welcome.  Sorry.

11          THE COURT:  Okay.  It's okay.

12     **[The Juror was excused.]**

13          The record should reflect that Attorney Jupiter

14     indicated his objection to the Court undertaking this

15     inquiry without his client present.  He did that before

16     the juror was brought in here.  And that, I believe, is

17     his current position; is that correct?

18          ATTORNEY JUPITER:  Yes, Your Honor.

19          THE COURT:  All right.  Let me ask counsel

20     what, what the counsels' position with respect to Juror

21     in seat number 8; and seat number 9, having an inquiry

22     with that juror?

23          ATTORNEY VAUGHN:  You mean seat 8?

24          THE COURT:  I'm asking about seat number 9.

25     The reason the Court brings it up is because I observed

1    the juror in seat number 8 stand up and turned to seat

2    number 9.  I'm not sure for what.  But there appeared,

3    at least in my view, to be an exchange of something.  I

4    don't think it was a long discussion.  I don't know what

5    happened, if anything of significance happened.

6           ATTORNEY SMITH:  I sat closest and the juror

7    seated in the seat told Juror 8 you have to stand.

8           THE COURT:  That's what you heard?

9           ATTORNEY SMITH:  That's what I heard.

10          THE COURT:  Okay.  When did you hear that?

11          ATTORNEY SMITH:  Sorry?

12          THE COURT:  At what stage did you hear that?

13          ATTORNEY SMITH:  After sitting.  She never

14   responded to Ms. Brann's inquiry.

15          THE COURT:  When Ms. Brann asked the first

16   time?

17          ATTORNEY SMITH:  Juror Number 8, she just sat.

18   And the lady next to her said you have to stand, and she

19   -- that's when she stood up.  That was the dialogue I

20   heard from the two jurors.  It is clear she didn't

21   understand the difference between her seat number and

22   juror number.  And the juror said, you have to stand.

23   And then she stood up and said yes.

24          THE COURT:  Okay.  And that's what you heard

25   the first time around?

1          ATTORNEY SMITH:  That's the only time there was

2     interaction between the two.

3          THE COURT:  No.  No.  You heard yes?

4          ATTORNEY SMITH:  The initial time?

5          THE COURT:  Yes.

6          ATTORNEY SMITH:  I didn't hear a response the

7     first time.  It wasn't clear to me what she said the

8     first time, what she responded.

9          THE COURT:  I know she uttered something.  No

10     one heard the word.  At least I didn't.  I don't believe

11     the defense did.

12          ATTORNEY JUPITER:  I didn't hear the word.  But

13     I can say she was saying more than one word.  So, that

14     alone.

15          ATTORNEY VAUGHN:  She just said, stood up and

16     said sorry.  And she said yes.

17          ATTORNEY JUPITER:  It was more than two words.

18     She was mumbling something, as the Court said.  I

19     couldn't make out what she was saying.  But she wasn't

20     clearly just saying yes, or no; or sorry, yes.  She said

21     a few things.

22          ATTORNEY SMITH:  And she just explained.

23          THE COURT:  This is not an argument.  We're on

24     the record here now.  I have enough concern that I'm

25     troubled.  One, it's a significant moment, and I think

1    that it was her, to me that juror struggles with

2    English.  Two, it's clear to me that the sequence of

3    events she has, it's not clear to her.  I think she was

4    responding to an inquiry that I made.  And what I asked

5    her when I had the courtroom deputy, I pointed out Ms.

6    Brann, it seems to me at one point she got as far as the

7    seat number and the issue about whether she should stand

8    up; and she remembers nothing after that.  That gives me

9    some concern.  What also gives me some concern is that I

10   have listened to every word uttered by every juror for

11   every case, and I think I hear pretty well, I didn't

12   hear anything like a yes, according to what Attorney

13   Cass said.  In fact, it was where I think Attorney Smith

14   is, which is there was some utterance that wasn't clear.

15   Attorney Smith was the closest one to the jury box.

16   There may have been more than one word uttered, but I'm

17   not sure.  Quite frankly, like what Attorney Jupiter

18   said, I do know that there was some exchange between the

19   juror in seat 9 and the juror in seat 8.  Attorney

20   Smith, again the closest one, said that she heard juror

21   in number 9 say you have to stand or something to that

22   effect.  So, there was some exchange.

23        What troubles the Court is juror in seat number 8

24   said that nothing was said.  That's troubling to the

25   Court.  She doesn't remember.  According to her own

1     testimony when she recognizes Ms. Brann and said she

2     can't remember what happened after the seat number, she

3     didn't disclose to the Court any words uttered between

4     any juror sitting next to her, and she had some issue

5     with English.  Now, my concern is just with her ability

6     to recall, gives me some question of whether there is

7     sufficient basis to have her remain on the jury to the

8     extent there is any further work to be done.  I will

9     note she did say, "Yes, I do."  But that was the second

10    pass.  And she did say yes.  But that was the third pass

11    when I asked the question say yes or no.  And at this

12    point the Court's only question is, should the Court

13    undertake an inquiry of juror in seat number 9 to

14    ascertain whether or not there as some exchange?  We

15    have the juror in seat number 8 who said there was none.

16         What's the government position?  Who is speaking

17    for the government?  Attorney Smith.

18              ATTORNEY CASS:  Well, Your Honor, I think she

19    clearly answered.  I don't know what the benefit of

20    acquiring from Juror 9 would be as to that.

21              THE COURT:  You believe she, Juror 8 answered

22    what?

23              ATTORNEY CASS:  I believe she clearly told you

24    what happened, she didn't understand what happened.

25    Next she said sorry and she repeated it.  So, it's

1    obviously --

2            THE COURT:  She was asked the question if

3    anyone, if she said anything to anyone, anyone said

4    anything to her.  What did you hear her just say?

5            ATTORNEY CASS:  She said no.  She said I don't

6    remember.  I don't remember.

7            THE COURT:  And your sister just said she heard

8    the juror in seat number 9 say something.  Do you think

9    we should do something with seat 9, or should I have any

10   pause?  Because the juror in seat 8 said there was no

11   utterance and your sister says she heard an utterance.

12   I observed an utterance.

13           ATTORNEY CASS:  We can inquire of Juror 9 just

14   to alleviate that concern.

15           THE COURT:  Attorney Jupiter?

16           ATTORNEY JUPITER:  I don't see why there needs

17   to be any inquiry at this point.  Not only did she say I

18   didn't see any, you asked did you turn to her?  She said

19   I didn't turn to her.  So, even if the Court didn't have

20   any concerns, the Court can't be confident in this, that

21   particular juror 's answer.  I think at this point the

22   Court -- I would move for a mistrial, Your Honor.  I

23   don't think there is any need to go any further because

24   even if juror -- I'm certain Juror 9 will probably say,

25   say what happened.  But I think it's very clear from all

1    of the answers, information you have right now there is

2    no need to do anything further other than to grant a

3    mistrial.

4            THE COURT:  All right.  Well, my inclination is

5    to inquire of Juror Number 9 just to close the loop on

6    this one.  But if the defense is to find there is no

7    need to further, you believe there is sufficient --

8    there is a question of whether the Court should have any

9    confidence with the juror.  I'm referring to Juror

10   Number 8, correct?

11           ATTORNEY JUPITER:  Yes, Your Honor.

12           THE COURT:  Now, to the extent there is some

13   issue with her candor to the Court that -- significantly

14   the question about language becomes an issue now because

15   I'm not sure if she understood clearly, from what she

16   understood, if that's accurate.  I'm not sure if she is

17   truthful as she aught to be.

18       What's the defense's position on having an

19   alternate in her place?

20           ATTORNEY JUPITER:  My position is the same,

21   Your Honor.  I don't see how that could be fair to Mr.

22   James to have, to have a jury that -- now that I

23   recollect a case, another -- I don't know if the Court

24   was referring to a case that the Court had with me,

25   where we had a juror who found out --

1          THE COURT:  We don't need to be in here for

2     this discussion.  Why don't we go into open court.

3          **[Off the record.]**

4          **[Back on the record.]**

5          Attorney Jupiter, you want to be heard --

6          ATTORNEY JUPITER:  Yes, Your Honor.  We

7     continue in terms of our motion for mistrial.  I think

8     the record has been clear that this juror has a number

9     of issues, not only with regard to language.  But upon

10    the Court's inquiry I think an issue in terms of the

11    candor to the Court's questions proposed in chambers.

12    Your Honor, I think the issue at this point -- the Court

13    has raised an issue as to whether or not Juror 9 should

14    be questioned.  I don't think there is any need to do

15    that at this point.

16         The Court has also raised another proposed remedy

17    which was to have the jurors begin deliberation all over

18    with another juror coming in.  That is certainly -- I

19    don't think that's a remedy to the issue of having a 12

20    person juror start deliberations deliberating with an

21    open mind.  These 12 people have signed a verdict form.

22    I don't think at this point that they can be, there

23    would be -- that remedy would be sufficient.

24         THE COURT:  But, Attorney Jupiter, isn't that

25    the purpose in having the inquiry by the Court before I

1   discharge the jury, to ensure unanimity and, that is,

2   evidence on the record?  And if it isn't the alternative

3   for the Court to do what is necessary to the extent that

4   option is preserved to see if there could be a unanimous

5   verdict?  You know, I mentioned the case, I think it was

6   United States v. Mark.  If I'm not mistaken Attorney

7   Smith may have been involved in that case, or at least

8   five cases with Mr. Mark, all of which involved multiple

9   defendants, extensive issues.  And my sense, one of the

10  jurors in -- that case was heavily litigated and

11  appealed at every step of the way, including pre-trial

12  and post-trial.  I thought that there was an issue with

13  the juror.  And I think after a signed verdict form, an

14  announcement of the verdict, only after polling that

15  issue became evident when the juror said yes and no.

16  So, I can appreciate your position.  I'm not so sure

17  that the Court's options are so limited.

18       But as I indicated in chambers, the Court examined

19  the juror in seat number 8 and several things were

20  evident.  One, the juror does have problems with the

21  English language.  The transcript alone indicates as

22  much.  Two, the juror could not recall certain things

23  significantly.  She recalled, I believe although it is

24  unclear, inquiries made by the Court of her but not of

25  the courtroom deputy.  In fact, when she was asked to

1    recall specifically what happened, the Court pointed out

2    Ms. Brann and said this lady, what happened?  She

3    recalls having the number being called, the seat number

4    being called.  Not being clear what seat number she was

5    in standing up, and then she said she can't remember

6    anything.  And I asked on several occasions, she didn't

7    remember.  So, my sense is that because that juror has

8    an issue with recollection, understanding of the English

9    language, and significantly her candor to the Court is

10   one development that is clear.

11        The closest person to the jury box is Attorney

12   Smith.  Attorney Smith heard exchanges between the juror

13   in seat number 9 and seat number 8.  And she disclosed,

14   not withstanding other protestation, notwithstanding

15   significantly the utterance of the juror in seat 8, who

16   said there was no exchange.  Not only did Attorney Smith

17   hear it, but she recounted for the Court precisely what

18   it was.  Significantly also, Attorney Smith also

19   indicated that she did not hear anything clearly from

20   the juror on the first pass, which certainly was what

21   the Court heard, nothing clearly; what the court

22   reporter heard, nothing clearly on the first pass, which

23   certainly made the Court wonder whether there was some

24   capacity to understand and that's why the Court said,

25   "Hold on."  Go back.  And then we had that unique

1     answer, "Yes, I do."

2          So, my sense is to avoid any issues that -- to the

3     extent the jury has not been excused, the only question

4     is, does this deem a discharge?  If not, then it seems

5     to me then we'll be limited.  I'm not sure there has

6     been a discharge.  And that's why I made it clear before

7     they left the courtroom that they are not excused.  We

8     still have the alternates that are here.  And my

9     inclination is to excuse the juror who was in seat

10    number 8 and have the jurors restart their

11    deliberations.  And then it seems to me that would be

12    one way to ensure that you have a verdict that is

13    unimpeachable.  But under these circumstances, I think

14    there is enough issues here that it shouldn't take three

15    questions to get a simple yes or no answer.  And usually

16    there is no discussion between jurors when they give an

17    utterance to that polling.  It's insignificant in the

18    Court's experience.  Polling is something that jurors

19    recall with detail.  It's something they dread.  It is

20    something that they don't like to go through.  And for

21    this juror to say I don't remember is certainly

22    troubling.

23          ATTORNEY JUPITER:  Will the Court give

24    instructions to the jurors as a whole as to how --

25          THE COURT:  Yes, the Court will have to.  I

1          think we did this not so long ago.  I can't remember

2          precisely when.

3                    ATTORNEY SMITH:  Your Honor, if I may.

4                    THE COURT:  I believe we had at least two

5          jurors in resent memory where we had language issues and

6          the Court simply made an instruction that the

7          deliberation had to begin a new, and they did that.  I

8          think, Attorney Smith, you may have been involved in one

9          of those cases?

10                   ATTORNEY SMITH:  Yes.  On April 2nd in the

11         matter of the United States v Jermaine Hall.  And there

12         was a French citizen who spoke no English.  And when we

13         were advised of that, the Court replaced him with an

14         alternate and the deliberations started a new.  And we

15         were able to get a verdict after that.

16                   THE COURT:  I believe there was a case, maybe

17         the week before or the week after, where there was

18         someone who spoke Spanish and was unable to continue and

19         we simply replaced that person.

20              Really, the only issue the Court sees here, whether

21         there would be a, in fact, a discharge.  I believe the

22         jurors have remained under the control of the court,

23         they were not allowed to leave the building.  They are

24         still in our deliberation room.

25              So, under the circumstances, since I don't believe

1   there is any objection to -- I believe the defense has

2   an objection to relieving the juror.  Does the

3   government have an objection to relieving the juror in

4   seat number 8?

5            ATTORNEY VAUGHN:  No, Your Honor.

6            THE COURT:  Okay.

7            ATTORNEY JUPITER:  I don't have an objection.

8   I have an objection to replacing the juror.  I don't

9   have an objection to them leaving.

10           THE COURT:  That's what the Court will do, I'm

11  going to excuse the juror in seat number 8, have the

12  first alternate be part of the deliberating jury, and

13  then I will instruct them to begin their deliberations

14  anew.  All right, so we'll have Ms. Brann bring in the

15  reconstituted jury, which includes the first alternate,

16  and we'll excuse the juror in seat number 8.

17           **[Recess.]**

18           **[Back on the record.]**

19       Good afternoon again, Members of the Jury.

20           THE JURORS:  Good afternoon.

21           THE COURT:  I know it's been a long day for

22  you.  There are still some work that I need you to do,

23  though.  That's why you were not discharged; you were

24  not excused.  The deliberation that you undertook, I

25  need you to restart that process as you are newly

1    constituted.  You may notice that there is at least one

2    new member to your group of 12.  I need you to restart

3    your deliberations with respect to the matters before

4    you in this case.  So, when I say restart it is as if it

5    hadn't happened yet, just so the record is very clear.

6    Whatever you undertook or feel you need to undertake to

7    assess, and make, and return a verdict here, you need to

8    do that as though you're starting from scratch, all

9    right?  Remember there is no rush to reach a verdict.

10   Your verdict must be considered and deliberate.

11       Additionally, the new juror to your group should

12   feel as though he is beginning anew, not sort of

13   interposing or becoming someone who is interrupting an

14   ongoing process.  All the previous instructions I gave

15   to you apply with equal force and effect now, all right?

16   So, none of the deliberations that took place before are

17   appropriate to be considered now.  You need to start

18   anew with your newly constituted group, all right?

19       With that, return to the jury deliberation room

20   where you can begin your deliberations anew, all right?

21   Thank you.

22       THE CLERK:  All rise.

23       **[The jurors were excused to deliberate.]**

24       Please be seated.

25       THE COURT:  I believe at least two instances -- I

1    believe at least two instances with juror language

2    issues came up.  One would be Rehelio Trant.  I'm not

3    sure who tried that in the U.S. Attorney's Office.  And

4    the other would be Mr. Hall, to whom Attorney Smith

5    referred.  In both those cases we had jurors who had

6    language issues.  It's not a new matter for this Court.

7    It happens from time to time, and sometimes it is

8    learned at the latest stages in the game.

9         What I am a little concerned with, and I hope this

10   is not the case, is that given some of the

11   representations I've heard here in court and some in the

12   in-camera examination that we had, my hope and

13   expectation is not that -- my hope and expectation is

14   that it is not the case that any party has a view when,

15   at any cost -- everyone is an officer of the court who

16   appears before the Court, and the Court expects everyone

17   to proceed accordingly.  That is my hope and

18   expectation.  And every utterance, I hope that there is

19   the level of candor that the Court expects from an

20   officer of the court.

21        And again, some of these inquires, it is to obviate

22   any issues from arising.  And my hope is that the

23   parties will do what they can to aid the Court in making

24   sure that the fair administration of justice is what we

25   have at the end of the day.  I feel compelled to say

1    that, especially given some of the things that

2    transpired, that we discussed this morning.

3        Counsel, the 7 minute rule is in effect.  Thank

4    you.

5        THE CLERK:  All rise.  Court now stands in recess.

6    Please remain standing while His Honor leaves the

7    courtroom.

8        **[Off the record.]**

9        **[Back on the record.]**

10       The District Court is now in session.  Please be

11   seated.

12           THE COURT:  Good afternoon again, Members of

13   the Jury.

14           THE JURORS:  Good afternoon.

15           THE COURT:  I know you have been hard at work a

16   little bit longer than you probably anticipated.  I also

17   understand that you have concluded your work.  Let me

18   ask the foreperson to hand up the forms, please.

19       **[The verdict forms tendered to the Court for**

20   **inspection.]**

21       Okay, let me ask you, Madam Foreperson, to please

22   stand and read the verdict form as it is written.

23       Would the defendant please rise.

24           THE FOREPERSON:  As to Count One, Wire Fraud,

25   and or -- I'm sorry, on or about October 19, 2010, as

1     charged in the Indictment, we find the defendant, Wayne

2     James, guilty.

3          As the Count Two, Wire Fraud, on or about October

4     22, 2010, as charged in the Indictment, we find the

5     defendant, Wayne James, guilty.

6          As to Count Three, theft concerning a program

7     receiving federal funds, we find the defendant, Wayne

8     James, guilty.

9               THE COURT:  Thank you, Madam Foreperson.

10              ATTORNEY JUPITER:  Request polling, Your Honor.

11              THE COURT:  Yes.  Ms. Brann.

12              MS. BRANN:  Jurors, you have heard the

13     foreperson announce the unanimous jury verdict.  I will

14     now ask you individually is this your independent

15     verdict.  As I call your seat number please stand.

16              Seat 1, is this your independent verdict?

17              SEAT 1:  Yes, it is.

18              THE CLERK:  Seat 2, is this your independent

19     verdict?

20              SEAT 2:  Yes, it is.

21              THE CLERK:  Seat 3, is this your independent

22     verdict?

23              SEAT 3:  Yes, it is.

24              THE CLERK:  Seat 4, is this your independent

25     verdict?

```
 1                    SEAT 4:  Yes.
 2                    THE CLERK:  Seat 5, is this your independent
 3          verdict?
 4                    SEAT 5:  Yes.
 5                    THE CLERK:  Seat 6, is this your independent
 6          verdict?
 7                    SEAT 6:  Yes.
 8                    THE CLERK:  Seat 7, is this your independent
 9          verdict?
10                    SEAT 7:  Yes.
11                    THE CLERK:  Seat 8, is this your independent
12          verdict?
13                    SEAT 8:  Yes.
14                    THE CLERK:  Seat 9, is this your independent
15          verdict?
16                    SEAT 9:  Yes.
17                    THE CLERK:  Seat 10, is this your independent
18          verdict?
19                    SEAT 10:  Yes.
20                    THE CLERK:  Seat 11, is this your independent
21          verdict?
22                    SEAT 11:  Yes, it is.
23                    THE CLERK:  Seat 12, is this your independent
24          verdict?
25                    SEAT 12:  Yes, it is.
```

1           THE CLERK:  Judge, the jury has been polled.

2           THE COURT:  Thank you, Ms. Brann.  Members of

3    the Jury, let me thank you for your service.  As I said

4    before, I know it's not easy what you do.  And for all

5    that you have done the Court is appreciative.  I know

6    the government is appreciative.  I know the defense is

7    appreciative.  Your community is appreciative.  Your

8    country is appreciative.  And as I said before, please

9    bear in mind that your service is not yet over.  That

10   doesn't mean you will be called for the next trial, but

11   if you are called please answer the call.

12        Thank you so much and have a pleasant evening.

13        THE CLERK:  All rise.

14        **[The jurors were excused.]**

15        Please be seated.

16           ATTORNEY JUPITER:  Your Honor, can I address a

17   quick matter?

18           THE COURT:  Yes.

19           ATTORNEY JUPITER:  Your Honor, I would like to

20   reargue, not reargue, but one thing I did not state in

21   my motion for mistrial, one point that was, that came

22   out during the voir dire of the juror number 8 in

23   chambers was that, she mentioned that there were two

24   other people who spoke Spanish on this jury.  So, I

25   think that is another issue.  So, I renew my motion for

1    mistrial because that means this juror was relying on

2    the translation of someone other than a court certified

3    translator for the evidence in the case.  So, I do think

4    that gives --

5              THE COURT:  You said this juror?  That means

6    that this juror?

7              ATTORNEY JUPITER:  Juror number 8.  The

8    original juror number 8.

9              THE COURT:  Right.  But juror in seat number 8

10   didn't take part in the verdict that was just rendered,

11   though.

12             ATTORNEY JUPITER:  Oh.

13             THE COURT:  That is, as I understand it, you

14   are asserting a claim that there is something wrong with

15   the verdict, correct?  Or are you asserting that there

16   was something wrong with the verdict that was announced

17   previously, the one that wasn't recorded and the one for

18   which I substituted a juror?  Which verdict is it you're

19   taking issue with?

20             ATTORNEY JUPITER:  Your Honor, I take issue

21   with the Court's failure to grant a mistrial on my first

22   motion.  I think that would, that would, that not only

23   if she was relying, if that was occurring where you had

24   jurors who were translating for her, that would entitle

25   Mr. James to a mistrial.

1          THE COURT:  All right.  Attorney Smith?

2          ATTORNEY SMITH:  Yes, Your Honor.

3          THE COURT:  What's the Government's position?

4          ATTORNEY SMITH:  Your Honor, I beg to see what

5     relevance anything that occurred in the first

6     deliberation has to the actions that were just recorded,

7     that nothing that occurred in the first deliberation is

8     of issue any longer for this Court.  The Court took all

9     corrective actions to ensure that the defendant, in

10    fact, received a verdict that was just and based on the

11    evidence.  And by the replacement of juror number 8 by

12    the first alternate was, in fact, the course of action

13    that was required to ensure that defendant James

14    received an impartial verdict, and one that was based on

15    the evidence after a fair period of deliberation.

16         THE COURT:  All right, thank you.  I tend to

17    agree with the government.  I don't see -- that's why I

18    was asking which verdict is it the defense takes issue

19    with.  And it seems to me to the extent there was a

20    problem, the problem was remedied by moving the first

21    alternate into the space of an active juror.  The only

22    question, as I said, it seems to me you're not the only

23    passionate one, the salient one would be whether the

24    jury had been discharged.  The Court kept control over

25    the jurors.  There was no mingling with others.  There

 1     was no discussion with others.  And the jury

 2     significantly was told to re-engage, restart the

 3     deliberative process to render a verdict, that was just

 4     received by the Court.

 5          Now, with respect to the specific contention that

 6     because there was an utterance by the juror in seat

 7     number 8, that there might be others who speak Spanish,

 8     that in and of itself is not an indicator that there is

 9     a problem.  In fact, there are many of us in this

10     courtroom who speak Spanish, but we also speak English

11     as well.  That doesn't mean that somehow there is a

12     problem.

13          So, with respect to the juror in seat 8, just so

14     it's very, very clear on the record, juror number 8,

15     among other things, including failure to have the

16     requisite candor to the Court, the very first question

17     the Court asked that juror indicated that juror had a

18     problem with comprehending English.  The first question

19     was, what is your juror number?  And she responded by

20     saying her name.  There were other questions throughout

21     that clearly indicated that she struggle with

22     comprehension.  In the Court's mind she was not in a

23     position to certainly continue deliberating, certainly

24     not with an eye toward ensuring the unanimity that is

25     required.  And the Court, I think as Attorney Smith

1    indicated, made every effort to make sure that unanimity

2    was not an issue.  I do not believe it's an issue.  And

3    to the extent the petition of defense is one to

4    reconsider its prior ruling, that petition is denied.

5    All right, Counsel, let me thank you for a well tried

6    case.

7         Will the defendant please rise.  Mr. James, you've

8    been found guilty on your counts of conviction.  Before

9    you are sentenced, a presentence investigation needs to

10   be conducted.  The presentence investigation will be

11   disclosed to all parties on October 4, 2018; a

12   presentence conference is set for October 18, 2018;

13   position of the parties with respect to sentencing,

14   October 25, 2018; conference regarding sentencing

15   proceedings, November 9, 2018; final presentence report

16   will be disclosed to all parties and the Court November

17   14, 2018; and the sentencing hearing is set for December

18   20, 2018 at 9:00 a.m.

19        Between now and then, the defendant is remanded to

20   the custody of the United States Marshal Service pending

21   his sentencing.

22             ATTORNEY JUPITER:  May I be heard on that, Your

23   Honor.

24             THE COURT:  Yes.

25             ATTORNEY JUPITER:  Your Honor, the statute

1    requires that the Court shall take the defendant into

2    custody, unless the Court makes a finding that there are

3    conditions of release that the Court can set that would

4    reasonably assure him to reappear for his sentencing.

5    The Court -- this is a case where Mr. James has been on

6    pretrial release since October of 2016.

7            THE COURT:  But what's the standard that the

8    statute speaks to?

9            ATTORNEY JUPITER:  I believe it's clear and

10   convincing evidence, Your Honor.

11           THE COURT:  Okay.  And is the exposure to your

12   knowledge exposure that would have the defendant serve a

13   portion of time, incarceration?  Or, rather, is it a

14   sentence that would yield no term of incarceration?

15           ATTORNEY JUPITER:  We certainly are going to

16   argue for no further incarceration.  But under the -- I

17   think what the, what the statute alludes to basically is

18   that he is in a guideline category where he would be

19   exposed to further incarceration, and that is --

20           THE COURT:  Does the statute even refer to the

21   guidelines?

22           ATTORNEY JUPITER:  It doesn't refer to the

23   guidelines.

24           THE COURT:  I didn't think so.

25           ATTORNEY JUPITER:  But the statute -- it refers

1    to the statutes, and in terms of -- I guess that's my

2    short way of saying in terms that he is under the

3    guidelines will be, because he is under the guidelines

4    he is in the category where he is facing exposure to

5    prison time, that under the standards -- my short answer

6    to the Court is, yes, he does fit that category that

7    puts the burden on the defense.  So, I was -- yeah, I'm

8    taking a lot of short cuts to get straight to the point.

9    The answer to your question is yes, the burden is on the

10    defense.

11        But I think based on Mr. James' history, no

12    violations of pretrial release; he has been on house

13    arrest, 24-hour house arrest since October of 2016; he

14    came to court for every hearing, flying here to St.

15    Thomas.  Mr. James has made every appointment; he has

16    complied with all the terms of his release.  He was

17    contacted by a witness in this case; he reported that to

18    counsel.  Counsel spoke to the witness, the government,

19    with the government who claimed that that witness was

20    tampered with.  I can assure the Court that witness did

21    not appear -- based on my conversations with that

22    witness, that witness did not appear, it wasn't anything

23    to do with Mr. James.  It was to do with the fact that,

24    as the witness said, secrecy, that he was not allowed to

25    speak to Mr. James.  Counsel wouldn't allow -- told him,

1    informed him, even though he wanted to speak to Mr.

2    James; he told the government that he needed to speak

3    with Mr. James.  He told counsel that he needed to speak

4    with Mr. James; that he was informed that he can't do

5    that.  That was the secrecy that he expressed in the

6    email as to why he didn't want to come here.  So, Mr.

7    James has not been exemplary in terms of following the

8    rules of this Court.  Mr. James has been on house

9    arrest, and house arrest has been very effective in

10   keeping in contact with Probation.  And I think they are

11   clear.  His conduct shows clear and convincing evidence

12   that he would not flee and he would show up for his

13   sentencing.  He certainly came to court understanding

14   that going to jail was very possible.  After a verdict

15   of guilty was rendered, was stated by the jury, even

16   though it wasn't a unanimous verdict, he had no problem

17   coming back here today two hours later where the

18   handwriting was on the wall.  So, I think there are

19   clear and convincing -- there is evidence that he would

20   not flee.  And the Court can continue with the stringent

21   conditions of release he is already set on.

22             THE COURT:  All right.  Attorney Jupiter, you

23   would agree that your defendant stands in a different

24   position now that there is a verdict of guilty?

25             ATTORNEY JUPITER:  He stands in -- the law says

1    he stands in a different position, but the law still

2    says the Court has to make an independent finding.  I

3    think the Court has all the evidence pointing towards

4    Mr. James is not going to flee.  There is no indication

5    that he would, he wouldn't appear for his sentencing.

6    He has been staying with relatives since his release on

7    October 16th.  And he has followed all of the rules of

8    his release, and he has come to court when asked to do

9    so, even on short notice.  He has flown over here to St.

10   Thomas, flew over here with me.  He flew over here with

11   his third-party custodian when he needed to.  All

12   through the hurricane he has been accessible to his

13   probation officer.  So, I don't think --

14            THE COURT:  Let me ask you.  Do I get to

15   consider at this juncture the efforts to secure Mr.

16   James, that is, to commence this action?

17            ATTORNEY JUPITER:  Of course, that's something

18   that you consider, Your Honor.  But I think in light of

19   the fact that -- first of all, Mr. James was in

20   detention for about three, four months before he was

21   released.  So, he still has come to court understanding

22   what it is like to serve time in jail.  He has come to

23   court for his trial every day.  And he has come back to

24   court even after the jury indicated a guilty, 11 people

25   indicated a guilty verdict.  So, I don't think that

1    there is any -- I think there is enough evidence in the

2    record that the Court should be convinced at this point,

3    even not withstanding the fact that he has been found

4    guilty and that he is, he is likely to get some jail

5    time, that he is, that he is still going to appear for

6    his sentence.

7              THE COURT:  All right.  I'm not so sure I'm

8    inclined, but let me hear Attorney Smith.

9              ATTORNEY SMITH:  Your Honor, the defendant has

10   been convicted.  We're requesting his immediate remand.

11   The defendant is no longer on pretrial release

12   conditions, not withstanding the claim made by defense

13   regarding his exemplary service.  He did, in fact,

14   violate.  We advised the Office of Probation that

15   defendant James violated his conditions of release

16   having contacted not just Mr. Van Troil who, based on

17   the timing of the various communications with Mr. James,

18   the first communication occurred before we arrived in

19   Denmark for his interview.  And subsequent, the very

20   last communication occurred within days of him calling

21   to advise the United States that he no longer wished to

22   travel.  So, the inference is far too strong that it

23   wasn't these communications, these various

24   communications with a very material witness, that caused

25   him not to cooperate with the United States by providing

1      testimony with Mr. James when prior to his contact with

2      Mr. James he was onboard one hundred percent.

3      Notwithstanding, Your Honor, the Court should also

4      consider the fact that Mr. James was a fugitive.  It

5      took us a year to effectuate his arrest having filed

6      these charges and then several months between the time

7      it took for him to be extradited from Europe to face

8      charges.  And to give him some kind of pat on the back

9      for being on home arrest is simply not appropriate

10     because he should have been incarcerated.

11             THE COURT:  All right.  Thank you, Attorney

12     Smith.

13             ATTORNEY SMITH:  Thank you, Your Honor.

14             THE COURT:  While I appreciate the defense's

15     position, I'm just not persuaded by it.  The Court

16     doesn't find that there is clear and convincing evidence

17     that warrants the relief defense seeks, so the defendant

18     is remanded pending his sentencing.

19         Thank you, Counsel, for a well tried case.

20         THE CLERK:  All rise.  Court stands adjourned.

21     **[The above proceedings were concluded.]**

22

23

24

25

1
2
3                          CERTIFICATE
4
5           This document is hereby certified
6          to be a true and accurate transcript
7             of the foregoing proceedings.
8
9
10          s/ *Persha Stoutt-Warner*
11          PERSHA STOUTT-WARNER, RMR 8/27/2018
12          Official Court Reporter
13
14
15
16
17
18
19
20
21
22
23
24
25